UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STEVEN BENANAV, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>          vs.<br><br>HEALTHY PAWS PET INSURANCE LLC,<br><br>                    Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Steven Benanav ("Plaintiff"), on behalf of himself and all others similarly situated, brings this Complaint against Defendant Healthy Paws Pet Insurance ("Healthy Paws" or "Defendant"), and states as follows:

## I.  NATURE OF THE ACTION

1.      This is a class action brought on behalf of Plaintiff and similarly situated holders of pet insurance policies marketed and issued by Healthy Paws under the Healthy Paws Pet Insurance brand name and underwritten by various insurance companies (the "Policies").

CLASS ACTION COMPLAINT - 1

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

2.     Plaintiff seeks to represent a class of consumers who own or owned a Policy and who have been forced to pay unlawful and excessive monthly premiums to Healthy Paws (the "Classes").

3.     The Policies specify that monthly premiums "may change for all policyholders to reflect changes in the costs of veterinary medicine." Healthy Paws is therefore contractually bound to increase premiums only to the extent that such increases are tied to the increase in the costs of veterinary medicine.

4.     Despite unambiguous policy language in a fully integrated agreement, Healthy Paws charges monthly premiums in excess of amounts specifically permitted by the terms of those policies.

5.     Because the premium may only increase to compensate Healthy Paws for increases in the cost of veterinary care, Healthy Paws is contractually obligated to compute these premiums based on the cost of veterinary care, not its desire to garner a greater profit on the Policies.

6.     Notwithstanding its contractual obligations, Healthy Paws breached its contracts with Plaintiff and the Classes and abused its contractual discretion by increasing premiums based on factors other than the cost of veterinary care, such as the pet's age.

7.     By impermissibly increasing monthly premiums as pets age, Healthy Paws has earned millions of dollars in extra profit.

## II.  PARTIES

8.     Plaintiff is a citizen and resident of Los Angeles, California. Plaintiff purchased a Healthy Paws insurance policy for his dog Mali which became effective March 27, 2012. A copy of Plaintiff's policy is attached hereto as **Exhibit A**. Over the years, Plaintiff's policy has continued to bear the Healthy Paws Pet Insurance brand name but has been underwritten by various insurers including Markel American Insurance Company (2012-2013), Ace American (2013-2019), and Westchester Fire Insurance Company (starting in 2020-).

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

9.      Defendant Healthy Paws, while not itself an insurer, administers pet insurance policies and in this role is responsible for sales and marketing; website development and maintenance; policy quoting, issuance and servicing; and claims adjudication. Healthy Paws maintains its principal place of business in Bellevue, Washington.  Healthy Paws issued pet insurance policies in the United States using standardized contracts beginning in approximately 2010.

### III.  JURISDICTION AND VENUE

10.     This Court has jurisdiction over Plaintiff' claims pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity between at least one class member (including Plaintiff) and one Defendant and the aggregate amount of damages exceeds $5,000,000. This action therefore falls within the original jurisdiction of the federal courts pursuant to the Class Action Fairness Act, 28 U.S.C § 1332(d).

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiff's cause of action occurred in this District.

### IV.  FACTUAL ALLEGATIONS

**A.**      **Background: The Pet Insurance Industry Exploits Our Love for Our Pets**

12.     An astounding 67% of American households, or 85 million families, own a pet.

13.     The pet industry—once limited to Milkbones and kibble—has exploded in popularity with several corporations beginning in recent years to market and sell pet-oriented products and services. Pet daycares, pet hotels, and even pet spas have begun to pop up with regularity.

14.     More and more, Americans regard their pets as members of their family and more and more, Americans are demanding similar services for their pets as they do for their family members—and that includes health insurance.

CLASS ACTION COMPLAINT - 3

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

15.     Pet health insurance companies, including Healthy Paws, have latched onto pet owners' love of their pets, referring to their customers and policyholders as "pet parents."

16.     Pet health insurance has been marketed as a way to help defray rising veterinary expenses and avoid what has been termed as "economic euthanasia" — the necessity of putting a pet down because the owner can't afford treatment.

17.     More than two million pets in the United States and Canada were insured at the end of 2017 according to the North American Pet Health Insurance Association.

18.     But the pet insurance market is rife with abuse.

19.     The director of insurance with the Consumer Federation of America recently commented that the purchase of pet insurance is "often motivated by a combination of love and fear" rendering the buyer particularly vulnerable.

20.     Wide variations in pet insurance policies—what they cover, what they exclude, and what they cost—does not make the purchasing decision any easier for consumers.

21.     Of course, the decision whether to buy or forego pet insurance is ultimately an economic calculation premised on a litany of unknowns: the buyer must calculate the cost of a pet's future veterinary care as compared to the cost of monthly premiums.

22.     Because most pet insurance policies exclude pre-existing conditions and require pets to undergo a veterinary exam prior to enrollment, buyers of health insurance are thus forced to evaluate the risk that a healthy pet becomes ill and what the veterinary care for any future hypothetical medical condition might cost.

23.     The cost-benefit analysis of pet insurance is necessarily dictated by the cost of monthly premiums.

24.     Many consumers, when presented with the possibility of securing the most advanced veterinary care for their pet in the event of a future illness for only $30 or $40 per month, believe that pet insurance is a good deal. And indeed, if the monthly premiums stayed that low for the duration of their pet's life, it might be.

