The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

STEVEN BENANAV, MONICA KOWALSKI, and KATHERINE THOMAS, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

HEALTHY PAWS PET INSURANCE LLC,

Defendant.

No. 2:20-cv-00421-RSM

**AMENDED CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs Steven Benanav, Monica Kowalski, and Katherine Thomas ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this Complaint against Defendant Healthy Paws Pet Insurance ("Healthy Paws" or "Defendant"), and state as follows:

## I.  NATURE OF THE ACTION

1.      This class action is brought on behalf of Plaintiffs and similarly situated pet insurance policyholders who were deceived by Healthy Paws regarding the true costs of Healthy Paws' pet insurance.

2.      Healthy Paws is an insurance provider which markets and administers pet insurance policies to consumers.

AMENDED CLASS ACTION COMPLAINT - 1

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

3.       Although Healthy Paws refers to itself as "Healthy Paws Pet Insurance," it is not an insurance company. Instead, Healthy Paws markets and administers insurance for companies, including ACE American Insurance Company ("ACE"), Indemnity Insurance Company of North America ("Indemnity"), and Westchester Fire Insurance Company ("Westchester").

4.       ACE, Indemnity, and Westchester are three subsidiaries of the same parent company, CHUBB Ltd. Healthy Paws began marketing and administering policies for these companies according to a "General Agency Agreement" dated October 1, 2012.

5.       According to the General Agency Agreement, the insurers provided Healthy Paws policies, and Healthy Paws took responsibility for selling and administering the policies through advertising, website development, policy quoting, issuance, servicing, and claims adjudication.

6.       Importantly, the policies all contained the same terms regarding premium increases. The policies provided that rates would only increase "to reflect changes in the costs of <u>veterinary medicine</u>." In other words, consumers who purchased Healthy Paws pet insurance expected that their premium would only increase as the costs of veterinary medicine increased.

7.       Healthy Paws promised in its marketing materials and policy documents that premiums would remain low throughout the life of consumers' pets. Nowhere did Healthy Paws warn that premiums could increase based on factors other than the costs of veterinary care.

8.       After purchasing Healthy Paws pet insurance, however, consumers found that their policy premiums increased drastically year by year—at a rate far outpacing the general costs of veterinary medicine. For example, in the seven years Plaintiff Benanav owned his Healthy Paws policy, his premiums increased over <u>300%</u>.

AMENDED CLASS ACTION COMPLAINT - 2

9.      Consumers eventually learned that Healthy Paws' marketing regarding the premiums was false; Healthy Paws increased premiums for reasons completely unrelated to the cost of veterinary care, including a pet's age.

10.      Nowhere in Healthy Paws' marketing materials, website, Policies, or sample policies does Healthy Paws warn consumers that premiums may increase due to factors like pet age.

11.      Healthy Paws' bait-and-switch lured consumers into purchasing Policies based on the false promise of low monthly premiums that would increase only modestly for "all consumers" to "reflect the increased costs of veterinary care." Then, only when consumers were locked in did the Policy premiums increase exorbitantly based on factors other than the "costs of veterinary care." For those consumers who wanted to maintain pet insurance, many had no choice but to continue paying Healthy Paws' exorbitant premiums because many pets age out of competing pet insurance options.

12.      Had consumers known of the surprise, age-related increases in monthly premiums, they never would have signed up for Healthy Paws insurance.

13.      Plaintiffs seek to represent a class of consumers who own or owned a Policy and were deceived by Healthy Paws' marketing. Plaintiffs and class members have been injured by Healthy Paws' practices and seek actual damages, statutory damages, punitive damages, restitution and an injunction to prevent Healthy Paws from continuing to engage in its illegal practices described herein.

## II.  PARTIES

14.      Plaintiff Benanav is a citizen and resident of Los Angeles, California. Plaintiff Benanav purchased a Healthy Paws insurance policy which became effective March 27, 2012. A copy of Plaintiff Benanav's policy is attached hereto as **Exhibit A**. Over the years, Plaintiff's policy has continued to bear the Healthy Paws Pet Insurance brand name but has been

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1   underwritten by various insurers including Markel American Insurance Company (2012-2013),

2   Ace American (2013-2019), and Westchester Fire Insurance Company (starting in 2020-).

3       15.     Plaintiff Thomas is a citizen and resident of New Jersey. Plaintiff Thomas

4   purchased a pet insurance policy through Healthy Paws in 2014. A copy of Plaintiff Thomas'

5   policy is attached as **Exhibit B**. Plaintiff Thomas's policy has been continuously administered

6   by Healthy Paws and was issued by ACE.

7       16.     Plaintiff Kowalski is a citizen and resident of Illinois. Plaintiff Kowalski

8   purchased a Healthy Paws insurance policy which became effective in 2011. A copy of

9   Plaintiff Kowalski's policy is attached hereto as **Exhibit C.** Plaintiff Kowalski's policy has

10  been continuously administered by Healthy Paws but has been underwritten by different

11  insurers, including Markel American Insurance Company (2012-2013) and ACE (2013-).

12      17.     Defendant Healthy Paws administers pet insurance policies and is responsible

13  for sales and marketing; website development and maintenance; policy quoting, issuance and

14  servicing; and claims adjudication. Healthy Paws maintains its principal place of business in

15  Bellevue, Washington.  Beginning in 2010, Healthy Paws issued pet insurance policies in the

16  United States using standardized contracts.

## III.  JURISDICTION AND VENUE

18      18.     This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C.

19  § 1332(d) because this is a class action with diversity between at least one class member

20  (including Plaintiff) and one Defendant and the aggregate amount of damages exceeds

21  $5,000,000. This action therefore falls within the original jurisdiction of the federal courts

22  pursuant to the Class Action Fairness Act, 28 U.S.C § 1332(d).

23      19.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a

24  substantial portion of the events giving rise to Plaintiffs' causes of action occurred in this

25  District.

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

## IV.  FACTUAL ALLEGATIONS

**A.     Background: The Pet Insurance Industry Exploits Our Love for Pets**

20.     An astounding 67% of American households, or 85 million families, own a pet.

21.     The pet industry—once limited to Milkbones and kibble—has exploded in popularity with several corporations beginning in recent years to market and sell pet-oriented products and services. Pet daycares, pet hotels, and even pet spas have begun to pop up with regularity.

22.     More and more, Americans regard their pets as members of their family and more and more, Americans are demanding similar services for their pets as they do for their family members—and that includes health insurance.

23.     Pet health insurance companies, including Healthy Paws, have latched onto pet owners' love of their pets, referring to their customers and policyholders as "pet parents."

24.     Pet health insurance has been marketed as a way to help defray rising veterinary expenses and avoid what has been termed as "economic euthanasia" — the necessity of putting a pet down because the owner can't afford treatment.

25.     More than two million pets in the United States and Canada were insured at the end of 2017 according to the North American Pet Health Insurance Association.

26.     But the pet insurance market is rife with abuse.

27.     The director of insurance with the Consumer Federation of America recently commented that the purchase of pet insurance is "often motivated by a combination of love and fear" rendering the buyer particularly vulnerable.

28.     Wide variations in pet insurance policies—what they cover, what they exclude, and what they cost—does not make the purchasing decision any easier for consumers.

29.     Of course, the decision whether to buy or forego pet insurance is ultimately an economic calculation premised on a litany of unknowns: the buyer must calculate the cost of a pet's future veterinary care as compared to the cost of monthly premiums.

AMENDED CLASS ACTION COMPLAINT - 5

30.     Because most pet insurance policies exclude pre-existing conditions and require pets to undergo a veterinary exam prior to enrollment, buyers of health insurance are forced to evaluate the risk that a healthy pet becomes ill and what the veterinary care for any future hypothetical medical condition might cost.

31.     The cost-benefit analysis of pet insurance is necessarily dictated by the cost of monthly premiums.

32.     Many consumers, when presented with the possibility of securing the most advanced veterinary care for their pet in the event of a future illness for only $30 or $40 per month, believe that pet insurance is a good deal. And indeed, if the monthly premiums stayed that low for the duration of their pet's life, it might be.

33.     But all too often, in a cruel twist, pet insurance companies drastically increase the cost of the monthly premiums just when consumers need the insurance most: as their pets age. Suddenly, and as happened to Plaintiffs, monthly premiums may skyrocket to *hundreds* of dollars per month, thus drastically affecting the cost-benefit calculation.

34.     While some pet insurance policies may explicitly allow monthly premiums to increase based on a pet's age—thus warning consumers from the outset of the potential for a spike down the road—Healthy Paws' policies do not.

**B.     Healthy Paws Pet Insurance**

35.     Healthy Paws, while not itself an insurer, administers pet insurance policies. Indeed, all consumer interactions pertaining to the Policies go through Healthy Paws. Healthy Paws provides quotes for the Policies; consumers purchase Policies through the Healthy Paws website; Healthy Paws provides consumers with all of the relevant paperwork; the Policies themselves prominently display a Healthy Paws logo at the top; consumers submit claims through Healthy Paws; Healthy Paws informs consumers of annual increases to the monthly premiums; and any problems consumers face with their Policies are directed through Healthy Paws' customer service.

AMENDED CLASS ACTION COMPLAINT - 6

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

36.     Since 2010, Healthy Paws has administered more than 450,000 pet insurance policies in the United States. Its policies are underwritten by members of the Chubb Group.

37.     Healthy Paws markets itself as the #1 Customer-Rated pet health insurance provider since 2013.

**C.     Healthy Paws' Deceptive Marketing**

38.     On its website, Healthy Paws brags of altruistic motives: "With Healthy Paws, you can give you pet the best medical care possible . . . Everything we do is driven from our love of animals and our commitment to pet health." Healthy Paws further boasts that its terms are part of an "easy-to-understand pet insurance plan."

39.     As discussed below, however, Healthy Paws is motivated by greed more than altruism, resulting in false marketing of its "easy-to-understand" terms.

40.     Throughout the class period, Healthy Paws' website has consistently displayed misrepresentations and omissions regarding its Policies. Specifically, Healthy Paws has never informed consumers that monthly premiums will increase based on a pet's age and instead affirmatively misrepresents that premiums will only increase for all policyholders based on the rising cost of veterinary care.

41.     Indeed, at the time Plaintiff Kowalski signed up for her policy, in 2011, Healthy Paws stated in the Frequently Asked Questions page on its website:

> <u>Will my premiums increase over the life of my pet?</u>
> Due to the increasing cost of new technology and advances in veterinary care, your rates will increase slightly each year. These slight increases provide you the opportunity to offer your pet the best medical and diagnostic options available today. Keep in mind your rates will never go up to due to making claims. And all pet insurance companies, no matter how they try to market their benefits, will raise rates to keep up with the rapidly rising cost of veterinary care.

42.     Likewise, at the time Plaintiff Benanav and Plaintiff Thomas signed up for their policies, in 2012, and 2014 respectively, Healthy Paws stated in the Frequently Asked Questions page on its website:

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

<u>Will my premiums increase over the life of my pet?</u>

Due to the increasing cost of new technology and advances in veterinary care, your rates will increase slightly each year. Our plan has factored the expected increase in the cost of veterinary care into your rates so that the annual premium increases are manageable. These manageable annual increases provide you the opportunity to offer your pet the best medical and diagnostic options available today.

Rest assured, we will never penalize you with higher rates for making claims. It's not your fault your pet is unlucky!

All pet insurance companies, no matter how they market their benefits, will raise rates periodically to keep up with the rapidly rising cost of veterinary care.

43.     The above representations are false. Rather than "slightly" increasing rates "due to the increasing cost of . . . veterinary care," Healthy Paws' premiums increase dramatically based on other factors, such as the pet's age.

44.     Even today, Healthy Paws is not truthful regarding when premiums will increase. On the Frequently Asked Questions page on its website, Healthy Paws states:

Will my premiums increase?
Due to the increasing cost of new technology and advances in veterinary and specialty care, your rates will likely increase to align with the claim payouts of each state. These annual increases provide you the opportunity to offer your pet the best medical and diagnostic options available today. Premium increases are not based on claim submissions.

Additional Actions Affecting Premiums

•       Change of address

•       Adding or removing pet(s)

•       Changing coverage options (reimbursement or deductible levels)

•       Transfer of account ownership (if applied to new address)

For additional information please <u>click here</u> to see policy specific provisions related to this FAQ.

45.     Further, throughout the class period, Healthy Paws has posted a "Sample" policy on its website. The Sample Policy is provided to all consumers who request a quote via a

TURKE & STRAUSS LLP
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

prominent hyperlink. In addition, the Sample Policy is posted in numerous other places on the Healthy Paws website as well. At the bottom of the Healthy Paws webpage, the Sample Policy is posted under a link titled "View Our Policy." A hyperlink to the Sample Policy is also posted in numerous places on Healthy Paws' Frequently Asked Questions page.

46.     The Sample Policy, attached as **Exhibit D**, is materially identical to the Policy shown on Exhibits A, B, and C, including the Policy language that Policy premiums may change "to reflect changes in the costs of veterinary medicine." Nowhere on the Sample Policy does Healthy Paws state that it may increase premiums due to age, change of address, additional or fewer pets, changing coverage, and transfers of account ownership.

47.     In addition to posting the Sample Policy on its website, Healthy Paws sent Plaintiffs each of their Policies. The Sample Policy and each of the Plaintiffs' policies is prominently branded with a Healthy Paws logo at the top.

48.     Each of the Plaintiffs' Healthy Paws Policies contains the same misrepresentation concerning monthly premiums:

> MONTHLY PREMIUM:  Your monthly premium is set forth on your declarations page. **Monthly premiums may change for all policyholders to reflect changes in the costs of veterinary medicine.** We will notify you at least sixty (60) days in advance of such change.