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

25.     But all too often, in a cruel twist, pet insurance companies drastically increase the cost of the monthly premiums just when consumers need the insurance most: as their pets age. Suddenly, and as happened to Plaintiff, monthly premiums may skyrocket to *hundreds* of dollars per month, thus drastically affecting the cost-benefit calculation.

26.     While some pet insurance policies may explicitly allow monthly premiums to increase based on a pet's age—thus warning consumers from the outset of the potential for a spike down the road—Healthy Paws' policies do not.

27.     This case concerns improper inflation of monthly premiums based on pets' age, in violation of their Policies' explicit terms.

**B.     Healthy Paws Pet Insurance**

28.     Defendant Healthy Paws, while not itself an insurer, administers pet insurance policies.

29.     Healthy Paws has administered more than 450,000 pet insurance policies in the United States since 2010. Its policies are underwritten by members of the Chubb Group.

30.     Healthy Paws markets itself as the #1 Customer-Rated pet health insurance provider since 2013.

31.     On its website, Healthy Paws brags of altruistic motives: "With Healthy Paws, you can give you pet the best medical care possible . . . Everything we do is driven from our love of animals and our commitment to pet health."

32.     Healthy Paws further boasts that its terms are part of "1 easy-to-understand pet insurance plan."

33.     As discussed below, however, Healthy Paws is motivated by greed more than altruism resulting in its routine violation of its own "easy-to-understand" terms.

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

**C.** **The Policies Prohibit Healthy Paws from Increasing Premiums Based on the Pet's Age**

34.     Under the terms of the Policies issued by Healthy Paws, policy owners pay monthly premiums to Healthy Paws in exchange for covered veterinary services throughout the life of their pet.

35.     The Polices, including Plaintiff's Policy (Ex. A), authorize Healthy Paws to increase monthly premiums only to cover the increased cost of veterinary care.

> MONTHLY PREMIUM:  Your monthly premium is set forth on your declarations page. **Monthly premiums may change for all policyholders to reflect changes in the costs of veterinary medicine.** We will notify you at least sixty (60) days in advance of such change.

Ex. A at I(5) (emphasis added).

36.     Thus, under the explicit terms of the Policies, Healthy Paws is authorized only to use "changes in the costs of veterinary medicine" when changing monthly premiums.

37.     Importantly, "changes in the costs of veterinary medicine" is meant to reflect an industry-wide change in the costs of veterinary medicine, as evidenced by the fact that the Policy specifies premiums may change for _all_ policyholders.

38.     Healthy Paws is not allowed to increase the cost of monthly premiums based on any other factors, including the pet's age.

**D.** **Healthy Paws, in Breach of its Contracts with Plaintiff and the Classes, Considered Impermissible Factors Like a Pet's Age in Setting Monthly Premiums**

39.     By specifically identifying "changes in the cost of veterinary medicine," Plaintiff and the Classes on the one hand and Healthy Paws on the other agreed that industrywide changes to the cost of veterinary medicine are what determines monthly premiums under the Policies.

40.     Notwithstanding the clear terms of the Policies limiting the factors Healthy Paws may consider in changing monthly premiums, Healthy Paws uses other factors, which are

CLASS ACTION COMPLAINT - 6

not authorized by the Policies, when determining these rates, including but not limited to the pet's age and claims rates.

41.     Indeed, the State of Washington's Officer of the Insurance Commissioner recently fined both Healthy Paws and its underwriters (ACE American Insurance Company and Indemnity) for numerous violations. One such violation consisted of impermissibly taking into account a pet's age when calculating premiums. In a consent order, the Commissioner identified the following area of concern, "Allowing Healthy Paws' producer to increase the pet age factor [in calculating monthly premiums] contrary to policy language indicating the factor would remain constant."

42.     The Commissioner further found that, despite language indicating the pet's age would not be a factor in calculating monthly premiums, in practice, Healthy Paws and its underwriters "increased the age factor annually on the policy anniversary."

43.     The Insurance Commissioner of the State of Washington is not the only one to point out that Healthy Paws' monthly premiums increase as pets age. Healthy Paws itself has admitted to inflating premiums based on a pet's age.

44.     In speaking with the New York Times, Rob Jackson, chief executive of Healthy Paws Pet Insurance, apparently told the newspaper that a "pet's age affects premiums at initial enrollment, *and also as the pet ages*." See https://www.nytimes.com/2019/01/04/your-money/pet-insurance-policies.html (last accessed March 5, 2020) (emphasis added).

45.     In fact, Healthy Paws had apparently previously misstated how a pet's age affects premiums and had the New York Times correct the misstatement. A correction at the bottom of the article reads:

> *An earlier version of this article, using information supplied by Healthy Paws Pet Insurance, misstated how a pet's age affects premiums for the company's policies.* **The pet's age affects the premium at the time of enrollment and as the pet gets older, not just at enrollment.**

*See id.*

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

46.     Thus, Healthy Paws <u>admitted</u> that a pet's age affects its calculations of monthly premiums.

47.     The same was also recently confirmed by a Healthy Paws' customer service representative's response to a complaint posted on a public forum. In a recent complaint posted on the Better Business Bureau, one consumer complained:

> When I signed my pet up for medical insurance back in 2012, I went through and researched numerous companies before selecting Healthy Paws. One of my major concerns at the time was concerning rate increases. Since it would be difficult to switch insurance companies should any conditions come up with my pet, I wanted to have some assurances that costs would continue to be manageable. I reached out to the company who provided me with the following e-mail which indicated that any annual increases would be "slight," "manageable," and "easy to budget." Recently I was informed by the company that my monthly insurance costs would be rising from $73.39 to $129.76. I would argue that, by any reasonable measure, that a 76.8% increase does not fit any of these terms.