49.     Thus, according to Healthy Paws, monthly premiums will increase only to cover "changes in the costs of veterinary medicine." Importantly, "changes in the costs of veterinary medicine" is meant to reflect an industry-wide change in the costs of veterinary medicine, as evidenced by the fact that the Policy specifies premiums may change for all policyholders.

50.     Healthy Paws never informs consumers that monthly premiums will increase based on the pet's age.

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

**D.     Monthly Premiums on Healthy Paws' Policies Increase Based on a Pet's Age**

51.     Notwithstanding Healthy Paws' representations to the contrary, the monthly premiums on Healthy Paws policies increase based on other factors besides the "changes in the cost of veterinary medicine," including the pet's age.

52.     Indeed, the State of Washington's Officer of the Insurance Commissioner recently fined Healthy Paws' underwriters, ACE and Indemnity, for numerous violations, including for Healthy Paws' conduct on their behalf. One such violation included Healthy Paws' practice of increasing premiums due to age: "Allowing Healthy Paws' producer to increase the pet age factor [in calculating monthly premiums] contrary to policy language indicating the factor would remain constant."

53.     The Commissioner further found that, despite language indicating the pet's age would not be a factor in calculating monthly premiums, in practice, Healthy Paws and its underwriters "increased the age factor annually on the policy anniversary."

54.     The Insurance Commissioner of the State of Washington is not alone in pointing out that Defendants' monthly premiums increase as pets age. Healthy Paws admitted to the practice in the New York Times.

55.     In speaking with the New York Times, Rob Jackson, chief executive of Healthy Paws, apparently told the newspaper that a "pet's age affects premiums at initial enrollment, *and also as the pet ages*." See https://www.nytimes.com/2019/01/04/your-money/pet-insurance-policies.html (last accessed March 5, 2020) (emphasis added).

56.     In fact, Healthy Paws apparently had previously misstated how a pet's age affects premiums and had the New York Times correct the misstatement. A correction at the bottom of the article reads:

> An earlier version of this article, using information supplied by Healthy Paws Pet Insurance, misstated how a pet's age affects premiums for the company's policies. **The pet's age affects the premium at the time of enrollment and as the pet gets older, not just at enrollment.**

AMENDED CLASS ACTION COMPLAINT - 10

*See id.*

57.     The same was also recently confirmed by a Healthy Paws' customer service representative's response to a complaint posted on a public forum. In a recent complaint posted on the Better Business Bureau, one consumer complained:

> When I signed my pet up for medical insurance back in 2012, I went through and researched numerous companies before selecting Healthy Paws. One of my major concerns at the time was concerning rate increases. Since it would be difficult to switch insurance companies should any conditions come up with my pet, I wanted to have some assurances that costs would continue to be manageable. I reached out to the company who provided me with the following e-mail which indicated that any annual increases would be "slight," "manageable," and "easy to budget." Recently I was informed by the company that my monthly insurance costs would be rising from $73.39 to $129.76. I would argue that, by any reasonable measure, that a 76.8% increase does not fit any of these terms.

*See* https://www.bbb.org/us/wa/bellevue/profile/pet-insurance/healthy-paws-pet-insurance-llc-1296-22528158/complaints#367541749 (last accessed March 5, 2020).

58.     In response a member of Healthy Paws' customer service team responded:

> In accordance with the terms of the Pet Health Insurance Policy and the associated rating rules, monthly premiums may change for all policyholders.  Premiums are determined based on the rates and rating rules filed and approved within each state's Department of Insurance, **which reflect the cost of treatment advances in veterinary medicine, your individual pet's breed, gender, age, and other factors, in addition to the overall claims experience for the program within the region your pet resides.**

*See id.*

59.     In other words, Healthy Paws admits that a pet's age affects its calculations of policyholders' monthly premiums.

60.     As a direct and proximate result of Healthy Paws' misrepresentations and omissions, Plaintiffs and the Classes have been damaged, and those damages are continuing in nature.

AMENDED CLASS ACTION COMPLAINT - 11

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

**E.    Plaintiffs Benanav**

61.    In 2012, Plaintiff Benanav purchased a pet insurance policy for his dog, Mali. The policy was issued by Markel American Insurance Company and marketed and administered by Health Paws.

62.    When Plaintiff Benanav purchased the policy, Mali was five years old and in good health.

63.    Plaintiff Benanav purchased a pet insurance policy in part to ensure he would be able to cover the costs of Mali's veterinary care as Mali aged.

64.    Plaintiff Benanav purchased the policy in reliance on Healthy Paws' representations on its website, including that monthly premiums would not increase based on a pet's age and instead would only increase for all policyholders based on the rising cost of veterinary care.

65.    When Plaintiff Benanav signed up for Mali's policy, the monthly premiums were $33.85 per month.

66.    From 2013-2019, however, Plaintiff Benanav's premiums increased dramatically.

67.    In January of 2013, for example, Plaintiff Benanav paid a monthly premium of $33.85. However, by 2016, Plaintiff Benanav's premium increased from $39.03 to $44.80. In 2018, the monthly premium increased to $55.61. In 2019, the monthly premium increased to $69.67. In 2020, the monthly premium increased to a shocking $104.50.

68.    Plaintiff Benanav's premiums thus increased by over 300% from 2013 to 2020.

69.    This change is substantially greater than the overall change in the costs of veterinary medicine during that time. According to the Nationwide Purdue Veterinary Price Index, 2019 update:

> Based on more than more than 30.6 million pet health treatments from January of 2009 through December of 2018 with a total value of $3.3 billion, the Nationwide | Purdue study shows that veterinary pricing (what consumers actually paid for care, not the

TURKE & STRAUSS LLP
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

> "list prices" at veterinary practices before any discounting)
> decreased in the recessionary and post-recessionary period of 2009
> through 2014 by 3.6 percent. In 2015, a sharp recovery began.
> **Overall, veterinary pricing during the last four years, inclusive
> (end of 2014 to the end of 2018), has increased by 21.1 percent**,
> offsetting the period of 2009 to 2014 when veterinary pricing was
> effectively stagnant or negative.

Available at http://nationwidedvm.com/wpcontent/uploads/2019/11/FINAL_Nationwide-Purdue_2019-Veterinary-Price-Index.pdf (emphasis added) (last accessed March 9, 2020).

70.    During the four-year period from the end of 2014 through the end of 2018, when the overall costs of veterinary medicine rose 21.1% according to the Nationwide Purdue Index, Plaintiff Benanav's premiums increased from $33.62 to $55.61, a whopping 65.4%.

71.    And in the two years' since, Plaintiff Benanav's premiums have increased from $55.61 to $104.50, an additional 87%.

72.    Mali is now 13 years old and Plaintiff Benanav cannot switch pet insurance providers because Mali has aged out of most policy offerings. Moreover, the underwriter and issuer for Plaintiff's insurance policy has changed again, this time to Westchester. Westchester issued Plaintiff Benanav a policy that is materially the same as his previous policies, including the policies' terms regarding premium changes.

73.    In accordance with Healthy Paws' representations, Plaintiff Benanav expected the monthly premiums on Mali's policy to rise only slightly in line with inflation throughout the duration of the policy. Had Plaintiff Benanav known that the monthly premiums would drastically increase as Mali aged, he never would have signed up for the policy.

**F.    Plaintiff Thomas**

74.    On July 25, 2014, Plaintiff Thomas purchased a pet insurance policy marketed by Healthy Paws and issued by ACE. The policy was for her dog, Louie.

75.    Plaintiff Thomas signed up for the Healthy Paws insurance policy in part to ensure she would be able to cover the costs of her dog's veterinary care as he aged.

AMENDED CLASS ACTION COMPLAINT - 13

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

76.     Plaintiff Thomas purchased the policy in reliance on Healthy Paws' representations, including that monthly premiums would not increase based on a pet's age and instead would only increase for all policyholders based on the rising cost of veterinary care.

77.     When Plaintiff Thomas signed up for her policy, the monthly premiums were $40.61 per month.

78.     In 2019, Plaintiff Thomas' monthly premiums were $41.69.

79.     In 2020, however, Plaintiff Thomas' monthly premiums increased to $54.53.

80.     Plaintiff Thomas's premiums thus increased by over 30% in one year.

81.     This change is substantially greater than the overall change in the costs of veterinary medicine over the course of the year.

82.     In accordance with Healthy Paws' misrepresentations and omissions and the policy's terms, Plaintiff Thomas expected the monthly premiums on her policy to rise only slightly in line with inflation throughout the duration of the policy. Indeed, had Plaintiff Thomas known that the monthly premiums would drastically increase as her dog aged, she never would have signed up for the policy.

**G.     Plaintiff Kowalski**

83.     In 2011, Plaintiff Kowalski purchased a pet insurance policy marketed and administered by Healthy Paws and issued by Markel American Insurance Company. Plaintiff Kowalski purchased the policy for her dogs, Lola, Olive, and Jenks.

84.     On or about January 23, 2013, the underwriter and issuer for Plaintiff Kowalski's policy changed from Markel American Insurance Company to ACE.

85.     After Jenks passed away in 2015, in 2016, Plaintiff Kowalski purchased pet insurance for her new dog, Tulip. The policy was marketed and administered by Healthy Paws and issued by ACE.

86.     Plaintiff Kowalski signed up for insurance policy in part to ensure she would be able to cover the costs of her dogs' veterinary care as they aged.

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

87.     Plaintiff Kowalski purchased the policy in reliance on Healthy Paws' representations, including that monthly premiums would not increase based on a pet's age and instead would only increase for all policyholders based on the rising cost of veterinary care.

88.     When Plaintiff Kowalski signed up for her policy, the monthly premiums were $25.41 and $31.44 per month for Lola and Olive, respectively.

89.     Over the years, as her dogs aged, Plaintiff Kowalski's premiums drastically increased.

90.     In 2019, Plaintiff Kowalski's monthly premiums increased to $50.87 and $63.50 per month for Lola and Olive, and by 2020 they increased to $69.18 and $86.36 per month, respectively. Plaintiff Kowalski's premiums thus increased by over 35% in one year. And, since buying the policies in 2011, Plaintiff Kowalski's premiums have increased by over 170%.

91.     This change is substantially greater than the overall change in the costs of veterinary medicine during that time.

92.     In accordance with Healthy Paws' misrepresentations and omissions and the policy's own terms, Plaintiff Kowalski expected the monthly premiums on her policy to rise only slightly in line with inflation throughout the duration of the policy. Indeed, had Plaintiff Kowalski known that the monthly premiums would drastically increase as her dogs aged, she never would have signed up for the policy.

## V.  CLASS ACTION ALLEGATIONS

93.     This action is brought by Plaintiffs individually and on behalf of classes pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

**The National Class is defined as follows:**

> All persons who, within the applicable statute of limitations, had their monthly premiums increase on a Healthy Paws pet insurance policy (Proposed class representatives: Benanav, Kowalski, and Thomas)

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

**The California Subclass is defined as follows:**

All persons in the state of California who, within the applicable statute of limitations, had their monthly premiums increase on a Healthy Paws pet insurance policy (Proposed class representative: Benanav).

**The Illinois Subclass is defined as follows:**

All persons in the state of Illinois who, within the applicable statute of limitations, had their monthly premiums increase on a Healthy Paws pet insurance policy (Proposed class representative: Kowalski).

**The New Jersey Subclass is defined as follows:**

All persons in the state of New Jersey who, within the applicable statute of limitations, had their monthly premiums increase on a Healthy Paws pet insurance policy (Proposed class representative: Thomas).

Excluded from the Classes are Healthy Paws, its officers and directors, members of their immediate families, and the heirs, successors or assigns of any of the foregoing.

94. **Numerosity.** The Classes consists of hundreds or thousands of consumers of pet insurance and is thus so numerous that joinder of all members is impracticable.

95. **Ascertainability.** The identities and addresses of all members of the Classes can be readily ascertained from Healthy Paws' business records.

96. **Typicality.** The claims asserted by Plaintiffs are typical of the claims of members of the Classes inasmuch as Plaintiffs and Class members were deceived by Healthy Paws in the same manner.

97. **Adequacy.** Plaintiffs will fairly and adequately protect the interests of the members of the Classes and do not have any interests antagonistic to those of the other members of the Classes. In addition, Plaintiffs have retained attorneys who are knowledgeable and experienced in class and complex litigation.

AMENDED CLASS ACTION COMPLAINT - 16

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

98.     ***Commonality and Predominance.*** Common questions of law and fact affecting members of the Classes predominate over any individualized issues. These predominating common questions include the following:

a.     Whether Healthy Paws misrepresented and/or omitted material facts to policyholders;

b.     Whether Plaintiffs and members of the Classes sustained damages as a result of Healthy Paws' breaches of the policies; and

c.     Whether Plaintiffs and members of the Classes are entitled to damages, restitution, and/or other relief as a remedy for Healthy Paws' breaches of the policies.

99.     ***Superiority.*** A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a.     The complexity of issues involved in this action and the expense of litigating the claims, means that few, if any, class members could afford to seek legal redress individually for the wrongs that Defendant committed against them, and absent class members have no substantial interest in individually controlling the prosecution of individual actions;

b.     This action will cause an orderly and expeditious administration of the class claims and foster economies of time, effort and expense, and ensure uniformity of decisions;

c.     Without a class action, many class members would continue to suffer injury, and Healthy Paws' violations of law will continue without redress while Defendant continues to reap and retain the substantial proceeds of their wrongful conduct; and

100.     ***Manageability.*** This action does not present any undue difficulties that would impede its management by the Court as a class action.