*See* https://www.bbb.org/us/wa/bellevue/profile/pet-insurance/healthy-paws-pet-insurance-llc-1296-22528158/complaints#367541749 (last accessed March 5, 2020).

48.     In response a member of Healthy Paws' customer service team responded:

> In accordance with the terms of the Pet Health Insurance Policy and the associated rating rules, monthly premiums may change for all policyholders.  Premiums are determined based on the rates and rating rules filed and approved within each state's Department of Insurance, **which reflect the cost of treatment advances in veterinary medicine, your individual pet's breed, gender, age, and other factors, in addition to the overall claims experience for the program within the region your pet resides.**

*See id.*

49.     Healthy Paws itself thus acknowledges that its rising rates reflect a pet's age "in addition to the overall claims experience for the program within the region your pet resides."

50.     By including these impermissible factors in the calculation of its monthly premiums, Healthy Paws knowingly caused monthly premiums to be higher than what is explicitly authorized under the terms of the Polices.

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

51.     At a minimum, Healthy Paws abused its contractual discretion by increasing monthly premiums based on impermissible factors. Healthy Paws is vested with contractual discretion to adjust monthly premiums for *all* policyholders based on "changes in the costs of veterinary case." It abused its contractual discretion, to the detriment of policyholders, by exercising this discretion to the detriment of policyholders.

52.     As a direct and proximate result of Healthy Paws' breach, Plaintiff and the Classes have been damaged and those damages are continuing in nature in that Healthy Paws has charged and will continue to charge monthly premiums in amounts not authorized by the Policies.

**E.     Plaintiff's Experience**

53.     Plaintiff purchased a Healthy Paws pet insurance policy for his dog Mali in 2012.

54.     When Plaintiff signed up the policy, Mali was five years old and in good health.

55.     Plaintiff signed up for a Healthy Paws insurance policy in part to ensure he would be able to cover the costs of Mali's veterinary care as Mali aged.

56.     When Plaintiff signed up for Mali's policy, the monthly premiums were $33.85 per month.

57.     Over the years, as Mali aged, Plaintiff's premiums drastically increased.

58.     From 2013-2019, Plaintiff's premiums increased dramatically.

59.     In January of 2013, for example, Plaintiff paid a monthly premium of $33.85. However, the monthly premiums increased substantially after that time. In 2016, Plaintiff's premium increased from $39.03 to $44.80. In 2018, the monthly premium increased to $55.61. In 2019, the monthly premium increased to $69.67. In 2020, the monthly premium increased to a shocking $104.50.

60.     Plaintiff's premiums thus increased by over 300% from 2013 to 2020.

CLASS ACTION COMPLAINT - 9

61.     This change is substantially greater than the overall change in the costs of veterinary medicine during that time. According to the Nationwide Purdue Veterinary Price Index, 2019 update:

> Based on more than more than 30.6 million pet health treatments from January of 2009 through December of 2018 with a total value of $3.3 billion, the Nationwide | Purdue study shows that veterinary pricing (what consumers actually paid for care, not the "list prices" at veterinary practices before any discounting) decreased in the recessionary and post-recessionary period of 2009 through 2014 by 3.6 percent. In 2015, a sharp recovery began. **Overall, veterinary pricing during the last four years, inclusive (end of 2014 to the end of 2018), has increased by 21.1 percent**, offsetting the period of 2009 to 2014 when veterinary pricing was effectively stagnant or negative.

Available at http://nationwidedvm.com/wpcontent/uploads/2019/11/FINAL_Nationwide-Purdue_2019-Veterinary-Price-Index.pdf (emphasis added) (last accessed March 9, 2020).

62.     During the four-year period from the end of 2014 through the end of 2018, when the overall costs of veterinary medicine rose 21.1% according to the Nationwide Purdue Index, Plaintiff's premiums increased from $33.62 to $55.61, a whopping 65.4%.

63.     And in the two years' since, Plaintiff's premiums have increased from $55.61 to $104.50, an additional 87%.

64.     Mali is now 13 years old and Plaintiff cannot switch pet insurance providers because she has aged out of most policy offerings.

65.     In accordance with the Policy's terms, Plaintiff expected the monthly premiums on Mali's policy to rise only slightly in line with inflation throughout the duration of the policy. Indeed, had Plaintiff known that Healthy Paws would take Mali's age and/or other impermissible factors into account in order to drastically increase premiums as Mali aged, he never would have signed up for the policy.

## V. CLASS ACTION ALLEGATIONS

66.     This action is brought by Plaintiff individually and on behalf of a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

CLASS ACTION COMPLAINT - 10

The National Class is defined as follows:

> All persons who, within the applicable statute of limitations, had their monthly premiums increase on a Healthy Paws pet insurance policy.

The California Subclass is defined as follows:

> All persons in the state of California who, within the applicable statute of limitations, had their monthly premiums increase on a Healthy Paws pet insurance policy.

67.     Excluded from the Classes are Healthy Paws, its officers and directors, members of their immediate families, and the heirs, successors or assigns of any of the foregoing.