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

## VI.  FIRST CLAIM FOR RELIEF
### Violation of Washington's Consumer Protection Act
### RCW § 19.86, *et seq.*
### (On Behalf of Plaintiffs and the National Class)

101.    Plaintiffs incorporate and restate by reference all of the preceding allegations as though fully set forth herein.

102.    Washington's Consumer Protection Act ("CPA") makes unlawful any "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…" RCW 19.86.020.

103.    Defendant engaged in misleading, false, unfair or deceptive acts or practices that violated the Washington Consumer Protection Act through both its affirmative misrepresentations and material omissions on its website, in its sample policy, and in the policy documents, as discussed above. Specifically, Defendant never stated that monthly premiums would increase based on a pet's age and instead stated that premiums would only increase for all policyholders based on the rising cost of veterinary care.

104.    Defendant intentionally and knowingly engaged in these unlawful practices. Upon information and belief, Defendant knew premiums would increase based on a pet's age and misled Plaintiffs and other class members into signing up for policies based on these misrepresentations and omissions.

105.    Had Plaintiffs known their premiums would increase based on their pet's age, they would not have signed up for the policies.

106.    Defendants' false, misleading, unfair, and deceptive acts and practices were intentional, knowing, and occurred in the conduct of Defendant's trade and commerce. These bad acts were intended to, and did, result in Defendant profiting from its misleading practice.

107.    Defendant's false, misleading, unfair, and deceptive acts and practices caused Plaintiffs and the Class injury because they paid more for their policies than they should have paid.

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

108.    Plaintiffs and the Class have been injured by Defendant's CPA violations in an amount to be determined at trial. Plaintiffs seek all damages available under CPA § 19.86.090, including actual damages, costs (including reasonable attorneys' fees), and treble damages.

109.    Defendant's conduct affects the public interest as millions of consumers purchase pet insurance and rely on companies' representations—including Defendant's representations—concerning the price of the policies. Plaintiffs, the Class, consumers, and the public have a strong interest in ensuring that companies truthfully disclose the factors they consider in setting monthly premiums. Defendant's false, misleading, unfair, and deceptive acts affected hundreds or thousands of consumers by causing them to overpay for Healthy Paws' policies.

### VII.  SECOND CLAIM FOR RELIEF:
### Violation of California's Unfair Competition Law
### Cal. Bus. & Prof. Code § 17200, *et seq.*
### (On Behalf of Plaintiff Benanav and the California Class)

110.    Plaintiffs incorporate and restate by reference all of the preceding allegations as though fully set forth herein.

111.    This claim is brought on behalf of Plaintiffs and the California Class in the event the Court declines to apply Washington law to the nationwide class.

112.    Plaintiff Benanav and the members of the California Class have standing to pursue a cause of action against Defendant for unfair and/or unlawful business acts or practices because he has suffered an injury-in-fact and lost money due to Defendant's actions and/or omissions as set forth herein.

113.    Defendant's conduct as alleged herein constitutes a fraudulent business practice within the meaning of Bus. & Prof. Code § 17200, *et seq.*, through both its affirmative misrepresentations and material omissions on its website, in its sample policy, and in the policy documents, as discussed above. Specifically, Defendant never stated that monthly premiums would increase based on a pet's age and instead stated that premiums would only increase for

AMENDED CLASS ACTION COMPLAINT - 19

TURKE & STRAUSS LLP
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1   all policyholders based on the rising cost of veterinary care. Such representations and omissions

2   misled the Plaintiffs and California Class members and are likely to mislead the public.

3       114.    Had Plaintiffs known his premiums would increase based on pet-age, he would

4   not have signed up for the policy.

5       115.    Defendant's conduct alleged herein is "unfair" under Bus. & Prof. Code

6   § 17200 because it is immoral, unethical, oppressive, unscrupulous, and/or substantially

7   injurious to consumers, and any utility of such practices is outweighed by the harm caused to

8   consumers, including to Plaintiff, the California Class, and the public.

9       116.    Defendant knew or should have known that their representations were false,

10   deceptive, and misleading.

11       117.    There were reasonably available alternatives to further Defendant's legitimate

12   business interests.

13       118.    Reasonable consumers had no way of knowing that Defendant was engaged in

14   false, deceptive, and misleading advertising, and therefore could not have reasonably avoided

15   the injuries that they suffered.

16       119.    Defendant's wrongful conduct is ongoing and part of a pattern or generalized

17   course of conduct.

18       120.    Pursuant to Bus. & Prof. Code § 17203, Plaintiffs seeks an injunction on behalf

19   of themselves and the general public enjoining Defendant from continuing to engage in the

20   unfair competition alleged above, or any other act prohibited by law, to prevent future

21   consumers from being misled by Defendant's actions.

22       121.    Plaintiffs also seeks an order requiring Defendant to make full restitution and to

23   disgorge its ill-gotten gains wrongfully obtained from members of the Class as permitted by

24   Bus. & Prof. Code § 17203.

25       122.    Additionally, Plaintiffs and the California Class members seek an order

26   requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

27

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1
2

## VIII.  THIRD CLAIM FOR RELIEF:
## Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
## 815 ILCS 505/1, *et seq.*
## (On Behalf of Plaintiff Kowalski and the Illinois Class)

3
4

123.    Plaintiffs incorporate and restate by reference all of the preceding allegations as though fully set forth herein.

5
6

124.    This claim is brought on behalf of Plaintiff Kowalski and the Illinois Class in the event the Court declines to apply Washington law to the nationwide class.

7

125.    Defendant is a "person" as that term is defined in 815 ILCS 505/1 (c).

8
9

126.    Plaintiffs and the Illinois Class members are "consumers" as that term is defined in 815 ILCS 505/l(e).

10
11
12
13
14
15
16

127.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ... in the conduct of trade or commerce ... whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

17
18
19
20
21
22
23

128.    Defendant engaged in misleading, false, unfair or deceptive acts or practices that violated the Illinois CFA through both its affirmative misrepresentations and material omissions on its website, in its sample policy, and in the policy documents, as discussed above. Specifically, Defendant never stated that monthly premiums would increase based on a pet's age and instead stated that premiums would only increase for all policyholders based on the rising cost of veterinary care. Defendant intentionally and knowingly misrepresented material facts regarding with intent to mislead Plaintiffs and the Illinois Class members.

24
25
26

129.    Defendant intentionally and knowingly engaged in these unlawful practices. Upon information and belief, Defendant knew premiums would increase based on a pet's age

27

AMENDED CLASS ACTION COMPLAINT - 21

TURKE & STRAUSS LLP
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

and misled Plaintiffs and other Illinois Class members into signing up for policies based on these misrepresentations and omissions.

130. Defendant knew or should have known that its conduct violated the ICFA, as it should have known that the representations it was making were false. Defendant owed Plaintiffs and the Illinois Class a duty to disclose the reasons monthly premiums would increase.

131. Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive consumers, including Plaintiff.

132. Had Plaintiff known her premiums would increase based on her pet's age, she would not have signed up for the policy.

133. Plaintiff and the Illinois Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information.

134. Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

135. As a direct and proximate result of Defendant's violations of the ICFA, Plaintiff and the Illinois Class have suffered injury-in-fact and/or actual damage.

136. Pursuant to 815 I LCS 505/10a(a), Plaintiff and the Illinois Class seek monetary relief against Defendant in the amount of actual damages, as well as punitive damages because Defendant acted with fraud and/or malice and/or was grossly negligent.

137. Plaintiff also seek an order enjoining Defendant's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1 *et seq*.

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## IX. FOURTH CLAIM FOR RELIEF:
### Violation of New Jersey's Consumer Fraud Act
### N.J.S.A. 56:8-1 *et seq.*
### (On Behalf of Plaintiff Thomas and the New Jersey Class)

138.     Plaintiffs incorporate and restate by reference all of the preceding allegations as though fully set forth herein.

139.     This claim is brought on behalf of Plaintiff Thomas and the New Jersey Class in the event the Court declines to apply Washington law to the nationwide class.

140.     The Consumer Fraud Act was enacted by the New Jersey legislature to protect consumers from unfair, unconscionable and deceptive business practices.

141.     Certain of Defendant's policies and/or practices described in this Complaint constitute unfair, unconscionable or deceptive trade or business practices. Defendant engages in such conduct as a general business practice, uniformly and as a matter of policy misrepresenting and omitting the reasons monthly premiums increase on its policies. Specifically, Defendant never stated that monthly premiums would increase based on a pet's age and instead stated that premiums would only increase for all policyholders based on the rising cost of veterinary care. Defendant intentionally and knowingly misrepresented material facts regarding with intent to mislead Plaintiff and the New Jersey Class members.

142.     Defendant intentionally and knowingly engaged in these unlawful practices. Upon information and belief, Defendant knew premiums would increase based on a pet's age and misled Plaintiff and other New Jersey Class members into signing up for policies based on these misrepresentations and omissions.

143.     Had Plaintiff known her premiums would increase based on her pet's age, she would not have signed up for the policy.

144.     These violations have directly, foreseeably, and proximately caused damages to Plaintiff and the New Jersey Class in an amount yet to be determined.

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

145.    Accordingly, Plaintiff and the New Jersey Class members are entitled to relief including, but not limited to, actual damages, treble damages, injunctive relief, and/or attorney's fees and costs.

## IX.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Classes pray for judgment as follows:

A.    Certifying this action for class treatment pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding Plaintiffs and the Classes compensatory, consequential, statutory, and punitive damages in an amount to be proven at trial;

C.    Awarding Plaintiffs and the Classes pre-judgment and post-judgment interest, as well as attorneys' fees and costs, at the maximum rate allowed by law;

D.    Issuing declaratory and injunctive relief to prevent Healthy Paws' ongoing deceptive conduct as asserted herein; and

E.    Awarding Plaintiffs and the Classes such other relief as this Court may deem just and proper under the circumstances.

## X.  JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs and the Classes hereby demand a trial by jury as to all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 8th day of June, 2020.

TURKE & STRAUSS LLP

By:  _/s/ Samuel J. Strauss, WSBA #46971_
    Samuel J. Strauss, WSBA #46971
    Email:  sam@turkestrauss.com
    936 North 34th Street, Suite 300
    Seattle, Washington  98103-8869
    Telephone: (608) 237-1775
    Facsimile:  (608) 509-4423

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

Jeffrey D. Kaliel, *Admitted Pro Hac Vice*
Email: kaliel@kalielpllc.com
Sophia Goren Gold, *Admitted Pro Hac Vice*
Email: sgold@kalielpllc.com
KALIEL PLLC
1875 Connecticut Avenue NW, 10th Floor
Washington, D.C. 20009
Telephone: (202) 350-4783

Stan M. Doerrer, *Admitted Pro Hac Vice*
Email: stan@doerrerlaw.com
LAW OFFICE OF STAN DOERRER PLLC
950 N Washington Street
Alexandria, VA 22314
Telephone: (703) 348-4646

*Attorneys for Plaintiff*

AMENDED CLASS ACTION COMPLAINT - 25

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

**CERTIFICATE OF SERVICE**

I hereby certify that on  June 8, 2020, I caused a true and correct copy of the foregoing to be filed in this Court's CM/ECF system, which sent notification of such filing to counsel of record.

DATED this 8th day of June, 2020.

TURKE & STRAUSS LLP

By:   /s/ Samuel J. Strauss, WSBA #46971
Samuel J. Strauss, WSBA #46971
Email:  sam@turkestrauss.com
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
Telephone: (608) 237-1775
Facsimile:  (608) 509-4423

TURKE & STRAUSS LLP
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

# — EXHIBIT  A —



**WESTCHESTER FIRE INSURANCE COMPANY**

## PET HEALTH INSURANCE POLICY

Please read your Pet Health Insurance Policy carefully to determine the parties' rights and duties and what is and is not covered. Some provisions in the policy limit or restrict coverage.

Throughout this policy, the words **you** and **your,** refer to the policyholder (**Pet Parent**) shown in the Declarations Page.

The words **we, us** and **our,** refer to the company providing this insurance**.**

Words and phrases that appear in **bold type** have special meaning found in Section V. Definitions.

**I.     INSURING AGREEMENT**

**We** rely on the statements **you** made in the application. Upon **your** payment of the premiums when due, **we** will provide **coverage** as specifically described in this **policy** for **your pet** as shown on the **declarations page**.

Benefits are subject to terms, conditions, limitations and exclusions of this **policy** and to **your** responsibility for the **coinsurance** and **deductible**. **Coverage** is in effect at the time and date shown on the **declarations page** subject to the waiting periods described in **II. EXCLUSIONS & LIMITATIONS 1) b.**, **1) c.** and **1) d.**

1)   **WE COVER**: Reimbursement of the cost incurred by **you** for **medically necessary veterinary treatment** recommended by **your veterinarian** for **conditions** covered by this **policy.** These costs will be covered when **your pet:**

   a.   develops an **illness,** or

   b.   has an **injury** as a result of an **accident;**

   during the **coverage term**.

   This **policy** shall not cover amounts charged by the treating veterinary clinic that are greater than the treating veterinary clinic's standard or published charges.

2)   **LIFETIME LIMIT**: The maximum amount **you** may claim while **coverage** is in force with respect to any one **pet** for **veterinary treatment** over the lifetime of that **pet**. The Lifetime Limit is shown on the **declarations page**. Subject to the maximum lifetime limit, there are no limits per claim or per year.

3)   **COINSURANCE**: The portion **you** are required to pay for **your pet's veterinary treatment**. **Your pet's coinsurance** amount is shown on the **pet schedule** of the **declarations page**.