68.     ***Numerosity.*** The Classes consists of hundreds or thousands of consumers of pet insurance and is thus so numerous that joinder of all members is impracticable.

69.     ***Ascertainability.*** The identities and addresses of all members of the Classes can be readily ascertained from Healthy Paws' business records.

70.     ***Typicality.*** The claims asserted by Plaintiff are typical of the claims of members of the Classes inasmuch as Healthy Paws breached its contracts with Plaintiff and with members of the Classes in the same manner and deceived Plaintiff and the Classes in the same manner.

71.     ***Adequacy.*** Plaintiff will fairly and adequately protect the interests of the members of the Classes and does not have any interests antagonistic to those of the other members of the Classes. In addition, Plaintiff has retained attorneys who are knowledgeable and experienced in class and complex litigation.

72.     ***Commonality and Predominance.*** Common questions of law and fact affecting members of the Classes predominate over any individualized issues. These predominating common questions include the following:

a.     Whether Healthy Paws used, added, or included factors not specified in the policies when determining the "costs of veterinary medicine" used to calculate premiums;

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

b.      Whether Healthy Paws breached the terms of the policies and/or abused its discretion under the policies;

c.      Whether Healthy Paws misrepresented and/or omitted material facts to policyholders;

d.      Whether Plaintiff and members of the Classes sustained damages as a result of Healthy Paws' breaches of the policies; and

e.      Whether Plaintiff and members of the Classes are entitled to damages, restitution, and/or other relief as a remedy for Healthy Paws' breaches of the policies.

73.     ***Superiority.*** A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a.      The complexity of issues involved in this action and the expense of litigating the claims, means that few, if any, class members could afford to seek legal redress individually for the wrongs that Defendant committed against them, and absent class members have no substantial interest in individually controlling the prosecution of individual actions;

b.      This action will cause an orderly and expeditious administration of the class claims and foster economies of time, effort and expense, and ensure uniformity of decisions;

c.      Without a class action, many class members would continue to suffer injury, and Healthy Paws' violations of law will continue without redress while Defendant continues to reap and retain the substantial proceeds of their wrongful conduct; and

74.     ***Manageability.*** This action does not present any undue difficulties that would impede its management by the Court as a class action.

## VI.  FIRST CLAIM FOR RELIEF
### Breach of Contract

75.     Plaintiff realleges and incorporates herein the allegations of the paragraphs above of this Complaint as if fully set forth herein.

76.     This claim is brought on behalf of Plaintiff and the Classes.

CLASS ACTION COMPLAINT - 12

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

77.     The policies are binding and enforceable contracts.

78.     Healthy Paws breached its contracts with Plaintiff and the Classes by basing its monthly premiums on impermissible considerations, such as the pet's age.

79.     By so doing, Healthy Paws knowingly caused premiums to be higher than what is explicitly authorized by the policies.

80.     Plaintiff and the Classes have performed all of their obligations under the policies, except to the extent that their obligations have been excused by Healthy Paws' conduct as set forth herein.

81.     As a direct and proximate cause of Healthy Paws' material breaches of the policies, Plaintiff and the Classes have been—and will continue to be—damaged as alleged herein in an amount to be proven at trial.

## VII.  SECOND CLAIM FOR RELIEF:
### Breach of the Covenant of Good Faith & Fair Dealing

82.     Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

83.     This claim is brought on behalf of Plaintiff and the Classes.

84.     Healthy Paws issued the contracts at issue in this case.

85.     Each of the contracts include an implied covenant that Healthy Paws will act in good faith and deal fairly with Plaintiff, and that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

86.     Healthy Paws breached the implied covenant of good faith and fair dealing with Plaintiff and the Classes by using its discretion to increase premiums based on non-permissible considerations. Plaintiff and the Classes suffered financial losses and were, therefore, injured.

87.     As a direct and proximate cause of this breach of the implied covenant of good faith and fair dealing, Plaintiff and the Classes have been damaged as alleged herein in an amount to be proven at trial.

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

## VIII.  THIRD CLAIM FOR RELIEF:
### Violation of California's Unfair Competition Law
### Cal. Bus. & Prof. Code § 17200, *et seq.*

88.    Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

89.    This claim is brought on behalf of Plaintiff and the California Class in the event the Court declines to apply Washington law to the nationwide class.

90.    Plaintiff and the members of the Class have standing to pursue a cause of action against Defendant for unfair and/or unlawful business acts or practices because he has suffered an injury-in-fact and lost money due to Defendant's actions and/or omissions as set forth herein.

91.    Defendant's conduct as alleged herein constitutes a fraudulent business practice within the meaning of Bus. & Prof. Code § 17200, *et seq.*, through both their affirmative misrepresentations and material omissions in its Policies. Specifically, Defendant never stated that it would increase monthly premiums based on a pet's age. Such representations and omissions misled the Plaintiff and Class members and are likely to mislead the public.

92.    Defendant's conduct alleged herein is "unfair" under Bus. & Prof. Code § 17200 because it is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, and any utility of such practices is outweighed by the harm caused to consumers, including to Plaintiff, the Class, and the public.

93.    Defendant knew or should have known that their representations were false, deceptive, and misleading.

94.    There were reasonably available alternatives to further Defendant's legitimate business interests.

95.    Reasonable consumers had no way of knowing that Defendant was engaged in false, deceptive, and misleading advertising, and therefore could not have reasonably avoided the injuries that they suffered.