4)   **DEDUCTIBLE**: **Your pet's deductible** is shown on the **pet schedule** of the **declarations page. Your pet's deductible** shall apply once per **coverage term**.

5)   **MONTHLY PREMIUM**: **Your** monthly premium is set forth on **your declarations page**. Monthly premiums may change for all policyholders to reflect changes in the costs of veterinary medicine. **We** will notify **you** at least sixty (60) days in advance of such change.

6)   **CHANGES TO YOUR COVERAGE**: **Your coverage**, **coinsurance**, and **deductible** will not change due to **your pet'**s claims experience.

**II.     EXCLUSIONS & LIMITATIONS**

**1)   GENERAL EXCLUSIONS**

   **We** do not cover:

   a.   **Veterinary examination fees**.

b.  **Injury** from an **accident** that occurs within the first fifteen (15) days following the **pet policy effective date.**

c.  **Illness** that occurs or recurs within the first fifteen (15) days following the **pet policy effective date**.

d.  **Illness** related to hip dysplasia that occurs or recurs within the first twelve (12) months following the **pet policy effective date.**

e.  Conditions or complications that result from **accidents** that occur or **illnesses** that develop or redevelop within the first fifteen (15) days following the **pet policy effective date.**

**2)  PRE-EXISTING CONDITIONS**

**We** do not cover **pre-existing conditions.**

**3)  PREVENTIVE CARE EXCLUSIONS**

**We** do not cover:

a.  **Spaying** and **neutering**.

b.  Preventive healthcare including **vaccinations** or titer test, flea control, heartworm **medication**, de-worming, nail trim, and grooming.

c.  Parasite control including but not limited to internal and external parasites for which readily available prophylactic treatments are available.

d.  **Dental health care**, however if injury to teeth is caused by an **accident**, **we** do cover the cost of extraction and/or reconstruction of damaged teeth.

e.  Anal gland expression.

**4)  OTHER EXCLUSIONS**

**We** do not reimburse the costs, fees or expenses associated with:

a.  **Injury** or **illness** due to any intentional, neglectful or preventable act, including organized dog fighting, by **you** or a member of **your** household;

b.  Elective procedures, cosmetic procedures, preventive procedures including but not limited to:

    1.  tail docking;

    2.  ear cropping;

    3.  de-clawing;

    4.  micro-chipping;

    5.  dew claw removal; or

    6.  ear cleaning;

c.  Boarding or transport expenses;

d.  **Conditions** arising from a specific activity if the same or a similar activity occurred prior to the **pet policy effective date** and displayed the propensity for the activity to recur and cause **injury** or **illness** to **your pet**;

e.  Future treatment for **injury** or **conditions** of a leg when cruciate ligament problems to any other leg existing prior to the **pet policy effective date**, have been identified, regardless of whether or not the new signs or symptoms are related to such cruciate ligament problems;

f.  Diseases preventable by vaccines and prophylactic **medications** (such as heartworm, lice, internal parasites and fleas);

g.  Complications of **conditions** excluded or limited by this **policy**;

h. Abnormalities where **clinical symptoms** were apparent prior to the **pet policy effective date**. This includes **conditions** that are detectable by a routine physical exam by **your veterinarian**;

i. Claims in any way arising from the lack of use and/or implementation of preventive healthcare products and/or methods when such products and/or methods would be in accordance with generally accepted veterinary standards. Routine healthcare includes: **vaccinations**, flea control, heartworm **medication**, de-worming, dental care, ear plucking, grooming, and prudent regular care;

j. Special diets, foods, vitamins, grooming, nail trims, shampoo and bathing;

k. Any claim for loss from a nuclear incident as defined in the Nuclear Liability Act, nuclear explosion or contamination by radioactive material;

l. **Conditions** arising from any specific activity if the same or similar activity occurs after **you** have received written notice from **us** regarding the specific activity;

m. Experimental or investigational treatment or medicine;

n. Breeding or **conditions** relating to breeding, whelping, and queening;

o. **Diagnostic tests** for **conditions** excluded by this **policy**;

p. **Diagnostic tests** due to complications of **conditions** excluded or limited by this **policy**;

q. **Conditions** caused by war or war activities whether war be declared or not. War activities include civil war, insurrection, rebellion, or revolution or any act or **condition** incident of any of the foregoing;

r. Feeding, housing or exercise;

s. Training, therapy, **medications** or other methods or forms of behavioral modification;

t. Shipping or mailing costs unless associated with a covered compounded **medication** or **diagnostic tests**.

**5) LIMITATIONS**

a. A **pet** less than six (6) years of age on the date of enrollment must have undergone a complete **clinical examination.** The exam must have taken place either in the twelve (12) months prior to the **pet policy effective date**, or within fifteen (15) days following the **pet policy effective date**. A **pet** six (6) years of age or greater on the date of enrollment must have undergone a complete **clinical examination** within thirty (30) days prior to the **pet policy effective date,** or within fifteen (15) days following the **pet policy effective date**. **Your** failure to submit **your pet** to a complete **clinical examination** may void the **policy**. If the **policy** is voided, the **policy** premium will be refunded.

b. For **pets** six (6) years of age or greater on the date of enrollment, no **coverage** shall apply for **illness** related to hip dysplasia.

c. For **working pets**, no **coverage** shall apply for any **condition** resulting from activities related to racing, breeding, law enforcement, guarding or for any commercial use.

d. **We** will not make any payments for any claims for which **you** are entitled to be paid under any other insurance except for any additional sum which is payable over and above such other insurance.

**III.    GENERAL CONDITIONS**

1) Premium is payable monthly by Direct Debit or by charge to **your** credit card, according to the option selected by **you** on the application. This **policy** is continued until cancelled, and will renew automatically each month as long as premium payments are current. When **you** have not paid the premium, **we** may cancel this **policy. We** will let **you** know at least twenty (20) days before the date cancellation takes effect. No coverage will be provided for any claim with a date of **veterinary treatment** between the premium due date and the cancellation date, unless the premium payments are current.

2) **You** may cancel **your policy** by notifying **us** in writing via regular mail, fax or email at least fourteen (14) days in advance of **your** next premium payment.

3) **You** must be the owner of each **pet** shown on the **pet schedule**. If the **pet** owner dies, becomes unable to care for any insured **pet**, or passes the ownership of any insured **pet**, the **coverage** will continue without interruption, if approved in writing by **us**, subject to all other terms and conditions of this **policy**.

4) A **pet** is covered under this **policy** only while the **pet** is in the United States of America, or temporarily away in Canada.

5) **You** must agree to implement all reasonable means possible in the care and protection of **your pet**. **You** further agree to protect **your pet** from aggravation or recurrence of the **injury** /or **illness**.

6) This **coverage** is not transferable to other **pets**. All new **pets** are subject to a new application and your monthly payment will increase.

7) **You** are entitled to increase the **deductible** or **coinsurance** amount applicable to **your pet** at any time. This request must be made in writing and will become effective the month following approval by **us**. **You** may apply to lower the deductible or **coinsurance** amount applicable to **your pet** provided you have not previously filed a claim with **us** for that **pet**. This request must be in writing and will become effective the month following approval by **us**.

8) Notice of loss must be given by either **you** or **your** agent.

9) The loss is payable within sixty days after completion of the claim form, unless applicable state law provides for a shorter period.

10) In order to process a claim, **you** must allow **us** to contact **your** present and previous **veterinarian(s)** and provide **us** with the necessary authority to obtain any information **we** may require. In the event information relating to the history of the **pet** is missing or incomplete, the claim will not be processed. **You** must also agree to submit the **pet** to examination, if **we** require, by a **veterinarian** selected by **us**.

11) In the event of any disagreement between **you** and **us** with regard to a claim, the matter will be referred to a **veterinarian** of **ours**. If the matter is not resolved, an independent third party **veterinarian** shall be appointed by **us**. This independent third party **veterinarian's** decision shall be final and binding on all parties.

12) Every action or proceeding against **us** for the recovery of any claim under or by virtue of this contract is absolutely barred unless commenced within one year after the loss or damage occurs or unless state law requires a longer period.

## IV.   ADDITIONAL CONDITIONS

1) **MISREPRESENTATION AND FRAUD** – This **policy** will be voided if **you** have concealed or misrepresented any material fact or circumstance concerning this insurance or the **pet** covered. **We** do not provide **coverage**, for an insured who has intentionally concealed or misrepresented any such facts or circumstances before or after a loss.

2) **CANCELLATION**

   a. **We** may cancel this **policy** if **we** do not receive a monthly premium from **you** when the premium is due. In such a case a written notice will be sent to **you** at **your** last email address known to **us**. We will provide at least (20) days notice of our intent to cancel. The notice will be in accordance with the provisions of **III. GENERAL CONDITIONS** 1). Otherwise, **we** may cancel this policy by providing **you** at least ninety (90) days written notice.

   b. **You** may cancel this **policy** at any time by notifying **us** in writing via regular mail, fax or email. This is in accordance with the provisions of III. **GENERAL CONDITIONS** 2).

3) **STATE LAW** – When this **policy's** provisions are in conflict with the statutes of the state in which this **policy** is issued, the provisions are amended to conform to such statutes.

4) **ENTIRE CONTRACT** – This **policy**, the **declarations page**, and any attached endorsement constitutes the entire agreement between **you** and **us**.

5) **FREE LOOK PERIOD** - If **you** are not satisfied with this **policy** within thirty (30) days of the **Policy Effective Date**, **you** may cancel **your** insurance. **We** will refund **your** premium in full, as long as **you** have not submitted a claim.

V.  **DEFINITIONS**

The following defined words or phrases in the **policy** are printed in bold type and have the following meanings, unless a different meaning is described in a particular coverage or endorsement.

1) **Accident.** An unexpected and unintended event.

2) **Clinical Examination.** A thorough examination performed by a licensed and registered **veterinarian** encompassing all body systems of the **pet**. Examination can also be referred to as "full physical, physical consultation, full examination or veterinary examination."

3) **Clinical Symptoms.** Any manifested anomaly in, or deviation from the regular healthy state or function of a **pet**, including behavioral traits. **Clinical Symptoms** include any anomaly that is readily detectible by a thorough and complete **clinical examination**.

4) **Coinsurance. Your** portion of the cost of insured **veterinary treatment for your pet** before any **deductible** is applied. **Your pet's coinsurance** amount is shown as "Your Share" on the **pet schedule** of the **declarations page**.

5) **Condition.** Any manifestations of **clinical symptoms** consistent with a diagnosis or diagnoses, regardless of the number of such symptoms or areas of the body affected.

6) **Coverage.** The insurance protection described in this **policy** form and on the **declarations page.**

7) **Coverage Term.** A twelve (12) month period that begins with the effective date of **coverage** and continues for each twelve (12) month period thereafter.

8) **Declarations Page.** A written document comprising part of this **policy**, which identifies the insured, the **policy** number, and the insured **pet schedule** with the **coverage** options selected and Lifetime Limit provided.

9) **Deductible.** The amount **you** must first pay with respect to the cost of insured **veterinary treatment** for **your pet** after **your pet's coinsurance** portion has been applied.

10) **Dental Health Care.** The care required to maintain dental hygiene for **your pet.** This includes cleaning, brushing, scaling, polishing, extractions and reconstructions.

11) **Diagnostic Tests.** Tests used to determine the overall health of **your pet**. **Diagnostic tests** can be used as a way to detect certain abnormalities. It can also validate the current health of **your pet**, or help to evaluate an older **pet** more thoroughly before problems surface.

12) **Hospitalization.** Charges for boarding **your pet** at a veterinary clinic as required by your **veterinarian** to deliver nursing care, administer **medication** to or monitor **your pet**.

13) **Illness.** Sickness, disease or any other changes to **your pet's** normal healthy state; or any **condition** other than **your pet's** normal healthy state.

14) **Injury** or **Injuries.** Physical harm or damage to **your pet** arising from normal activity or an **accident**.

15) **Medically Necessary.** Medical services, supplies or treatments provided by a **veterinarian** to treat covered **pets** which are:

   a.  consistent with symptoms or diagnosis;

   b.  appropriate and meet generally accepted veterinary practice standards;

   c.  not primarily for the convenience of the **pet parent**, **your veterinarian** or other providers; and

   d.  consistent with the most appropriate supply or level of services which can safely be provided to the **pet**.

16) **Medication.** Any veterinary recommended **medications** prescribed by **your veterinarian** and approved by the Food and Drug Administration (FDA) for veterinary use.

17) **Neutering.** Orchiectomy, or surgical removal of the testicles.

18) **Pet** or **Pets.** A domestic cat or dog that is owned for companionship or as a help dog. **Pet** or **Pets** do not include a domestic cat or dog that is involved in activities other than companionship or helping, including, but not limited to, racing, breeding, law enforcement, guarding or commercial activities.

19) **Pet Parent.** The owner of the **pet,** including owner's spouse or partner.

20) **Pet Policy Effective Date.** 12:01 a.m. of the day following the date you enroll **your pet**, as shown on the **pet schedule** of the **declarations page**, subject to the waiting periods as defined in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.,** and **1) d.**

21) **Pet Schedule.** The table shown on the **declarations page** that identifies the **pet policy effective date,** policy number and **coverage** options related to a specific insured **pet.**

22) **Policy.** The terms and conditions and most recent **declarations page** that includes any endorsements that apply.

23) **Policy Effective Date.** 12:01 a.m. of the day following the date Shown in the Declarations, subject to the waiting periods as defined in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.,** and **1) d.**

24) **Pre-existing conditions** means:

    a. **Illness** or **condition** which developed or redeveloped prior to the **pet policy effective date**;

    b. an **injury,** or recurrence of an **injury,** as a result of an **accident** that occurred prior to the **pet policy effective date**; or

    c. any **condition** or complication resulting from an **illness** that developed, or any **injury** as a result of an **accident** that occurred prior to the **pet policy effective date.**

25) **Spaying.** Ovariohysterectomy, or resection of the ovaries and uterus.