CLASS ACTION COMPLAINT - 14

96.     Defendant's wrongful conduct is ongoing and part of a pattern or generalized course of conduct.

97.     Pursuant to Bus. & Prof. Code § 17203, Plaintiff seeks an injunction on behalf of himself and the general public enjoining Defendant from continuing to engage in the unfair competition alleged above, or any other act prohibited by law, to prevent future consumers from being misled by Defendant's actions.

98.     Plaintiff also seeks an order requiring Defendant to make full restitution and to disgorge their ill-gotten gains wrongfully obtained from members of the Class as permitted by Bus. & Prof. Code § 17203.

99.     Additionally, Plaintiff and the Class members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

## IX.  FOURTH CLAIM FOR RELIEF
### Violation of Washington's Consumer Protection Act
### RCW § 19.86, *et seq.*

100.    Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

101.    Washington's Consumer Protection Act ("CPA") makes unlawful any "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…" RCW 19.86.020.

102.    Defendant was deceptive, misleading, and unfair in failing to disclose that it would increase policy premiums for impermissible factors, such as a pet's age.

103.    Had Plaintiff known that Defendant's representations regarding rate-setting were deceptive, misleading, and unfair, Plaintiff would not have purchased Defendant's insurance.

104.    Defendants' false, misleading, unfair, and deceptive acts and practices were intentional, knowing, and occurred in the conduct of Defendants' trade and commerce. These bad acts were intended to, and did, result in Defendants profiting from its misleading practice.

CLASS ACTION COMPLAINT - 15

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

105.    Defendant's false, misleading, unfair, and deceptive acts and practices caused Plaintiff and the Class injury because they paid more for Defendant's insurance than they should have paid according to the Policy.

106.    Plaintiff and the Class have been injured by Defendant's CPA violations in an amount to be determined at trial. Plaintiff seeks all damages available under CPA § 19.86.090, including actual damages, costs (including reasonable attorneys' fees), and treble damages.

107.    Defendant's conduct affects the public interest as millions of consumers purchase pet insurance and rely on insurance companies' representations—including Defendant's representations. Plaintiff, the Class, consumers, and the public have a strong interest in ensuring that insurance companies truthfully disclose the factors they consider in rate-setting. Defendant's false, misleading, unfair, and deceptive acts affected hundreds or thousands of consumers by causing them to overpay for Defendant's insurance.

## X.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for judgment as follows:

A.    Certifying this action for class treatment pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding Plaintiff and the Classes compensatory and consequential damages in an amount to be proven at trial;

C.    Awarding Plaintiff and the Classes pre-judgment and post-judgment interest, as well as attorneys' fees and costs, at the maximum rate allowed by law;

D.    Issuing a declaration that Healthy Paws' ongoing conduct asserted herein is in material breach of the policies; and

E.    Awarding Plaintiff and the Class such other relief as this Court may deem just and proper under the circumstances.

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1

## XI.  JURY DEMAND

2

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff and the Classes

3

hereby demand a trial by jury as to all issues so triable.

4

RESPECTFULLY SUBMITTED AND DATED this 18th day of March, 2020.

5

TURKE & STRAUSS LLP

6

By:   /s/ Samuel J. Strauss, WSBA #46971

7

Samuel J. Strauss, WSBA #46971
Email:  sam@turkestrauss.com

8

936 North 34th Street, Suite 300
Seattle, Washington  98103-8869

9

Telephone: (608) 237-1775
Facsimile:  (608) 509-4423

10

11

*Attorneys for Plaintiff*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

CLASS ACTION COMPLAINT - 17

# — EXHIBIT  A —



**WESTCHESTER FIRE INSURANCE COMPANY**

# PET HEALTH INSURANCE POLICY

Please read your Pet Health Insurance Policy carefully to determine the parties' rights and duties and what is and is not covered. Some provisions in the policy limit or restrict coverage.

Throughout this policy, the words **you** and **your,** refer to the policyholder (**Pet Parent**) shown in the Declarations Page.

The words **we, us** and **our,** refer to the company providing this insurance**.**

Words and phrases that appear in **bold type** have special meaning found in Section V. Definitions.

## I.        INSURING AGREEMENT

**We** rely on the statements **you** made in the application. Upon **your** payment of the premiums when due, **we** will provide **coverage** as specifically described in this **policy** for **your pet** as shown on the **declarations page**.

Benefits are subject to terms, conditions, limitations and exclusions of this **policy** and to **your** responsibility for the **coinsurance** and **deductible**. **Coverage** is in effect at the time and date shown on the **declarations page** subject to the waiting periods described in **II. EXCLUSIONS & LIMITATIONS 1) b.**, **1) c.** and **1) d.**

1) **WE COVER**: Reimbursement of the cost incurred by **you** for **medically necessary veterinary treatment** recommended by **your veterinarian** for **conditions** covered by this **policy.** These costs will be covered when **your pet:**

   a.   develops an **illness,** or

   b.   has an **injury** as a result of an **accident;**

   during the **coverage term**.

   This **policy** shall not cover amounts charged by the treating veterinary clinic that are greater than the treating veterinary clinic's standard or published charges.

2) **LIFETIME LIMIT**: The maximum amount **you** may claim while **coverage** is in force with respect to any one **pet** for **veterinary treatment** over the lifetime of that **pet**. The Lifetime Limit is shown on the **declarations page**. Subject to the maximum lifetime limit, there are no limits per claim or per year.