26) **Supplies.** Any item that is **medically necessary**, as determined by the **veterinarian**, that is safe and effective for its intended use, and that omission would adversely affect the insured **pet**.

27) **Surgery** or **Surgeries.** Any procedure that treats diseases or **injuries** by operative manual and instrumental treatment.

28) **Vaccination.** The administration of an industry-recognized commercial vaccine by a registered licensed **veterinarian**. The vaccine must be in accordance with the manufacturer's recommendations, following a complete **clinical examination,** for prevention of disease.

29) **Veterinarian.** A properly licensed and registered **veterinarian** in active practice in the area where the **pet** is treated or examined. **Veterinarian** shall not include **you** or a member of **your** immediate family.

30) **Veterinary Examinations Fees.** Fees charged for the professional opinion of a **veterinarian**. Also referred to as consultation, examination, referral, and recheck fees.

31) **Veterinary Treatment** means**:**

    a. X-rays;

    b. Laboratory and **diagnostic tests**;

    c. **Medication**;

    d. **Surgeries;**

    e. **Supplies;**

    f. **Hospitalization;**

    g. Euthanasia; and

    h. Nursing care;

provided by a licensed **veterinarian** and their staff under direct supervision.

32) **Waiting Periods.** 15 days from the **Pet Policy Effective Date** for **accidents** and **illness** and 12 months from the **Pet Policy Effective Date** for **illness** related to hip dysplasia.

33) **Working Pets.** Any **pet** involved in activities other than companionship or helping, including, but not limited to, racing, breeding, law enforcement, guarding or for other commercial use.

34) **Your Pet.** The dog or cat named in the **pet schedule** of the **declarations page**.

# — EXHIBIT  B —



**ACE American Insurance Company**

# Pet Health Insurance Policy

Please read your Pet Health Insurance Policy carefully to determine the parties' rights and duties and what is and is not covered.  Some provisions in the policy limit or restrict coverage.

Throughout this policy, the words **you** and **your,** refer to the policyholder (**Pet Parent**) shown in the Declarations Page.

The words **we, us and our,** refer to the company providing this insurance**.**

Words and phrases that appear in **bold type** have special meaning found in Section V. Definitions.

## I.  INSURING AGREEMENT

**We** rely on the statements **you** made in the application.  Upon **your** payment of the premiums when due, **we** will provide **coverage** as specifically described in this **policy** for **your pet** as shown on the **declarations page**.

Benefits are subject to terms, conditions, limitations and exclusions of this **policy** and to **your** responsibility for the **coinsurance and deductible**. **Coverage** is in effect at the time and date shown on the **declarations page** subject to the waiting periods described in **II. EXCLUSIONS & LIMITATIONS 1) b,.1) c.** and **1) d.**

1) **WE COVER**: Reimbursement of the cost incurred by **you** for **medically necessary veterinary treatment** recommended by **your veterinarian** for **conditions** covered by this **policy.** These costs will be covered when **your pet:**

   a.  develops an **illness,** or

   b.  has an **injury** as a result of an **accident;**

   during the **coverage term**.

   This **policy** shall not cover amounts charged by the treating veterinary clinic that are greater than the treating veterinary clinic's standard or published charges.

2) **LIFETIME LIMIT**: The maximum amount **you** may claim while **coverage** is in force with respect to any one **pet** for **veterinary treatment** over the lifetime of that **pet**. The Lifetime Limit is shown on the **declarations page**. Subject to the maximum lifetime limit, there are no limits per claim or per year.

3) **COINSURANCE**: The portion **you** are required to pay for **your pet's veterinary treatment**. **Your pet's coinsurance** amount is shown on the **pet schedule** of the **declarations page**.

4) **DEDUCTIBLE**: **Your pet's deductible** is shown on the **pet schedule** of the **declarations page.**  **Your pet's deductible** shall apply once per **coverage term**.

5) **MONTHLY PREMIUM**: **Your** monthly premium is set forth on **your declarations page**. Monthly premiums may change for all policyholders to reflect changes in the costs of veterinary medicine. **We** will notify **you** at least sixty (60) days in advance of such change.

6) **CHANGES TO YOUR COVERAGE**: **Your coverage**, **coinsurance, and deductible** will not change due to **your pet**'s claims experience.

PI 39279 (11/12)

## II.  EXCLUSIONS & LIMITATIONS

### 1)  GENERAL EXCLUSIONS

**We** do not cover:

a. **Veterinary examination fees**.

b. **Injury** from an **accident** that occurs within the first fifteen (15) days following the **pet policy effective date.**

c. **Illness** that occurs or recurs within the first fifteen (15) days following the **pet policy effective date**.

d. **Illness** related to hip dysplasia that occurs or recurs within the first twelve (12) months following the **pet policy effective date.**

### 2)  PRE-EXISTING CONDITIONS

**We** do not cover **pre-existing conditions.**

**Pre-existing conditions** means:

a. **illness** or the recurrence of any **illness** or **condition** which first occurred or displayed any signs and/or symptoms consistent with the stated **illness** or **condition** prior to the **pet policy effective date**;

b. an **injury** or recurrence of an **injury** that occurred prior to the **pet policy effective date**; or

c. any **condition** or complication resulting from an **illness** or **injury** that occurred prior to the **pet policy effective date.**

### 3)  PREVENTIVE CARE EXCLUSIONS

**We** do not cover:

a. **Spaying** and **neutering**.

b. Preventive healthcare including **vaccinations** or titer test, flea control, heartworm **medication**, de-worming, nail trim, and grooming.

c. Parasite control including but not limited to internal and external parasites for which readily available prophylactic treatments are available.

d. **Dental health care**, however if injury to teeth is caused by an accident, **we** do cover the cost of extraction and/or reconstruction of damaged teeth.

e. Anal gland expression.

### 4)  OTHER EXCLUSIONS

**We** do not reimburse the costs, fees or expenses associated with:

a. **Injury** or **illness** due to any intentional, neglectful or preventable act, including organized dog fighting, by **you** or a member of **your** household;

b. Elective procedures, cosmetic procedures, preventive procedures including but not limited to:

    1.  tail docking;

    2.  ear cropping;

    3.  de-clawing;

    4.  micro-chipping;

    5.  dew claw removal; or

      6.   ear cleaning;

c.  Boarding or transport expenses;

d.  **Conditions** arising from a specific activity if the same or a similar activity occurred prior to the **pet policy effective date** and displayed the propensity for the activity to recur and cause **injury** or **illness** to **your pet**;

e.  Pre-existing cruciate ligament problems to one leg as respects the cost of future treatment for problems of the other leg;

f.  Diseases preventable by vaccines and prophylactic **medications** (such as heartworm, lice, internal parasites and fleas);

g.  Complications of **conditions** excluded or limited by this **policy**;

h.  Abnormalities where **clinical symptoms** were apparent prior to the **pet policy effective date**. This includes **conditions** that are detectable by a routine physical exam by **your veterinarian**;

i.  Claims in any way arising from the lack of use and/or implementation of preventive healthcare products and/or methods when such products and/or methods would be in accordance with generally accepted veterinary standards. Routine healthcare includes: **vaccinations**, flea control, heartworm **medication**, de-worming, dental care, ear plucking, grooming, and prudent regular care;

j.  Special diets, **pet** foods, vitamins, supplements, grooming, nail trims, shampoo and bathing (including medicated baths);

k.  Any claim for loss from a nuclear incident as defined in the Nuclear Liability Act, nuclear explosion or contamination by radioactive material;

l.  **Conditions** arising from any specific activity if the same or similar activity occurs after **you** have received written notice from **us** regarding the specific activity;

m.  Experimental or investigational treatment or medicine;

n.  Breeding or **conditions** relating to breeding, whelping, and queening;

o.  **Diagnostic tests** for **conditions** excluded by this **policy**;

p.  **Diagnostic tests** due to complications of **conditions** excluded or limited by this **policy**;

q.  **Conditions** caused by war or war activities whether war be declared or not. War activities include civil war, insurrection, rebellion, or revolution or any act or **condition** incident of any of the foregoing;

r.  Feeding, housing or exercise;

s.  Behavioral modification, training, therapy or **medications** for behavioral modification.

**5)  LIMITATIONS**

a.  A **pet** less than six (6) years of age on the date of enrollment must have undergone a complete **clinical examination.** The exam must have taken place either in the twelve (12) months prior to the **pet policy effective date**, or within fifteen (15) days following the **pet policy effective date**. A **pet** six (6) years of age or greater on the date of enrollment must have undergone a complete **clinical examination** within thirty (30) days prior to the **pet policy effective date,** or within fifteen (15) days following the **pet policy effective date**. **Your** failure to submit **your pet** to a complete **clinical examination** may void the **policy**. If the **policy** is voided, the **policy** premium will be refunded.

b.  For **pets** six (6) years of age or greater on the date of enrollment, no **coverage** shall apply for **illness** related to hip dysplasia.

c.  For **working pets**, no **coverage** shall apply for any **condition** resulting from activities related to racing, breeding, law enforcement, guarding or for any commercial use.

d.  **We** will not make any payments for any claims for which **you** are entitled to be paid under any other insurance except for any additional sum which is payable over and above such other insurance.

## III.  GENERAL CONDITIONS

1) Premium is payable monthly by Direct Debit or by charge to **your** credit card, according to the option selected by **you** on the application.  This **policy** is continued until cancelled, and will renew automatically each month as long as premium payments are current.  When **you** have not paid the premium, **we** may cancel this **policy.  We** will let **you** know at least twenty (20) days before the date cancellation takes effect. No coverage will be provided for any claim with a date of **veterinary treatment** between the premium due date and the cancellation date, unless the premium payments are current.

2) **You** may cancel **your policy** by notifying **us** in writing via regular mail, fax or email at least fourteen (14) days in advance of **your** next premium payment.

3) **You** must be the owner of the **pet(s)**. If the **pet** owner dies, becomes unable to care for the insured **pet(s)**, or passes the ownership of the insured **pet(s)**, the **coverage** will continue without interruption, if approved in writing by **us**, subject to all other terms and conditions of this **policy**.

4) A **pet** is covered under this **policy** only while the **pet** is in the United States of America, or temporarily away in Canada.

5) **You** must agree to implement all reasonable means possible in the care and protection of **your pet**. **You** further agree to protect the **pet** from aggravation and/or recurrence of the **injury** and/or **illness** after occurrence.

6) This **coverage** is not transferable to other **pets**.  All new **pets** are subject to a new application and your monthly payment will increase.

7) **You** are entitled to increase **your pet's deductible** level and/or increase **your pet's coinsurance** amount at any time. This request must be made in writing and will become effective the month following approval by **us**.  **You** may apply to lower **your pet's deductible** level and/or decrease **your pet's coinsurance** amount provided that **your pet** has not previously filed a claim with **us**. This request must be in writing and will become effective the month following approval by **us**.

8) Notice of loss must be given by either **you** or **your** agent.

9) The loss is payable within sixty days after completion of the claim form, unless applicable state law provides for a shorter period.

10) In order to process a claim, **you** must allow **us** to contact **your** present and previous **veterinarian(s)** and provide **us** with the necessary authority to obtain any information **we** may require.  In the event information relating to the history of the **pet** is missing or incomplete, the claim will not be processed. **You** must also agree to submit the **pet** to examination, if **we** require, by a **veterinarian we** select.

11) In the event of any disagreement between **you** and **us** with regards to a claim, the matter will be referred to **our veterinarian**.  If the matter is not resolved, an independent third party **veterinarian** shall be appointed by **us**. This independent third party **veterinarian's** decision shall be final and binding on all parties.

12) Every action or proceeding against **us** for the recovery of any claim under or by virtue of this contract is absolutely barred unless commenced within one year after the loss or damage occurs or unless state law requires a longer period.


## IV.  ADDITIONAL CONDITIONS

1) **MISREPRESENTATION AND FRAUD** – This **policy** will be voided if **you** have concealed or misrepresented any material fact or circumstance concerning this insurance or the **pet**(s) covered. **We** do not provide **coverage**, for an insured who has intentionally concealed or misrepresented any such facts or circumstances before or after a loss.

2) **CANCELLATION**

   a.  **We** may cancel this **policy** if **we** do not receive a monthly premium from **you** when the premium is due. In such a case a written notice will be sent to **you** at **your** last email address known to **us**. We will provide at least (20) days

notice of our intent to cancel.  The notice will be in accordance with the provisions of **III. GENERAL CONDITIONS** 1). Otherwise, **we** may cancel this policy by providing **you** at least ninety (90) days written notice.

    b.  **You** may cancel this **policy** at any time by notifying **us** in writing via regular mail, fax or email.  This is in accordance with the provisions of III. **GENERAL CONDITIONS** 2).

3)  **STATE LAW** – When this **policy's** provisions are in conflict with the statutes of the state in which this **policy** is issued, the provisions are amended to conform to such statutes.

4)  **ENTIRE CONTRACT** – This **policy**, the **Declarations Page**, and any attached endorsement contain all the agreements between **you** and **us**.

5)  **FREE LOOK PERIOD** - If **you** are not satisfied with this **policy** within thirty (30) days of the **Policy Effective Date**, **you** may cancel **your** insurance.  **We** will refund **your** premium in full, as long as **you** have not submitted a claim.

## V.  DEFINITIONS

The following defined words or phrases in the **policy** are printed in bold type and have the following meanings, unless a different meaning is described in a particular coverage or endorsement.