3) **COINSURANCE**: The portion **you** are required to pay for **your pet's veterinary treatment**. **Your pet's coinsurance** amount is shown on the **pet schedule** of the **declarations page**.

4) **DEDUCTIBLE**: **Your pet's deductible** is shown on the **pet schedule** of the **declarations page. Your pet's deductible** shall apply once per **coverage term**.

5) **MONTHLY PREMIUM**: **Your** monthly premium is set forth on **your declarations page**. Monthly premiums may change for all policyholders to reflect changes in the costs of veterinary medicine. **We** will notify **you** at least sixty (60) days in advance of such change.

6) **CHANGES TO YOUR COVERAGE**: **Your coverage**, **coinsurance**, and **deductible** will not change due to **your pet's** claims experience.

## II.        EXCLUSIONS & LIMITATIONS

### 1)   GENERAL EXCLUSIONS

**We** do not cover:

   a.   **Veterinary examination fees**.

b. **Injury** from an **accident** that occurs within the first fifteen (15) days following the **pet policy effective date.**

c. **Illness** that occurs or recurs within the first fifteen (15) days following the **pet policy effective date**.

d. **Illness** related to hip dysplasia that occurs or recurs within the first twelve (12) months following the **pet policy effective date.**

e. Conditions or complications that result from **accidents** that occur or **illnesses** that develop or redevelop within the first fifteen (15) days following the **pet policy effective date.**

**2) PRE-EXISTING CONDITIONS**

**We** do not cover **pre-existing conditions.**

**3) PREVENTIVE CARE EXCLUSIONS**

**We** do not cover:

a. **Spaying** and **neutering**.

b. Preventive healthcare including **vaccinations** or titer test, flea control, heartworm **medication**, de-worming, nail trim, and grooming.

c. Parasite control including but not limited to internal and external parasites for which readily available prophylactic treatments are available.

d. **Dental health care**, however if injury to teeth is caused by an **accident**, **we** do cover the cost of extraction and/or reconstruction of damaged teeth.

e. Anal gland expression.

**4) OTHER EXCLUSIONS**

**We** do not reimburse the costs, fees or expenses associated with:

a. **Injury** or **illness** due to any intentional, neglectful or preventable act, including organized dog fighting, by **you** or a member of **your** household;

b. Elective procedures, cosmetic procedures, preventive procedures including but not limited to:

    1. tail docking;

    2. ear cropping;

    3. de-clawing;

    4. micro-chipping;

    5. dew claw removal; or

    6. ear cleaning;

c. Boarding or transport expenses;

d. **Conditions** arising from a specific activity if the same or a similar activity occurred prior to the **pet policy effective date** and displayed the propensity for the activity to recur and cause **injury** or **illness** to **your pet**;

e. Future treatment for **injury** or **conditions** of a leg when cruciate ligament problems to any other leg existing prior to the **pet policy effective date**, have been identified, regardless of whether or not the new signs or symptoms are related to such cruciate ligament problems;

f. Diseases preventable by vaccines and prophylactic **medications** (such as heartworm, lice, internal parasites and fleas);

g. Complications of **conditions** excluded or limited by this **policy**;

h. Abnormalities where **clinical symptoms** were apparent prior to the **pet policy effective date**. This includes **conditions** that are detectable by a routine physical exam by **your veterinarian**;

i. Claims in any way arising from the lack of use and/or implementation of preventive healthcare products and/or methods when such products and/or methods would be in accordance with generally accepted veterinary standards. Routine healthcare includes: **vaccinations**, flea control, heartworm **medication**, de-worming, dental care, ear plucking, grooming, and prudent regular care;

j. Special diets, foods, vitamins, grooming, nail trims, shampoo and bathing;

k. Any claim for loss from a nuclear incident as defined in the Nuclear Liability Act, nuclear explosion or contamination by radioactive material;

l. **Conditions** arising from any specific activity if the same or similar activity occurs after **you** have received written notice from **us** regarding the specific activity;

m. Experimental or investigational treatment or medicine;

n. Breeding or **conditions** relating to breeding, whelping, and queening;

o. **Diagnostic tests** for **conditions** excluded by this **policy**;

p. **Diagnostic tests** due to complications of **conditions** excluded or limited by this **policy**;

q. **Conditions** caused by war or war activities whether war be declared or not. War activities include civil war, insurrection, rebellion, or revolution or any act or **condition** incident of any of the foregoing;

r. Feeding, housing or exercise;

s. Training, therapy, **medications** or other methods or forms of behavioral modification;

t. Shipping or mailing costs unless associated with a covered compounded **medication** or **diagnostic tests**.

**5) LIMITATIONS**

a. A **pet** less than six (6) years of age on the date of enrollment must have undergone a complete **clinical examination.** The exam must have taken place either in the twelve (12) months prior to the **pet policy effective date**, or within fifteen (15) days following the **pet policy effective date**. A **pet** six (6) years of age or greater on the date of enrollment must have undergone a complete **clinical examination** within thirty (30) days prior to the **pet policy effective date,** or within fifteen (15) days following the **pet policy effective date**. **Your** failure to submit **your pet** to a complete **clinical examination** may void the **policy**. If the **policy** is voided, the **policy** premium will be refunded.

b. For **pets** six (6) years of age or greater on the date of enrollment, no **coverage** shall apply for **illness** related to hip dysplasia.

c. For **working pets**, no **coverage** shall apply for any **condition** resulting from activities related to racing, breeding, law enforcement, guarding or for any commercial use.

d. **We** will not make any payments for any claims for which **you** are entitled to be paid under any other insurance except for any additional sum which is payable over and above such other insurance.