1)  **Accident.**  An unexpected and unintended event causing **injury** to **your pet**.

2)  **Clinical Examination.** A thorough examination performed by a licensed and registered **veterinarian** encompassing all body systems of the **pet**. Examination can also be referred to as "full physical, physical consultation, full examination or veterinary examination."

3)  **Clinical Symptoms.** Any manifested anomaly in, or deviation from the regular healthy state or function of a **pet**, including behavioral traits.  Symptoms include any anomaly that is readily detectible by a thorough and complete **clinical examination**.

4)  **Coinsurance. Your** portion of the cost of insured **veterinary treatment for your pet** before any **deductible** is applied. **Your pet's coinsurance** amount is shown as "Your Share" on the **pet schedule** of the **declarations page**.

5)  **Condition.** Any manifestations of **clinical symptoms** consistent with a diagnosis or diagnoses, regardless of the number of incidents or areas of the body affected.

6)  **Coverage.** The insurance protection described in this **policy** form and on the **declarations page.**

7)  **Coverage Term.** A twelve (12) month period that begins with the effective date of **coverage** and continues for each twelve (12) month period thereafter.

8)  **Declarations Page.** A written document comprising part of this **policy**, which identifies the insured, the **policy** number, and the insured **pet schedule** with the **coverage** options selected and Lifetime Limit provided.

9)  **Deductible.** The amount **you** must first pay with respect to the cost of insured **veterinary treatment** for **your pet** after **your pet's coinsurance** portion has been applied.

10) **Dental Health Care.** The regular care required to maintain dental hygiene for **your pet.**  This includes brushing, scaling, polishing, extractions and reconstructions.

11) **Diagnostic Tests.** Tests used to determine the overall health of **your pet**. **Diagnostic tests** can be used as a way to detect certain abnormalities.  It can also validate the current health of **your pet**, or help to evaluate an older **pet** more thoroughly before problems surface.

12) **Hospitalization.** Charges for boarding **your pet** at a veterinary clinic as required by your **veterinarian** to deliver nursing care, administer **medication** to or monitor **your pet**.

13) **Illness.** Sickness, disease and any changes to **your pet's** normal healthy state; any **condition** other than **your pet's** normal healthy state.

14) **Injury(ies).** Physical harm or damage to **your pet** arising from normal activity or an **accident**.

15) **Medically Necessary.** Medical services, supplies or treatments provided by a **veterinarian** to treat covered **pets** which are:

    a.  consistent with symptoms or diagnosis;

b.   appropriate and meet generally accepted veterinary practice standards;

c.   not primarily for the convenience of the **pet parent**, **your veterinarian** or other providers; and

d.   consistent with the most appropriate supply or level of services which can safely be provided to the **pet**.

16) **Medication.** Any veterinary recommended **medications** prescribed by **your veterinarian** and approved by the Food and Drug Administration (FDA) for veterinary use.

17) **Neutering.** Orchidectomy, or surgical removal of the testicles.

18) **Pet** or **Pets.** A domestic cat or dog that is owned for companionship or as a help dog, not owned for commercial reasons. Commercial reasons include, but are not limited to, a **racing dog**.

19) **Pet Parent.** The owner of the **pet,** including owner's spouse or partner.

20) **Pet Policy Effective Date.** 12:01 a.m. of the day following the date you enroll **your pet**, as shown on the **pet schedule** of the **declarations page**, subject to the waiting periods as defined in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.,** and **1) d.**

21) **Pet Schedule.** The table shown on the **declarations page** that identifies the **pet policy effective date**, policy number and **coverage** options related to a specific insured **pet.**

22) **Policy.** The terms and conditions and most recent **declarations page** that includes any endorsements that apply.

23) **Policy Effective Date.** 12:01 a.m. of the day following the date Shown in the Declarations, subject to the waiting periods as defined in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.,** and **1) d.**

24) **Pre-existing conditions** means:

a.   **illness** or the recurrence of any **illness** or **condition** which first occurred or displayed any signs and/or symptoms consistent with the stated **illness** or **condition** prior to the **pet policy effective date**;

b.   an **injury** or recurrence of an **injury** that occurred prior to the **pet policy effective date**; or

c.   any **condition** or complication resulting from an **illness** or **injury** that occurred prior to the **pet policy effective date.**

25) **Racing Dog.** A dog, which is owned and maintained for the purpose of competing in organized races or speed contests.

26) **Spaying.** Ovariohysterectomy, or resection of the ovaries and uterus.

27) **Supplies.** Any item that is **medically necessary**, as determined by the **veterinarian**, that is safe and effective for its intended use, and that omission would adversely affect the insured **pet**.

28) **Surgery (ies).** Procedure(s) that treat diseases or **injuries** by operative manual and instrumental treatment.

29) **Vaccination.** The administration of an industry-recognized commercial vaccine by a registered licensed **veterinarian**. The vaccine must be in accordance with the manufacturer's recommendations, following a complete **clinical examination,** for prevention of disease.

30) **Veterinarian.** A properly licensed and registered **veterinarian** in active practice in the area where **your pet** is treated or examined.   **Veterinarian** shall not include **you** or a member of **your** immediate family.

31) **Veterinary Examinations Fees.** Fees charged for the professional opinion of a **veterinarian**. Also referred to as consultation, examination, referral, and recheck fees.

32) **Veterinary Treatment** means**:**

a.   X-rays;

b.   Laboratory and **diagnostic tests**;

c.   **Medication**;

d.   **Surgeries;**

e.   **Supplies;**

    f.   **Hospitalization;**

    g.   Euthanasia; and

    h.   Nursing care;

provided by a licensed **veterinarian** and their staff under direct supervision.

33) **Working Pets.** Any **pet** involved in activities other than companionship or helping, including, but not limited to, racing, breeding, law enforcement, guarding or for other commercial use.

34) **Your Pet.** The dog or cat named in the **pet schedule** of the **declarations page**.

PI 39279 (11/12)

— **EXHIBIT  C** —



## ACE AMERICAN Insurance Company (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

# Pet Health Insurance Policy

Please read your Pet Health Insurance Policy carefully to determine the parties' rights and duties and what is and is not covered.  Some provisions in the policy limit or restrict coverage.

Throughout this policy, the words **you** and **your,** refer to the policyholder (**Pet Parent**) shown in the Declarations Page.

The words **we, us and our,** refer to the company providing this insurance**.**

Words and phrases that appear in **bold type** have special meaning found in Section V. Definitions.

## I. INSURING AGREEMENT

**We** rely on the statements **you** made in the application.  Upon **your** payment of the premiums when due, **we** will provide **coverage** as specifically described in this **policy** for **your pet** as shown on the **declarations page**.

Benefits are subject to terms, conditions, limitations and exclusions of this **policy** and to **your** responsibility for the **coinsurance and deductible**. **Coverage** is in effect at the time and date shown on the **declarations page** subject to the waiting periods described in **II. EXCLUSIONS & LIMITATIONS 1) b,.1) c.** and **1) d.**

1) **WE COVER**: Reimbursement of the cost incurred by **you** for **medically necessary veterinary treatment** recommended by **your veterinarian** for **conditions** covered by this **policy.** These costs will be covered when **your pet:**

   a.  develops an **illness,** or

   b.  has an **injury** as a result of an **accident;**

      during the **coverage term**.

      This **policy** shall not cover amounts charged by the treating veterinary clinic that are greater than the treating veterinary clinic's standard or published charges.

2) **LIFETIME LIMIT**: The maximum amount **you** may claim while **coverage** is in force with respect to any one **pet** for **veterinary treatment** over the lifetime of that **pet.** The Lifetime Limit is shown on the **declarations page**. Subject to the maximum lifetime limit, there are no limits per claim or per year.

3) **COINSURANCE**: The portion **you** are required to pay for **your pet's veterinary treatment**. **Your pet's coinsurance** amount is shown on the **pet schedule** of the **declarations page**.

4) **DEDUCTIBLE**: **Your pet's deductible** is shown on the **pet schedule** of the **declarations page.**  **Your pet's deductible** shall apply once per **coverage term**.

5) **MONTHLY PREMIUM**: **Your** monthly premium is set forth on **your declarations page**. Monthly premiums may change for all policyholders to reflect changes in the costs of veterinary medicine.  Premiums may be changed only at the **policy** anniversary date.  **We** will notify **you** at least sixty (60) days in advance of such change.

6) **CHANGES TO YOUR COVERAGE**: **Your coverage**, **coinsurance, and deductible** will not change due to **your pet**'s claims experience.

## II. EXCLUSIONS & LIMITATIONS

### 1) GENERAL EXCLUSIONS

**We** do not cover:

a. **Veterinary examination fees**.

b. **Injury** from an **accident** that occurs within the first fifteen (15) days following the **pet policy effective date.**

c. **Illness** that occurs or recurs within the first fifteen (15) days following the **pet policy effective date**.

d. **Illness** related to hip dysplasia that occurs or recurs within the first twelve (12) months following the **pet policy effective date.**

### 2) PRE-EXISTING CONDITIONS

**We** do not cover **pre-existing conditions.**

**Pre-existing conditions** means:

a. **illness** or the recurrence of any **illness** or **condition** which first occurred or displayed any signs and/or symptoms consistent with the stated **illness** or **condition** prior to the **pet policy effective date**;

b. an **injury** or recurrence of an **injury** that occurred prior to the **pet policy effective date**; or

c. any **condition** or complication resulting from an **illness** or **injury** that occurred prior to the **pet policy effective date.**

### 3) PREVENTIVE CARE EXCLUSIONS

**We** do not cover:

a. **Spaying** and **neutering**.

b. Preventive healthcare including **vaccinations** or titer test, flea control, heartworm **medication**, de-worming, nail trim, and grooming.

c. Parasite control including but not limited to internal and external parasites for which readily available prophylactic treatments are available.

d. **Dental health care**, however if injury to teeth is caused by an accident, **we** do cover the cost of extraction and/or reconstruction of damaged teeth.

e. Anal gland expression.

### 4) OTHER EXCLUSIONS

**We** do not reimburse the costs, fees or expenses associated with:

a. **Injury** or **illness** due to any intentional, neglectful or preventable act, including organized dog fighting, by **you** or a member of **your** household;

b. Elective procedures, cosmetic procedures, preventive procedures including but not limited to:

    1. tail docking;

    2. ear cropping;

    3. de-clawing;

    4. micro-chipping;

    5. dew claw removal; or

    6. ear cleaning;

c. Boarding or transport expenses;

d. **Conditions** arising from a specific activity if the same or a similar activity occurred prior to the **pet policy effective date** and displayed the propensity for the activity to recur and cause **injury** or **illness** to **your pet**;

e. Pre-existing cruciate ligament problems to one leg as respects the cost of future treatment for problems of the other leg;

f. Diseases preventable by vaccines and prophylactic **medications** (such as heartworm, lice, internal parasites and fleas);

g. Complications of **conditions** excluded or limited by this **policy**;

h. Abnormalities where **clinical symptoms** were apparent prior to the **pet policy effective date**. This includes **conditions** that are detectable by a routine physical exam by **your veterinarian**;

i. Claims in any way arising from the lack of use and/or implementation of preventive healthcare products and/or methods when such products and/or methods would be in accordance with generally accepted veterinary standards. Routine healthcare includes: **vaccinations**, flea control, heartworm **medication**, de-worming, dental care, ear plucking, grooming, and prudent regular care;

j. Special diets, **pet** foods, vitamins, supplements, grooming, nail trims, shampoo and bathing (including medicated baths);

k. Any claim for loss from a nuclear incident as defined in the Nuclear Liability Act, nuclear explosion or contamination by radioactive material;

l. Experimental or investigational treatment or medicine;

m. Breeding or **conditions** relating to breeding, whelping, and queening;

n. **Diagnostic tests** for **conditions** excluded by this **policy**;

o. **Diagnostic tests** due to complications of **conditions** excluded or limited by this **policy**;

p. **Conditions** caused by war or war activities whether war be declared or not. War activities include civil war, insurrection, rebellion, or revolution or any act or **condition** incident of any of the foregoing;

q. Feeding, housing or exercise;

r. Behavioral modification, training, therapy or **medications** for behavioral modification.

## 5) LIMITATIONS

a. A **pet** less than six (6) years of age on the date of enrollment must have undergone a complete **clinical examination.** The exam must have taken place either in the twelve (12) months prior to the **pet policy effective date**, or within fifteen (15) days following the **pet policy effective date**. A **pet** six (6) years of age or greater on the date of enrollment must have undergone a complete **clinical examination** within thirty (30) days prior to the **pet policy effective date,** or within fifteen (15) days following the **pet policy effective date**. **Your** failure to submit **your pet** to a complete **clinical examination** may void the **policy**. If the **policy** is voided, the **policy** premium will be refunded.

b. For **pets** six (6) years of age or greater on the date of enrollment, no **coverage** shall apply for **illness** related to hip dysplasia.

c. For **working pets**, no **coverage** shall apply for any **condition** resulting from activities related to racing, breeding, law enforcement, guarding or for any commercial use.

d. **We** will not make any payments for any claims for which **you** are entitled to be paid under any other insurance except for any additional sum which is payable over and above such other insurance.

# III. GENERAL CONDITIONS

1) Premium is payable monthly by Direct Debit or by charge to **your** credit card, according to the option selected by **you** on the application. This **policy** is continued until cancelled, and will renew automatically each month as long as premium payments are current. When **you** have not paid the premium, **we** may cancel this **policy.** **We** will let **you** know at least ten (10) days before the date cancellation takes effect.