**III. GENERAL CONDITIONS**

1) Premium is payable monthly by Direct Debit or by charge to **your** credit card, according to the option selected by **you** on the application. This **policy** is continued until cancelled, and will renew automatically each month as long as premium payments are current. When **you** have not paid the premium, **we** may cancel this **policy. We** will let **you** know at least twenty (20) days before the date cancellation takes effect. No coverage will be provided for any claim with a date of **veterinary treatment** between the premium due date and the cancellation date, unless the premium payments are current.

2) **You** may cancel **your policy** by notifying **us** in writing via regular mail, fax or email at least fourteen (14) days in advance of **your** next premium payment.

3) **You** must be the owner of each **pet** shown on the **pet schedule**. If the **pet** owner dies, becomes unable to care for any insured **pet**, or passes the ownership of any insured **pet**, the **coverage** will continue without interruption, if approved in writing by **us**, subject to all other terms and conditions of this **policy**.

4) A **pet** is covered under this **policy** only while the **pet** is in the United States of America, or temporarily away in Canada.

5) **You** must agree to implement all reasonable means possible in the care and protection of **your pet**. **You** further agree to protect **your pet** from aggravation or recurrence of the **injury** /or **illness**.

6) This **coverage** is not transferable to other **pets**. All new **pets** are subject to a new application and your monthly payment will increase.

7) **You** are entitled to increase the **deductible** or **coinsurance** amount applicable to **your pet** at any time. This request must be made in writing and will become effective the month following approval by **us**. **You** may apply to lower the deductible or **coinsurance** amount applicable to **your pet** provided you have not previously filed a claim with **us** for that **pet**. This request must be in writing and will become effective the month following approval by **us**.

8) Notice of loss must be given by either **you** or **your** agent.

9) The loss is payable within sixty days after completion of the claim form, unless applicable state law provides for a shorter period.

10) In order to process a claim, **you** must allow **us** to contact **your** present and previous **veterinarian(s)** and provide **us** with the necessary authority to obtain any information **we** may require. In the event information relating to the history of the **pet** is missing or incomplete, the claim will not be processed. **You** must also agree to submit the **pet** to examination, if **we** require, by a **veterinarian** selected by **us**.

11) In the event of any disagreement between **you** and **us** with regard to a claim, the matter will be referred to a **veterinarian** of **ours**. If the matter is not resolved, an independent third party **veterinarian** shall be appointed by **us**. This independent third party **veterinarian's** decision shall be final and binding on all parties.

12) Every action or proceeding against **us** for the recovery of any claim under or by virtue of this contract is absolutely barred unless commenced within one year after the loss or damage occurs or unless state law requires a longer period.

**IV.**     **ADDITIONAL CONDITIONS**

1) **MISREPRESENTATION AND FRAUD** – This **policy** will be voided if **you** have concealed or misrepresented any material fact or circumstance concerning this insurance or the **pet** covered. **We** do not provide **coverage**, for an insured who has intentionally concealed or misrepresented any such facts or circumstances before or after a loss.

2) **CANCELLATION**

a. **We** may cancel this **policy** if **we** do not receive a monthly premium from **you** when the premium is due. In such a case a written notice will be sent to **you** at **your** last email address known to **us**. We will provide at least (20) days notice of our intent to cancel. The notice will be in accordance with the provisions of **III. GENERAL CONDITIONS** 1). Otherwise, **we** may cancel this policy by providing **you** at least ninety (90) days written notice.

b. **You** may cancel this **policy** at any time by notifying **us** in writing via regular mail, fax or email. This is in accordance with the provisions of III. **GENERAL CONDITIONS** 2).

3) **STATE LAW** – When this **policy's** provisions are in conflict with the statutes of the state in which this **policy** is issued, the provisions are amended to conform to such statutes.

4) **ENTIRE CONTRACT** – This **policy**, the **declarations page**, and any attached endorsement constitutes the entire agreement between **you** and **us**.

5) **FREE LOOK PERIOD** - If **you** are not satisfied with this **policy** within thirty (30) days of the **Policy Effective Date**, **you** may cancel **your** insurance. **We** will refund **your** premium in full, as long as **you** have not submitted a claim.

## V.       DEFINITIONS

The following defined words or phrases in the **policy** are printed in bold type and have the following meanings, unless a different meaning is described in a particular coverage or endorsement.

1) **Accident.** An unexpected and unintended event.

2) **Clinical Examination.** A thorough examination performed by a licensed and registered **veterinarian** encompassing all body systems of the **pet**. Examination can also be referred to as "full physical, physical consultation, full examination or veterinary examination."

3) **Clinical Symptoms.** Any manifested anomaly in, or deviation from the regular healthy state or function of a **pet**, including behavioral traits. **Clinical Symptoms** include any anomaly that is readily detectible by a thorough and complete **clinical examination**.

4) **Coinsurance. Your** portion of the cost of insured **veterinary treatment for your pet** before any **deductible** is applied. **Your pet's coinsurance** amount is shown as "Your Share" on the **pet schedule** of the **declarations page**.