PI 39279 IL (07/13)

2) **You** may cancel **your policy** by notifying **us** in writing via regular mail, fax or email at least fourteen (14) days in advance of **your** next premium payment.

3) **You** must be the owner of the **pet(s)**. If the **pet** owner dies, becomes unable to care for the insured **pet(s)**, or passes the ownership of the insured **pet(s)**, the **coverage** will continue without interruption, if approved in writing by **us**, subject to all other terms and conditions of this **policy**.

4) A **pet** is covered under this **policy** only while the **pet** is in the United States of America, or temporarily away in Canada.

5) **You** must agree to implement all reasonable means possible in the care and protection of **your pet**. **You** further agree to protect the **pet** from aggravation and/or recurrence of the **injury** and/or **illness** after occurrence.

6) This **coverage** is not transferable to other **pets**. All new **pets** are subject to a new application and your monthly payment will increase.

7) **You** are entitled to increase **your pet's deductible** level and/or increase **your pet's coinsurance** amount at any time. This request must be made in writing and will become effective the month following approval by **us**. **You** may apply to lower **your pet's deductible** level and/or decrease **your pet's coinsurance** amount provided that **your pet** has not previously filed a claim with **us**. This request must be in writing and will become effective the month following approval by **us**.

8) Notice of loss must be given by either **you** or **your** agent.

9) The loss is payable within sixty days after completion of the claim form, unless applicable state law provides for a shorter period.

10) In order to process a claim, **you** must allow **us** to contact **your** present and previous **veterinarian(s)** and provide **us** with the necessary authority to obtain any information **we** may require. In the event information relating to the history of the **pet** is missing or incomplete, the claim will not be processed. **You** must also agree to submit the **pet** to examination, if **we** require, by a **veterinarian we** select.

11) In the event of any disagreement between **you** and **us** with regards to a claim, the matter will be referred to **our veterinarian**. If the matter is not resolved, an independent third party **veterinarian** shall be appointed by **us**. This independent third party **veterinarian's** decision shall be final.

12) No one may a bring legal action against us unless:

   a. There has been full compliance with all of the terms of this **policy** and,

   b. The action is brought within one year after the date on which the direct physical loss or damage occurred. The one year period for legal action against us is extended by the number of days between the date the proof of loss is filed with us and the date we deny the claim in whole or in part.

# IV. ADDITIONAL CONDITIONS

1) **MISREPRESENTATION AND FRAUD** – This **policy** will be voided if **you** have concealed or misrepresented any material fact or circumstance concerning this insurance or the **pet(s)** covered. **We** do not provide **coverage**, for an insured who has intentionally concealed or misrepresented any such facts or circumstances before or after a loss.

2) **CANCELLATION**

   a. **We** may cancel this **policy** if **we** do not receive a monthly premium from **you** when the premium is due. In such a case a written notice will be sent to **you** at **your** last email address known to **us**. We will provide at least (20) days notice of our intent to cancel. The notice will be in accordance with the provisions of **III. GENERAL CONDITIONS** 1). Otherwise, **we** may cancel this policy by providing **you** at least ninety (90) days written notice.

   b. **You** may cancel this **policy** at any time by notifying **us** in writing via regular mail, fax or email. This is in accordance with the provisions of III. **GENERAL CONDITIONS** 2).

3) **STATE LAW** – When this **policy's** provisions are in conflict with the statutes of the state in which this **policy** is issued, the provisions are amended to conform to such statutes.

4) **ENTIRE CONTRACT** – This **policy**, the **Declarations Page**, and any attached endorsement contain all the agreements between **you** and **us**.

PI 39279 IL (07/13)

5) **FREE LOOK PERIOD** - If **you** are not satisfied with this **policy** within thirty (30) days of the **Policy Effective Date**, **you** may cancel **your** insurance. **We** will refund **your** premium in full, as long as **you** have not submitted a claim.

## V. DEFINITIONS

The following defined words or phrases in the **policy** are printed in bold type and have the following meanings, unless a different meaning is described in a particular coverage or endorsement.

1) **Accident.** An unexpected and unintended event causing **injury** to **your pet**.

2) **Clinical Examination.** A thorough examination performed by a licensed and registered **veterinarian** encompassing all body systems of the **pet**. Examination can also be referred to as "full physical, physical consultation, full examination or veterinary examination."

3) **Clinical Symptoms.** Any manifested anomaly in, or deviation from the regular healthy state or function of a **pet**, including behavioral traits. Symptoms include any anomaly that is readily detectible by a thorough and complete **clinical examination**.

4) **Coinsurance. Your** portion of the cost of insured **veterinary treatment for your pet** before any **deductible** is applied. **Your pet's coinsurance** amount is shown as "Your Share" on the **pet schedule** of the **declarations page**.

5) **Condition.** Any manifestations of **clinical symptoms** consistent with a diagnosis or diagnoses, regardless of the number of incidents or areas of the body affected.

6) **Coverage.** The insurance protection described in this **policy** form and on the **declarations page.**

7) **Coverage Term.** A twelve (12) month period that begins with the effective date of **coverage** and continues for each twelve (12) month period thereafter.

8) **Declarations Page.** A written document comprising part of this **policy**, which identifies the insured, the **policy** number, and the insured **pet schedule** with the **coverage** options selected and Lifetime Limit provided.

9) **Deductible.** The amount **you** must first pay with respect to the cost of insured **veterinary treatment** for **your pet** after **your pet's coinsurance** portion has been applied.

10) **Dental Health Care.** The regular care required to maintain dental hygiene for **your pet.** This includes brushing, scaling, polishing, extractions and reconstructions.

11) **Diagnostic Tests.** Tests used to determine the overall health of **your pet**. **Diagnostic tests** can be used as a way to detect certain abnormalities. It can also validate the current health of **your pet**, or help to evaluate an older **pet** more thoroughly before problems surface.

12) **Hospitalization.** Charges for boarding **your pet** at a veterinary clinic as required by your **veterinarian** to deliver nursing care, administer **medication** to or monitor **your pet**.

13) **Illness.** Sickness, disease and any changes to **your pet's** normal healthy state; any **condition** other than **your pet's** normal healthy state.

14) **Injury(ies).** Physical harm or damage to **your pet** arising from normal activity or an **accident**.

15) **Medically Necessary.** Medical services, supplies or treatments provided by a **veterinarian** to treat covered **pets** which are:

   a. consistent with symptoms or diagnosis;

   b. appropriate and meet generally accepted veterinary practice standards;

   c. not primarily for the convenience of the **pet parent**, **your veterinarian** or other providers; and

   d. consistent with the most appropriate supply or level of services which can safely be provided to the **pet**.

16) **Medication.** Any veterinary recommended **medications** prescribed by **your veterinarian** and approved by the Food and Drug Administration (FDA) for veterinary use.

17) **Neutering.** Orchidectomy, or surgical removal of the testicles.

18) **Pet** or **Pets.** A domestic cat or dog that is owned for companionship or as a help dog, not owned for commercial reasons. Commercial reasons include, but are not limited to, a **racing dog**.

19) **Pet Parent.** The owner of the **pet,** including owner's spouse or partner.

20) **Pet Policy Effective Date.** 12:01 a.m. of the day following the date you enroll **your pet**, as shown on the **pet schedule** of the **declarations page**, subject to the waiting periods as defined in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.,** and **1) d.**

21) **Pet Schedule.** The table shown on the **declarations page** that identifies the **pet policy effective date**, policy number and **coverage** options related to a specific insured **pet.**

22) **Policy.** The terms and conditions and most recent **declarations page** that includes any endorsements that apply.

23) **Policy Effective Date.** 12:01 a.m. of the day following the date Shown in the Declarations, subject to the waiting periods as defined in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.,** and **1) d.**

24) **Pre-existing conditions** means:

    a.  **illness** or the recurrence of any **illness** or **condition** which first occurred or displayed any signs and/or symptoms consistent with the stated **illness** or **condition** prior to the **pet policy effective date**;

    b.  an **injury** or recurrence of an **injury** that occurred prior to the **pet policy effective date**; or

    c.  any **condition** or complication resulting from an **illness** or **injury** that occurred prior to the **pet policy effective date.**

25) **Racing Dog.** A dog, which is owned and maintained for the purpose of competing in organized races or speed contests.

26) **Spaying.** Ovariohysterectomy, or resection of the ovaries and uterus.

27) **Supplies.** Any item that is **medically necessary**, as determined by the **veterinarian**, that is safe and effective for its intended use, and that omission would adversely affect the insured **pet.**

28) **Surgery (ies).** Procedure(s) that treat diseases or **injuries** by operative manual and instrumental treatment.

29) **Vaccination.** The administration of an industry-recognized commercial vaccine by a registered licensed **veterinarian**. The vaccine must be in accordance with the manufacturer's recommendations, following a complete **clinical examination,** for prevention of disease.

30) **Veterinarian.** A properly licensed and registered **veterinarian** in active practice in the area where **your pet** is treated or examined.  **Veterinarian** shall not include **you** or a member of **your** immediate family.

31) **Veterinary Examinations Fees.** Fees charged for the professional opinion of a **veterinarian**. Also referred to as consultation, examination, referral, and recheck fees.

32) **Veterinary Treatment** means**:**

    a.  X-rays;

    b.  Laboratory and **diagnostic tests**;

    c.  **Medication**;

    d.  **Surgeries;**

    e.  **Supplies;**

    f.  **Hospitalization;**

    g.  Euthanasia; and

    h.  Nursing care;

provided by a licensed **veterinarian** and their staff under direct supervision.

33) **Working Pets.** Any **pet** involved in activities other than companionship or helping, including, but not limited to, racing, breeding, law enforcement, guarding or for other commercial use.

34) **Your Pet.** The dog or cat named in the **pet schedule** of the **declarations page**.

PI 39279 IL (07/13)

# — EXHIBIT  D —



**WESTCHESTER FIRE INSURANCE COMPANY**

## PET HEALTH INSURANCE POLICY

Please read your Pet Health Insurance Policy carefully to determine the parties' rights and duties and what is and is not covered. Some provisions in the policy limit or restrict coverage.

Throughout this policy, the words **you** and **your,** refer to the policyholder (**Pet Parent**) shown in the Declarations Page.

The words **we, us** and **our,** refer to the company providing this insurance**.**

Words and phrases that appear in **bold type** have special meaning found in Section V. Definitions.

### I.      INSURING AGREEMENT

**We** rely on the statements **you** made in the application. Upon **your** payment of the premiums when due, **we** will provide **coverage** as specifically described in this **policy** for **your pet** as shown on the **declarations page**.

Benefits are subject to terms, conditions, limitations and exclusions of this **policy** and to **your** responsibility for the **coinsurance** and **deductible**. **Coverage** is in effect at the time and date shown on the **declarations page** subject to the waiting periods described in **II. EXCLUSIONS & LIMITATIONS 1) b.**, **1) c.** and **1) d.**

1) **WE COVER**: Reimbursement of the cost incurred by **you** for **medically necessary veterinary treatment** recommended by **your veterinarian** for **conditions** covered by this **policy.** These costs will be covered when **your pet:**

   a.   develops an **illness,** or

   b.   has an **injury** as a result of an **accident;**

   during the **coverage term**.

   This **policy** shall not cover amounts charged by the treating veterinary clinic that are greater than the treating veterinary clinic's standard or published charges.

2) **LIFETIME LIMIT**: The maximum amount **you** may claim while **coverage** is in force with respect to any one **pet** for **veterinary treatment** over the lifetime of that **pet**. The Lifetime Limit is shown on the **declarations page**. Subject to the maximum lifetime limit, there are no limits per claim or per year.

3) **COINSURANCE**: The portion **you** are required to pay for **your pet's veterinary treatment**. **Your pet's coinsurance** amount is shown on the **pet schedule** of the **declarations page**.

4) **DEDUCTIBLE**: **Your pet's deductible** is shown on the **pet schedule** of the **declarations page. Your pet's deductible** shall apply once per **coverage term**.

5) **MONTHLY PREMIUM**: **Your** monthly premium is set forth on **your declarations page**. Monthly premiums may change for all policyholders to reflect changes in the costs of veterinary medicine. **We** will notify **you** at least sixty (60) days in advance of such change.

6) **CHANGES TO YOUR COVERAGE**: **Your coverage**, **coinsurance**, and **deductible** will not change due to **your pet**'s claims experience.

### II.     EXCLUSIONS & LIMITATIONS

**1) GENERAL EXCLUSIONS**

   **We** do not cover:

   a.   **Veterinary examination fees**.

b. **Injury** from an **accident** that occurs within the first fifteen (15) days following the **pet policy effective date.**

c. **Illness** that occurs or recurs within the first fifteen (15) days following the **pet policy effective date**.

d. **Illness** related to hip dysplasia that occurs or recurs within the first twelve (12) months following the **pet policy effective date.**

e. Conditions or complications that result from **accidents** that occur or **illnesses** that develop or redevelop within the first fifteen (15) days following the **pet policy effective date.**

## 2) PRE-EXISTING CONDITIONS

**We** do not cover **pre-existing conditions.**

## 3) PREVENTIVE CARE EXCLUSIONS

**We** do not cover:

a. **Spaying** and **neutering**.

b. Preventive healthcare including **vaccinations** or titer test, flea control, heartworm **medication**, de-worming, nail trim, and grooming.

c. Parasite control including but not limited to internal and external parasites for which readily available prophylactic treatments are available.

d. **Dental health care**, however if injury to teeth is caused by an **accident**, **we** do cover the cost of extraction and/or reconstruction of damaged teeth.

e. Anal gland expression.