5) **Condition.** Any manifestations of **clinical symptoms** consistent with a diagnosis or diagnoses, regardless of the number of such symptoms or areas of the body affected.

6) **Coverage.** The insurance protection described in this **policy** form and on the **declarations page.**

7) **Coverage Term.** A twelve (12) month period that begins with the effective date of **coverage** and continues for each twelve (12) month period thereafter.

8) **Declarations Page.** A written document comprising part of this **policy**, which identifies the insured, the **policy** number, and the insured **pet schedule** with the **coverage** options selected and Lifetime Limit provided.

9) **Deductible.** The amount **you** must first pay with respect to the cost of insured **veterinary treatment** for **your pet** after **your pet's coinsurance** portion has been applied.

10) **Dental Health Care.** The care required to maintain dental hygiene for **your pet.** This includes cleaning, brushing, scaling, polishing, extractions and reconstructions.

11) **Diagnostic Tests.** Tests used to determine the overall health of **your pet**. **Diagnostic tests** can be used as a way to detect certain abnormalities. It can also validate the current health of **your pet**, or help to evaluate an older **pet** more thoroughly before problems surface.

12) **Hospitalization.** Charges for boarding **your pet** at a veterinary clinic as required by your **veterinarian** to deliver nursing care, administer **medication** to or monitor **your pet**.

13) **Illness.** Sickness, disease or any other changes to **your pet's** normal healthy state; or any **condition** other than **your pet's** normal healthy state.

14) **Injury** or **Injuries.** Physical harm or damage to **your pet** arising from normal activity or an **accident**.

15) **Medically Necessary.** Medical services, supplies or treatments provided by a **veterinarian** to treat covered **pets** which are:

    a.   consistent with symptoms or diagnosis;

    b.   appropriate and meet generally accepted veterinary practice standards;

    c.   not primarily for the convenience of the **pet parent**, **your veterinarian** or other providers; and

    d.   consistent with the most appropriate supply or level of services which can safely be provided to the **pet**.

16) **Medication.** Any veterinary recommended **medications** prescribed by **your veterinarian** and approved by the Food and Drug Administration (FDA) for veterinary use.

17) **Neutering.** Orchiectomy, or surgical removal of the testicles.

18) **Pet** or **Pets.** A domestic cat or dog that is owned for companionship or as a help dog. **Pet** or **Pets** do not include a domestic cat or dog that is involved in activities other than companionship or helping, including, but not limited to, racing, breeding, law enforcement, guarding or commercial activities.

19) **Pet Parent.** The owner of the **pet,** including owner's spouse or partner.

20) **Pet Policy Effective Date.** 12:01 a.m. of the day following the date you enroll **your pet**, as shown on the **pet schedule** of the **declarations page**, subject to the waiting periods as defined in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.,** and **1) d.**

21) **Pet Schedule.** The table shown on the **declarations page** that identifies the **pet policy effective date**, policy number and **coverage** options related to a specific insured **pet.**

22) **Policy.** The terms and conditions and most recent **declarations page** that includes any endorsements that apply.

23) **Policy Effective Date.** 12:01 a.m. of the day following the date Shown in the Declarations, subject to the waiting periods as defined in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.,** and **1) d.**

24) **Pre-existing conditions** means:

    a. **Illness** or **condition** which developed or redeveloped prior to the **pet policy effective date**;

    b. an **injury,** or recurrence of an **injury,** as a result of an **accident** that occurred prior to the **pet policy effective date**; or

    c. any **condition** or complication resulting from an **illness** that developed, or any **injury** as a result of an **accident** that occurred prior to the **pet policy effective date.**

25) **Spaying.** Ovariohysterectomy, or resection of the ovaries and uterus.

26) **Supplies.** Any item that is **medically necessary**, as determined by the **veterinarian**, that is safe and effective for its intended use, and that omission would adversely affect the insured **pet**.

27) **Surgery** or **Surgeries.** Any procedure that treats diseases or **injuries** by operative manual and instrumental treatment.

28) **Vaccination.** The administration of an industry-recognized commercial vaccine by a registered licensed **veterinarian**. The vaccine must be in accordance with the manufacturer's recommendations, following a complete **clinical examination,** for prevention of disease.

29) **Veterinarian.** A properly licensed and registered **veterinarian** in active practice in the area where the **pet** is treated or examined. **Veterinarian** shall not include **you** or a member of **your** immediate family.

30) **Veterinary Examinations Fees.** Fees charged for the professional opinion of a **veterinarian**. Also referred to as consultation, examination, referral, and recheck fees.

31) **Veterinary Treatment** means**:**

    a. X-rays;

    b. Laboratory and **diagnostic tests**;

    c. **Medication**;

    d. **Surgeries;**

    e. **Supplies;**

    f. **Hospitalization;**

    g. Euthanasia; and

    h. Nursing care;

provided by a licensed **veterinarian** and their staff under direct supervision.

32) **Waiting Periods.** 15 days from the **Pet Policy Effective Date** for **accidents** and **illness** and 12 months from the **Pet Policy Effective Date** for **illness** related to hip dysplasia.

33) **Working Pets.** Any **pet** involved in activities other than companionship or helping, including, but not limited to, racing, breeding, law enforcement, guarding or for other commercial use.

34) **Your Pet.** The dog or cat named in the **pet schedule** of the **declarations page**.