## 4) OTHER EXCLUSIONS

**We** do not reimburse the costs, fees or expenses associated with:

a. **Injury** or **illness** due to any intentional, neglectful or preventable act, including organized dog fighting, by **you** or a member of **your** household;

b. Elective procedures, cosmetic procedures, preventive procedures including but not limited to:

1. tail docking;

2. ear cropping;

3. de-clawing;

4. micro-chipping;

5. dew claw removal; or

6. ear cleaning;

c. Boarding or transport expenses;

d. **Conditions** arising from a specific activity if the same or a similar activity occurred prior to the **pet policy effective date** and displayed the propensity for the activity to recur and cause **injury** or **illness** to **your pet**;

e. Future treatment for **injury** or **conditions** of a leg when cruciate ligament problems to any other leg existing prior to the **pet policy effective date**, have been identified, regardless of whether or not the new signs or symptoms are related to such cruciate ligament problems;

f. Diseases preventable by vaccines and prophylactic **medications** (such as heartworm, lice, internal parasites and fleas);

g. Complications of **conditions** excluded or limited by this **policy**;

h.  Abnormalities where **clinical symptoms** were apparent prior to the **pet policy effective date**. This includes **conditions** that are detectable by a routine physical exam by **your veterinarian**;

i.  Claims in any way arising from the lack of use and/or implementation of preventive healthcare products and/or methods when such products and/or methods would be in accordance with generally accepted veterinary standards. Routine healthcare includes: **vaccinations**, flea control, heartworm **medication**, de-worming, dental care, ear plucking, grooming, and prudent regular care;

j.  Special diets, foods, vitamins, grooming, nail trims, shampoo and bathing;

k.  Any claim for loss from a nuclear incident as defined in the Nuclear Liability Act, nuclear explosion or contamination by radioactive material;

l.  **Conditions** arising from any specific activity if the same or similar activity occurs after **you** have received written notice from **us** regarding the specific activity;

m.  Experimental or investigational treatment or medicine;

n.  Breeding or **conditions** relating to breeding, whelping, and queening;

o.  **Diagnostic tests** for **conditions** excluded by this **policy**;

p.  **Diagnostic tests** due to complications of **conditions** excluded or limited by this **policy**;

q.  **Conditions** caused by war or war activities whether war be declared or not. War activities include civil war, insurrection, rebellion, or revolution or any act or **condition** incident of any of the foregoing;

r.  Feeding, housing or exercise;

s.  Training, therapy, **medications** or other methods or forms of behavioral modification;

t.  Shipping or mailing costs unless associated with a covered compounded **medication** or **diagnostic tests**.

**5) LIMITATIONS**

a.  A **pet** less than six (6) years of age on the date of enrollment must have undergone a complete **clinical examination.** The exam must have taken place either in the twelve (12) months prior to the **pet policy effective date**, or within fifteen (15) days following the **pet policy effective date**. A **pet** six (6) years of age or greater on the date of enrollment must have undergone a complete **clinical examination** within thirty (30) days prior to the **pet policy effective date,** or within fifteen (15) days following the **pet policy effective date**. **Your** failure to submit **your pet** to a complete **clinical examination** may void the **policy**. If the **policy** is voided, the **policy** premium will be refunded.

b.  For **pets** six (6) years of age or greater on the date of enrollment, no **coverage** shall apply for **illness** related to hip dysplasia.

c.  For **working pets**, no **coverage** shall apply for any **condition** resulting from activities related to racing, breeding, law enforcement, guarding or for any commercial use.

d.  **We** will not make any payments for any claims for which **you** are entitled to be paid under any other insurance except for any additional sum which is payable over and above such other insurance.

**III.    GENERAL CONDITIONS**

1)  Premium is payable monthly by Direct Debit or by charge to **your** credit card, according to the option selected by **you** on the application. This **policy** is continued until cancelled, and will renew automatically each month as long as premium payments are current. When **you** have not paid the premium, **we** may cancel this **policy**. **We** will let **you** know at least twenty (20) days before the date cancellation takes effect. No coverage will be provided for any claim with a date of **veterinary treatment** between the premium due date and the cancellation date, unless the premium payments are current.

2)  **You** may cancel **your policy** by notifying **us** in writing via regular mail, fax or email at least fourteen (14) days in advance of **your** next premium payment.

3) **You** must be the owner of each **pet** shown on the **pet schedule**. If the **pet** owner dies, becomes unable to care for any insured **pet**, or passes the ownership of any insured **pet**, the **coverage** will continue without interruption, if approved in writing by **us**, subject to all other terms and conditions of this **policy**.

4) A **pet** is covered under this **policy** only while the **pet** is in the United States of America, or temporarily away in Canada.

5) **You** must agree to implement all reasonable means possible in the care and protection of **your pet**. **You** further agree to protect **your pet** from aggravation or recurrence of the **injury** /or **illness**.

6) This **coverage** is not transferable to other **pets**. All new **pets** are subject to a new application and your monthly payment will increase.

7) **You** are entitled to increase the **deductible** or **coinsurance** amount applicable to **your pet** at any time. This request must be made in writing and will become effective the month following approval by **us**. **You** may apply to lower the deductible or **coinsurance** amount applicable to **your pet** provided you have not previously filed a claim with **us** for that **pet**. This request must be in writing and will become effective the month following approval by **us**.

8) Notice of loss must be given by either **you** or **your** agent.

9) The loss is payable within sixty days after completion of the claim form, unless applicable state law provides for a shorter period.

10) In order to process a claim, **you** must allow **us** to contact **your** present and previous **veterinarian(s)** and provide **us** with the necessary authority to obtain any information **we** may require. In the event information relating to the history of the **pet** is missing or incomplete, the claim will not be processed. **You** must also agree to submit the **pet** to examination, if **we** require, by a **veterinarian** selected by **us**.

11) In the event of any disagreement between **you** and **us** with regard to a claim, the matter will be referred to a **veterinarian** of **ours**. If the matter is not resolved, an independent third party **veterinarian** shall be appointed by **us**. This independent third party **veterinarian's** decision shall be final and binding on all parties.

12) Every action or proceeding against **us** for the recovery of any claim under or by virtue of this contract is absolutely barred unless commenced within one year after the loss or damage occurs or unless state law requires a longer period.

**IV.    ADDITIONAL CONDITIONS**

**1) MISREPRESENTATION AND FRAUD** – This **policy** will be voided if **you** have concealed or misrepresented any material fact or circumstance concerning this insurance or the **pet** covered. **We** do not provide **coverage**, for an insured who has intentionally concealed or misrepresented any such facts or circumstances before or after a loss.

**2) CANCELLATION**

a.  **We** may cancel this **policy** if **we** do not receive a monthly premium from **you** when the premium is due. In such a case a written notice will be sent to **you** at **your** last email address known to us. We will provide at least (20) days notice of our intent to cancel. The notice will be in accordance with the provisions of **III. GENERAL CONDITIONS** 1). Otherwise, **we** may cancel this policy by providing **you** at least ninety (90) days written notice.

b.  **You** may cancel this **policy** at any time by notifying **us** in writing via regular mail, fax or email. This is in accordance with the provisions of III. **GENERAL CONDITIONS** 2).

**3) STATE LAW** – When this **policy's** provisions are in conflict with the statutes of the state in which this **policy** is issued, the provisions are amended to conform to such statutes.

**4) ENTIRE CONTRACT** – This **policy**, the **declarations page**, and any attached endorsement constitutes the entire agreement between **you** and **us**.

**5)** **FREE LOOK PERIOD** - If **you** are not satisfied with this **policy** within thirty (30) days of the **Policy Effective Date**, **you** may cancel **your** insurance. **We** will refund **your** premium in full, as long as **you** have not submitted a claim.

## V.  DEFINITIONS

The following defined words or phrases in the **policy** are printed in bold type and have the following meanings, unless a different meaning is described in a particular coverage or endorsement.

1) **Accident.** An unexpected and unintended event.

2) **Clinical Examination.** A thorough examination performed by a licensed and registered **veterinarian** encompassing all body systems of the **pet**. Examination can also be referred to as "full physical, physical consultation, full examination or veterinary examination."

3) **Clinical Symptoms.** Any manifested anomaly in, or deviation from the regular healthy state or function of a **pet**, including behavioral traits. **Clinical Symptoms** include any anomaly that is readily detectible by a thorough and complete **clinical examination**.

4) **Coinsurance. Your** portion of the cost of insured **veterinary treatment for your pet** before any **deductible** is applied. **Your pet's coinsurance** amount is shown as "Your Share" on the **pet schedule** of the **declarations page**.

5) **Condition.** Any manifestations of **clinical symptoms** consistent with a diagnosis or diagnoses, regardless of the number of such symptoms or areas of the body affected.

6) **Coverage.** The insurance protection described in this **policy** form and on the **declarations page.**

7) **Coverage Term.** A twelve (12) month period that begins with the effective date of **coverage** and continues for each twelve (12) month period thereafter.

8) **Declarations Page.** A written document comprising part of this **policy**, which identifies the insured, the **policy** number, and the insured **pet schedule** with the **coverage** options selected and Lifetime Limit provided.

9) **Deductible.** The amount **you** must first pay with respect to the cost of insured **veterinary treatment** for **your pet** after **your pet's coinsurance** portion has been applied.

10) **Dental Health Care.** The care required to maintain dental hygiene for **your pet.** This includes cleaning, brushing, scaling, polishing, extractions and reconstructions.

11) **Diagnostic Tests.** Tests used to determine the overall health of **your pet**. **Diagnostic tests** can be used as a way to detect certain abnormalities. It can also validate the current health of **your pet**, or help to evaluate an older **pet** more thoroughly before problems surface.

12) **Hospitalization.** Charges for boarding **your pet** at a veterinary clinic as required by your **veterinarian** to deliver nursing care, administer **medication** to or monitor **your pet**.

13) **Illness.** Sickness, disease or any other changes to **your pet's** normal healthy state; or any **condition** other than **your pet's** normal healthy state.

14) **Injury** or **Injuries.** Physical harm or damage to **your pet** arising from normal activity or an **accident**.

15) **Medically Necessary.** Medical services, supplies or treatments provided by a **veterinarian** to treat covered **pets** which are:

    a. consistent with symptoms or diagnosis;

    b. appropriate and meet generally accepted veterinary practice standards;

    c. not primarily for the convenience of the **pet parent**, **your veterinarian** or other providers; and

    d. consistent with the most appropriate supply or level of services which can safely be provided to the **pet**.

16) **Medication.** Any veterinary recommended **medications** prescribed by **your veterinarian** and approved by the Food and Drug Administration (FDA) for veterinary use.

17) **Neutering.** Orchiectomy, or surgical removal of the testicles.

18) **Pet** or **Pets.** A domestic cat or dog that is owned for companionship or as a help dog. **Pet** or **Pets** do not include a domestic cat or dog that is involved in activities other than companionship or helping, including, but not limited to, racing, breeding, law enforcement, guarding or commercial activities.

19) **Pet Parent.** The owner of the **pet,** including owner's spouse or partner.

20) **Pet Policy Effective Date.** 12:01 a.m. of the day following the date you enroll **your pet**, as shown on the **pet schedule** of the **declarations page**, subject to the waiting periods as defined in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.,** and **1) d.**

21) **Pet Schedule.** The table shown on the **declarations page** that identifies the **pet policy effective date**, policy number and **coverage** options related to a specific insured **pet.**

22) **Policy.** The terms and conditions and most recent **declarations page** that includes any endorsements that apply.

23) **Policy Effective Date.** 12:01 a.m. of the day following the date Shown in the Declarations, subject to the waiting periods as defined in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.,** and **1) d.**

24) **Pre-existing conditions** means:

   a. **Illness** or **condition** which developed or redeveloped prior to the **pet policy effective date**;

   b. an **injury,** or recurrence of an **injury,** as a result of an **accident** that occurred prior to the **pet policy effective date**; or

   c. any **condition** or complication resulting from an **illness** that developed, or any **injury** as a result of an **accident** that occurred prior to the **pet policy effective date.**

25) **Spaying.** Ovariohysterectomy, or resection of the ovaries and uterus.

26) **Supplies.** Any item that is **medically necessary**, as determined by the **veterinarian**, that is safe and effective for its intended use, and that omission would adversely affect the insured **pet**.

27) **Surgery** or **Surgeries.** Any procedure that treats diseases or **injuries** by operative manual and instrumental treatment.

28) **Vaccination.** The administration of an industry-recognized commercial vaccine by a registered licensed **veterinarian**. The vaccine must be in accordance with the manufacturer's recommendations, following a complete **clinical examination,** for prevention of disease.

29) **Veterinarian.** A properly licensed and registered **veterinarian** in active practice in the area where the **pet** is treated or examined. **Veterinarian** shall not include **you** or a member of **your** immediate family.

30) **Veterinary Examinations Fees.** Fees charged for the professional opinion of a **veterinarian**. Also referred to as consultation, examination, referral, and recheck fees.

31) **Veterinary Treatment** means**:**

   a. X-rays;

   b. Laboratory and **diagnostic tests**;

   c. **Medication**;

   d. **Surgeries;**

   e. **Supplies;**

   f. **Hospitalization;**

   g. Euthanasia; and

   h. Nursing care;

provided by a licensed **veterinarian** and their staff under direct supervision.

32) **Waiting Periods.** 15 days from the **Pet Policy Effective Date** for **accidents** and **illness** and 12 months from the **Pet Policy Effective Date** for **illness** related to hip dysplasia.

33) **Working Pets.** Any **pet** involved in activities other than companionship or helping, including, but not limited to, racing, breeding, law enforcement, guarding or for other commercial use.

34) **Your Pet.** The dog or cat named in the **pet schedule** of the **declarations page**.

