1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN BENANAV, *et al.*, on behalf of
themselves and all others similarly situated,

                    Plaintiffs,

      v.

HEALTHY PAWS PET INSURANCE, LLC,

                Defendant.

CASE NO.  C20-421-RSM

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

## I.       INTRODUCTION

This matter comes before the Court on Defendant Healthy Paws Pet Insurance, LLC ("Healthy Paws")'s Motion to Dismiss Plaintiffs' amended class action complaint, Dkt. #28. Plaintiffs oppose Healthy Paws' motion. Dkt. #35. The Court finds oral argument unnecessary to resolve the underlying issues.  Having reviewed the relevant briefing and the remainder of the record, the Court GRANTS Healthy Paws' motion to dismiss.

## II.       BACKGROUND

Defendant Healthy Paws markets and administers pet insurance policies to consumers for insurance companies, with its principal place of business in Bellevue, Washington.  Dkt. #25 at ¶¶ 3-5.  The insurance companies underwriting the policies advertised and administered by Healthy

ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS - 1

Paws include ACE American Insurance Company ("ACE"), Indemnity Insurance Company of North America ("Indemnity"), and Westchester Fire Insurance Company ("Westchester"), which are subsidiaries of parent company CHUBB Ltd.  *Id.*  Pursuant to a General Agency Agreement dated October 1, 2012 between Healthy Paws and the insurance companies, Healthy Paws takes responsibility for selling and administering policies through advertising, website development, policy quoting, issuance, servicing, and claims adjudication.

Plaintiffs allege that Healthy Paws misrepresented the basis for changes to a policyowner's monthly premiums.  This alleged misrepresentation is contained in (1) the insurance policy, (2) a sample policy document posted on Healthy Paws' website ("the Sample Policy"); and (3) a "Frequently Asked Questions" page on Healthy Paws' website ("the FAQ page").  The insurance policy for Plaintiffs Benanav, Kowalski, and Thomas contain the same language under paragraph I(5):

> MONTHLY PREMIUM: Your monthly premium is set forth on your declarations page. *Monthly premiums may change for all policyholders to reflect changes in the costs of veterinary medicine.* We will notify you at least sixty (60) days in advance of such change.

Dkt. #25 at ¶¶ 28, 36, 51 (emphasis added).  Plaintiffs contend that these statements mislead them to believe that their premium would only increase as the costs of veterinary medicine increased. *Id.* at ¶ 6.  The Sample Policy repeats the same language stating that policy premiums may change "to reflect changes in the costs of veterinary medicine."  *Id.* at ¶ 46.  Furthermore, when Plaintiff Kowalski purchased her policy in 2011, Healthy Paws stated the following on its FAQ page:

> Will my premiums increase over the life of my pet?
> *Due to the increasing cost of new technology and advances in veterinary care, your rates will increase slightly each year.* These slight increases provide you the opportunity to offer your pet the best medical and diagnostic options available today. Keep in mind your rates will never go up to due to making claims. *And all pet*

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 2

> *insurance companies, no matter how they try to market their
> benefits, will raise rates to keep up with the rapidly rising cost of
> veterinary care.*

Dkt. #25 at ¶ 41 (emphases added).  Healthy Paws posted a similar statement on its FAQ page

when Plaintiffs Benanav and Thomas purchased their policies in 2012 and 2014, respectively:

> Will my premiums increase over the life of my pet?
> *Due to the increasing cost of new technology and advances in
> veterinary care, your rates will increase slightly each year. Our plan
> has factored the expected increase in the cost of veterinary care into
> your rates* so that the annual premium increases are manageable.
> These manageable annual increases provide you the opportunity to
> offer your pet the best medical and diagnostic options available
> today. Rest assured, we will never penalize you with higher rates for
> making claims. It's not your fault your pet is unlucky! *All pet
> insurance companies, no matter how they market their benefits, will
> raise rates periodically to keep up with the rapidly rising cost of
> veterinary care.*

Dkt. #25 at ¶ 42 (emphases added).

Between 2011 and 2014, Steven Benanav, Monica Kowalski, and Katherine Thomas

purchased pet insurance policies through Healthy Paws.  *Id.* at ¶¶ 14-16.  After purchasing their

pet insurance, Plaintiffs discovered that their policy premiums increased each year at a rate that

allegedly exceeded the general rising costs of veterinary medicine.  Mr. Benanav claims that his

premiums increased by over 300% between 2013 and 2020, starting with a $33.85 monthly

premium in January 2013 to his current payment of $104.50 in 2020.  *Id.* at ¶¶ 66-68.  Ms. Thomas

purchased insurance in July 2014, and her monthly premiums increased from $40.61 in 2014 to

$54.53 in 2020.  *Id.* at ¶¶ 74-77.  Ms. Kowalski purchased her policy in 2011 for her dogs Lola,

Olive and Jenks.  *Id.* at ¶¶ 83-90.  Jenks passed away in 2015, but Ms. Kowalski's premiums for

Lola and Olive, respectively, increased from $25.41 and $31.44 per month in 2011 to $69.18 and

$86.36 in 2020.

ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS - 3

Plaintiffs contend that notwithstanding Healthy Paws' representations to the contrary, their monthly pet insurance premiums increase based on factors besides changes in the cost of veterinary medicine, such as the pet's age. Dkt. #25 at ¶ 51. As evidence of Healthy Paws' misrepresentation, Plaintiffs cite to a correction at the bottom of a 2019 New York Times article which stated, "An earlier version of this article, using information supplied by Healthy Paws Pet Insurance, misstated how a pet's age affects premiums for the company's policies. *The pet's age affects the premium at the time of enrollment and as the pet gets older, not just at enrollment.*" *Id.* at ¶ 56 (emphasis added). Plaintiffs also cite to a statement from Healthy Paws' customer service team responding to a complaint posted on the Better Business Bureau website. In this statement, Healthy Paws confirmed that several factors besides the general rising cost of veterinary medicine affect the premium:

> In accordance with the terms of the Pet Health Insurance Policy and the associated rating rules, monthly premiums may change for all policyholders. Premiums are determined based on the rates and rating rules filed and approved within each state's Department of Insurance, *which reflect the cost of treatment advances in veterinary medicine, your individual pet's breed, gender, age, and other factors, in addition to the overall claims experience for the program within the region your pet resides.*

*Id.* at ¶ 58 (emphasis added). Plaintiffs also cite to a report from the Nationwide Purdue Index stating that the costs of veterinary medicine only rose by 21.1% from the end of 2014 through the end of 2018. *Id.* at ¶¶ 69-70. In contrast, Plaintiff Benanav's premiums rose by 65.4% during this four-year period.

On March 19, 2020, Plaintiffs brought this action against Healthy Paws on behalf of themselves and those similarly situated. Dkt. #1. Plaintiffs filed their amended complaint on June 8, 2020 alleging violations of the Washington Consumer Protection Act, RCW § 19.86, *et seq.* ("WCPA") on behalf of all plaintiffs, the California Unfair Competition Law Cal. Bus & Prof.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 4

Code § 17200, *et seq.* ("UCL") on behalf of Plaintiff Benanav and the California class, the Illinois

Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA") on

behalf of Plaintiff Kowalski and the Illinois class, and the New Jersey Consumer Fraud Act,

N.J.S.A. 56:8-1, *et seq.* ("CFA") on behalf of Plaintiff Thomas and the New Jersey class.  Dkt.

#25 at ¶¶ 101-145.  Plaintiffs seek compensatory, consequential, statutory and punitive damages,

and declaratory and injunctive relief to address Healthy Paws' ongoing deceptive conduct.  *Id.* at

24.  On July 15, 2020, Healthy Paws moved to dismiss Plaintiff's amended complaint.  Dkt. #28.

### III.     DISCUSSION

#### A.  Request for Judicial Notice

"Generally, on a 12(b)(6) motion, the District Court should consider only the pleadings."

*Shaver v. Operating Engineers Local 428 Pension Trust Fund,* 332 F.3d 1198, 1201 (9th Cir.

2003).  However, the Court may consider "materials incorporated into the complaint by reference,

and matters of judicial notice." *New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d

1089, 1094 (9th Cir. 2011).  Healthy Paws requests that the Court consider two categories of

materials: (1) documents included in Plaintiffs' insurance policies that were not attached to the

Amended Complaint; and (2) the insurance rate filed by Markel Insurance Company with the

California Department of Insurance.  Dkt. #30.  Healthy Paws' request for judicial notice is

GRANTED IN PART as set forth below.

First, Healthy Paws moves the Court to consider additional pages from the policy terms

that Plaintiffs omitted from their exhibits to the Amended Complaint.  *Id.* at 4.  Specifically,

Healthy Paws attaches the endorsement page, signature, declaration, and notice pages for each of

these policies.  Healthy Paws argues that these documents are properly considered under the

"incorporation by reference" doctrine, given that the incomplete agreements attached to the

1    Amended Complaint "presented the Court with only a portion of their entire insurance policies."

2    *Id.* at 4.  Under the "incorporation by reference" doctrine, a court may review documents "whose

3    contents are alleged in a complaint and whose authenticity no party questions, but which are not

4    physically attached to the [plaintiff's] pleading." *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir.

5    2005) (internal quotations omitted).  The incorporation by reference doctrine also applies to

6    "situations in which the plaintiff's claim depends on the contents of a document, the defendant

7    attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of

8    the document, even though the plaintiff does not explicitly allege the contents of that document

9    in the complaint." *Id.*

10          Here, Plaintiffs do not dispute the authenticity of the attached documents or otherwise

11   oppose the Court's consideration of these omitted pages.  Furthermore, the contents of most of

12   these documents are expressly referenced in the complaint.  The "Signatures" pages set forth the

13   name of the insured, date of issuance, and name of the issuing insurance company, *see* Dkts. #29-

14   1, #29-2. #29-3. #29-4, and the "Declarations" pages list each plaintiff's pet and their monthly

15   premium, *see* Dkts. #29-9, #29-10, #29-11.  Accordingly, these documents are properly

16   considered under the "incorporation by reference" doctrine.  However, the content of the "Notice"

17   pages, which informs each policyholder of the process for making claims, is not referenced in the

18   Amended Complaint.  *See* Dkts. #29-5, #29-6, #29-7.  Likewise, Plaintiffs' fraud-related claims

19   do not depend on the content of these pages or otherwise require consideration of the entire

20   contract at the pleading stage.  *See Eclectic Properties E., LLC v. Marcus & Millichap Co.*, No.

21   C-09-00511 RMW, 2011 WL 1375164, at *4 (N.D. Cal. Apr. 12, 2011) ([U]nlike a claim for

22   breach of contract, fraud-based claims do not legally depend on the contracts governing allegedly

23   fraudulent transactions.").  *Cf. Mason v. Allstate Ins. Co.*, 2014 WL 212245, at *1 n.1 (C.D. Cal.

24

ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS - 6

Jan. 6, 2014) (Granting judicial notice of declarations page of insurance policy in breach of contract action against insurer).[1]  The Court therefore finds no proper basis to consider the "Notice" pages and denies Healthy Paws' request for judicial notice of these excerpts.

Next, Healthy Paws requests judicial notice of the California rate filed by Markel American Insurance Company ("Markel") in 2012.  Dkt. #30 at 4.  Federal Rule of Evidence 201 permits the court to "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  Consistent with that rule, courts may take judicial notice of undisputed matters of public record, such as documents on file with administrative agencies.  *Palmason v. Weyerhaeuser Co.*, 2013 WL 1788002, at *1 (W.D. Wash. Apr. 26, 2013).  Here, Markel filed its rate with the California Department of Insurance, and the rate filing documents are publicly available on the agency's website.[2]  Accordingly, the Court takes judicial notice of these rate filing documents.  *See* Dkt. #29-8.

**B. Legal Standards for Motion to Dismiss**

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted).

---

[1] Healthy Paws argues that courts "routinely consider the rest" of a contract or agreement where plaintiffs attach only a selective portion to their complaint. Dkt. #30 at 4.  The cited cases do not support this general proposition.  In each case, the court took judicial notice because the agreement supplied the basis for the cause or causes of action alleged by the plaintiff and/or was noticeable as part of the public record. *See, e.g.*, *Mason*, 2014 WL 212245, at *1, n.1; *City of Los Angeles v. JPMorgan Chase & Co.*, No. 2:14-CV-04168-ODW, 2014 WL 3854332, at *5, n.5 (C.D. Cal. Aug. 5, 2014).

[2] *See* https://interactive.web.insurance.ca.gov/warff/front?event=rateFilingPdf&function=downloadPDF&serffFilingNumber=MRKC-126573195&filingNumber=10-2837&typeCode=PC.

ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS - 7

However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678, 129 S.Ct. 1937. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. Absent facial plausibility, a plaintiff's claims must be dismissed. *Id.* at 570, 127 S.Ct. 1955.

A pleading that states a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief," as well as "a demand for the relief sought . . . ." Fed. R. Civ. P. 8(a). The purpose of the short and plain statement rule is to provide defendants with "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citation and internal quotations omitted). However, claims alleging fraud are subject to heightened pleading standards under Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a claim of fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Particularity under Rule 9(b) requires the plaintiff to plead the "who, what, when, where, and how" of the misconduct alleged. *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009). When applying the heightened pleading standards for fraud, courts must "not be drawn into assessing the credibility of potential witnesses or answering questions of fact." *Patel v. Seattle Genetics, Inc.*, No. C17-41RSM, 2017 WL 4681380, at *3 (W.D. Wash. Oct. 18, 2017).

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 8

Healthy Paws argues that dismissal of Plaintiffs' amended complaint is warranted because (1) Plaintiffs fail to sufficiently allege a material misrepresentation or omission by Healthy Paws; (2) Washington, California, and New Jersey's filed rate doctrines bar Plaintiffs' respective state law claims; and (3) claims under Washington, California and Illinois state law are time-barred. Having considered Plaintiffs' Amended Complaint and attached exhibits, the relevant briefing, and the judicially noticeable materials, the Court GRANTS Healthy Paws' motion for the reasons set forth below.

**C. Failure to Adequately Plead Fraud**

Healthy Paws first moves to dismiss Plaintiffs' claims for failure to adequately plead affirmative misrepresentations or material omissions by Healthy Paws in (i) the insurance contract or (ii) the Sample Policy and FAQ Page that Plaintiffs relied upon in purchasing their policies. Dkt. #28 at 15-19.  The Court will address each argument in turn.

i. Misrepresentations in Insurance Contract

Healthy Paws argues that as a non-party, it cannot be held liable for any misrepresentations or omissions in the policy statement.  Dkt. #28 at 15-17.  In support of its argument, Healthy Paws cites to cases holding that an insurance agent cannot be held liable under a principal's contract pursuant to California, Washington, Illinois and New Jersey state law.  *See, e.g.*, *Meisel v. Allstate Indem. Co.*, 357 F. Supp. 2d 1222, 1226 (E.D. Cal. 2005); *Revolutionar, Inc. v. Gravity Jack, Inc.*, 2020 WL 2042965, at *14 (Wash. App. Div. 3 Apr. 28, 2020) ("When an agent makes a contract on behalf of a disclosed principal whom he has power to bind, he does not thereby become liable for his principal's nonperformance."); *Am. Inter-Fid. Corp. v. M.L. Sullivan Ins. Agency, Inc.*, 2016 WL 3940092, at *6 (N.D. Ill. July 21, 2016) ("Illinois law is clear that "the *only* way that an agent may be liable under a principal's contract with a third party is if

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 9

1   the agent agrees to become personally liable.") (emphasis in original); *Bel-Ray Co., Inc. v.*

2   *Chemrite (Pty) Ltd.*, 181 F.3d 435, 445 (3d Cir. 1999) ("[A]n agent of a disclosed principal, even

3   one who negotiates and signs a contract for her principal, does not become a party to the

4   contract.").

5       Plaintiffs respond that *Meisel* and the related cited cases are inapposite, given that the

6   amended complaint does not allege breach of contract.  Dkt. #35 at 14-15.  However, Plaintiffs

7   fail to meaningfully address the broader proposition set forth in each of these cases: that in the

8   context of insurance cases, "liability to the insured for '*acts or* contracts of an insurance agent

9   within the scope of his agency, with full disclosure of the principal, rests on the [insurance]

10  company.'"  *Meisel*, 357 F. Supp. 2d at 1227 (quoting *Lippert v. Bailey,* 241 Cal. App. 2d, 376,

11  50 Cal. Rptr. 478 (1966)) (emphasis added).  Indeed, courts have squarely rejected Plaintiffs'

12  proposition that limitations on insurance agent liability only apply to breaches of contractual

13  obligations.  *See, e.g.*, *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 807–08 (N.D. Cal.

14  1998) ("Nothing in Witkin's *Summary* [*of California Law*]*,* however, or in *Lippert* itself, limits

15  the rule in the case to contractual claims.")  For example, under California law, courts have

16  extended this principle to an agent's negligent misrepresentations as well as to fraud claims.  *See,*

17  *e.g.*, *Gasnik v. State Farm Ins. Co.,* 825 F. Supp. 245, 249 (E.D. Cal. 1992) (dismissing claims

18  against agent alleging negligent misrepresentation that coverage would increase); *Campbell v.*

19  *Allstate Ins. Co.,* 1995 WL 376926 at *1 (C.D. Cal. 1995) (dismissing claims for fraud and

20  negligent misrepresentation against agent).  Plaintiffs have failed to acknowledge this body of

21  case law in their Response, citing only one case outside the insurance context.  *See* Dkt. #35 at

22  15 (citing *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 1457, 1471 (2006)).  *McKell*, which

23  addresses mortgagors' claims against a mortgage lender, is inapposite here.

24

ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS - 10

For these reasons, to the extent Plaintiffs allege claims arising from the terms of the insurance policy, they have failed to state a claim. However, because state law recognizes certain exceptions to the general rule precluding insurance agent liability, *see, e.g.*, *Good*, 5 F.Supp. 2d at 808, the Court cannot conclude at this stage that amendment is futile. Accordingly, the Court dismisses Plaintiffs' claims alleging misrepresentation or material omission in the insurance contract without prejudice.

ii.  Misrepresentations in Sample Policy and FAQ Page

Plaintiffs also allege misrepresentations in Healthy Paws' advertising of the insurance contracts—namely, its statements regarding premium increases in the Sample Policy and its FAQ Page. *See* Dkt. #25 at ¶¶ 41-46. As an initial matter, Plaintiffs do not dispute that these claims are subject to the heightened pleading standard under Rule 9(b). *See* Dkt. #35 at 11. Healthy Paws contends that Plaintiffs have failed to plead sufficient detail to satisfy the Rule 9(b) heightened standard and have furthermore failed to plead that Plaintiffs relied on these statements in deciding to purchase their policies. Dkt. #28 at 17-19.

To satisfy the pleading standard under Rule 9(b), a plaintiff must articulate "the who, what, when, where, and how of the misconduct alleged." *Kearns*, 567 F.3d at 1126. In addition to specifying which statements mislead the consumer and why those statements are misleading, a plaintiff pleading under Rule 9(b) must also identify which fraudulent statements were relied upon that resulted in the fraudulent conduct. *See id.* (Finding that plaintiff failed to satisfy Rule 9(b) particularity requirement where he "failed to specify which sales material he relied upon in making his decision").

Here, Plaintiff Benanav states that he "purchased the policy *in reliance on Healthy Paws' representations on its website*, including that monthly premiums would not increase based on a

1   pet's age and instead would only increase for all policyholders based on the rising cost of

2   veterinary care." Dkt. #25 at ¶ 64 (emphasis added).  In contrast, Plaintiffs Thomas and Kowalski

3   merely state that they "purchased the policy *in reliance on Healthy Paws' representations*,

4   including that monthly premiums would not increase based on a pet's age and instead would only

5   increase for all policyholders based on the rising cost of veterinary care." Dkt. #25 at ¶¶ 76, 87.

6   Plaintiff Benanav identifies Healthy Paws' website as the source of the misrepresentation he

7   relied upon, indicating that he reviewed the allegedly misleading statements in the FAQ Page and

8   the Sample Policy.  In contrast, the vague wording in Plaintiffs Kowalski's and Thomas' claims

9   makes it unclear which of the alleged misrepresentations they were exposed to when purchasing

10  their policies.

11      Plaintiffs argue that under *Opperman v. Path, Inc.*, they need not specify the particular

12  misrepresentation they saw and relied upon.  Dkt. #35 at 13 (citing 84 F. Supp. 3d 962 (N.D. Cal.

13  2015)).  The Court finds *Opperman* distinguishable, as it addressed an "extensive and long-term

14  advertising campaign" such that the court deemed it "unrealistic to require the plaintiff to plead

15  each misrepresentation she saw and relied upon . . . ."  *Opperman*, 84 F. Supp. 3d at 976 (citing

16  *In re Tobacco II Cases,* 46 Cal.4th 298, 328, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009)).  Here,

17  Plaintiffs have identified only three possible sources of misrepresentation: the FAQ page, the

18  Sample Policy, and the actual policy issued by the insurers.  The instant case is therefore more

19  alike to *Kearns*, which required the plaintiff to specify which misleading sales material he relied

20  upon in order to satisfy Rule 9(b).  *See Kearns*, 567 F.3d at 1126.  Accordingly, the Court finds

21  that Plaintiff Kowalski's and Thomas' claims fail to satisfy the Rule 9(b) pleading standard and

22  are properly dismissed without prejudice.

23

24
        ORDER GRANTING DEFENDANT'S MOTION TO
        DISMISS - 12

The remaining claims, Plaintiff Benanav's claims under the UCL and WCPA, survive Healthy Paws' remaining arguments for dismissal for failure to adequately plead fraud. To have standing to pursue claims under California's UCL, a plaintiff must allege actual reliance on the fraudulent statements. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020). In cases premised on false advertising and misrepresentations to consumers, the California Supreme Court has held that a "plaintiff is *not* required to allege that the challenged misrepresentations were the *sole* or even the *decisive* cause of the injury-producing conduct." *Kwikset Corp. v. Super. Ct.*, 120 Cal. Rptr. 3d 741, 246 P.3d 877, 888 (2011) (emphases added) (internal citations omitted). Rather, the plaintiff must merely "establish it to be plausible that a reasonable man would attach importance to [the] existence or nonexistence [of the misrepresentation] in determining his choice of action in the transaction in question." *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1055 (9th Cir. 2017) (quoting *Tobacco II*, 207 P.3d at 39 (2009)). The question of whether the misrepresentation is sufficiently material to allow for an inference of reliance "is generally a question of fact that cannot be decided at the motion to dismiss stage." *Moore*, 966 F.3d at 1021.

Plaintiff Benanav states that he "purchased the policy *in reliance on Healthy Paws' representations on its website*, including that monthly premiums would not increase based on a pet's age and instead would only increase for all policyholders based on the rising cost of veterinary care." Dkt. #25 at ¶ 64 (emphasis added). While Healthy Paws attempts to analogize this case to *Rugg v. Johnson & Johnson*, No. 17-CV-05010-BLF, 2019 WL 119971 (N.D. Cal. Jan. 7, 2019), the cases are distinguishable. Here, Plaintiff Benanav expressly states that he relied on Healthy Paws' misrepresentations on its website, which encompasses the FAQ Page and Sample Policy. *See id.* at ¶ 64. The plaintiffs in *Rugg*, in contrast, "failed to allege that they

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 13

1    viewed and relied on such advertisements or websites."  2019 WL 119971, at *3.  Having

2    determined that Plaintiff Benanav has sufficiently pleaded reliance under the UCL, the Court

3    finds causation adequately pleaded under the WCPA.  *Cf. Maple v. Costco Wholesale Corp.*, 649

4    Fed. Appx. 570, 572 (9th Cir. 2016) (unpublished) (Affirming dismissal of WCPA claim for

5    failure to allege that plaintiff read misleading parts of the label).

6    **D. Filed Rate Doctrine**

7        Healthy Paws also moves to dismiss Plaintiffs' Washington, California, and New Jersey

8    claims under each state's filed rate doctrine.[3]  In Washington, the filed rate doctrine bars lawsuits

9    that challenge the reasonableness of insurance rates filed and approved by a regulating agency.

10   *Tenore v. AT&T Wireless*, 136 Wash. 2d 322, 332, 962 P.2d 104, 108 (1998).  The doctrine serves

11   a two-fold purpose: "(1) to preserve the agency's primary jurisdiction to determine the

12   reasonableness of rates, and (2) to insure that regulated entities charge only those rates approved

13   by the agency."  *McCarthy Fin., Inc. v. Premera*, 182 Wash. 2d 936, 942, 347 P.3d 872, 875

14   (2015) (quoting *Tenore*, 136 Wash. 2d at 331-32, 962 P.2d at 108)).  Similarly, California and

15   New Jersey courts apply the filed rate doctrine to bar lawsuits that challenge the reasonableness

16   of approved rates.  *See MacKay v. Super. Ct.*, 188 Cal. App. 4th 1427, 1431–32 (Cal. App. 2d

17   Dist. 2010), *as modified* (Oct. 22, 2010) (Holding that "the statutory provisions for an

18   administrative process (and judicial review thereof) are the exclusive means of challenging an

19   approved rate."); *see also Clark v. Prudential Ins.*, 736 F. Supp. 2d 902, 912 (D.N.J. 2010)

20   (Holding that the "filed rate doctrine provides that a rate filed with and approved by a governing

21   regulatory agency is unassailable in judicial proceedings brought by ratepayers.").

22

23   ―――――――――――――――――

[3] Parties agree that Illinois had not adopted the filed rate doctrine and is therefore inapplicable to
24   Plaintiffs' ICFA claims.  *See* Dkt. #28 at 13.

ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS - 14

1    Plaintiffs argue that the filed rate doctrine is inapplicable here, since (i) Healthy Paws

2    cannot assert the filed rate doctrine as a non-insurer or rate filer; (ii) Healthy Paws' insurance

3    partners did not comply with their filed rates; and (iii) Plaintiffs challenge Healthy Paws'

4    misrepresentations about the filed rates as opposed to their reasonableness.  Dkt. #35 at 16.  The

5    Court will address each argument in turn.

6                    i.    Applicability of Filed Rate Doctrine to Insurance Agents

7    Plaintiffs' first argument is easily dismissed, given that courts consistently acknowledge

8    that the filed rate doctrine applies to claims against entities other than rate filers.  *See, e.g.*, *Alpert*

9    *v. Nationstar Mrtg.*, 243 F. Supp. 3d 1176, 1183 (W.D. Wash. 2017) (Dismissing claims against

10   loan servicer and insurance broker under filed rate doctrine); *Richardson v. Standard Guar. Ins.*

11   *Co.*, 371 N.J. Super. 449, 472–73 (N.J. Super. App. Div. 2004) (Finding that "the filed rate

12   doctrine [must be] 'rigidly enforced' when a non-carrier [defendant] *is an agent for a carrier*

13   . . . .") (emphasis added) (quoting *Smith v. SBC Commc'n. Inc.* 178 N.J. 265 (N.J. 2004)).  Indeed,

14   the Ninth Circuit has recognized that the doctrine must be applied "whenever the purposes

15   underlying the filed rate doctrine are implicated" regardless of "the nature of the cause of action

16   the plaintiff seeks to bring . . . ."  *Carlin v. DairyAmerica, Inc.*, 705 F.3d 856, 869 (9th Cir. 2013)

17   (internal citations omitted).

18   Plaintiffs cite to several cases where courts declined to apply the filed rate doctrine, yet

19   none of them stand for the proposition that the doctrine does *not* apply to claims against insurance

20   agents.  *See, e.g.*, *Ellsworth v. US Bank*, 30 F. Supp. 3d 886 (N.D. Cal. 2014) (applying doctrine

21   to claims against regulated utilities); *CallerID4u v. MCI Commc'ns Servs.*, 880 F.3d 1048, 1054

22   (9th Cir. 2018) (Applying doctrine to telecommunication carrier); *Weinberg v. Sprint Corp.*, 173

23   N.J. 233, 241, 801 A.2d 281, 286 (2002) (same).  Plaintiffs also cite *Cannon v. Wells Fargo*,

24
ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS - 15

1   where the court declined to apply the filed rate doctrine against a mortgage servicer.  *See* 917 F.

2   Supp. 2d 1025 (N.D. Cal. 2013).  However, in declining to apply the doctrine, the *Cannon* court

3   noted that it was because plaintiffs were challenging the manipulation of the rate as opposed to

4   its reasonableness—not because of defendant's status as a non-insurer.  *Id.* at 1038.

5                                    ii.      Compliance with Filed Rates

6           Next, Plaintiffs argue that the doctrine does not apply where Healthy Paws has failed to

7   show that Washington, California or New Jersey approved the pet insurance rates at issue.  Dkt.

8   #35 at 17-18.  Plaintiffs' argument improperly shifts the burden to Healthy Paws to show that the

9   insurers complied with the filed rates.  *Id.* at 18 ("Healthy Paws has not proven its insurers

10  complied with their filed rates").  At the motion to dismiss stage, the complaint must allege that

11  Plaintiffs paid premiums in excess of the filed rates in order to escape application of the filed rate

12  doctrine on this basis.  *See Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (Requiring complaint to

13  "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

14  face.").  The amended complaint alleges that the Washington Insurance Commissioner fined ACE

15  and Indemnity "for increasing policy premiums due to age," Dkt. #25 at ¶ 52, yet there is no

16  mention of whether the premiums that Plaintiffs paid in their respective states—California, New

17  Jersey and Illinois—exceeded the filed rates in those states.  Furthermore, Defendants have

18  provided a California rate-filing document filed by Markel in 2012 to show that Markel complied

19  with its filed rate for that time period.  *See* Dkt. #29-8.

20          Plaintiffs attempt to remedy this pleading deficiency by attaching a declaration to their

21  Response, which shows that ACE promised the California Department of Insurance that age

22  would not be a factor in premiums.  Dkt. #35 at 18 (citing Dkt. #38 (Doerrer Decl.)).  Plaintiffs'

23  introduction of this new allegation, which is not contained in the amended complaint, is

24  ORDER GRANTING DEFENDANT'S MOTION TO
    DISMISS - 16

1    procedurally improper at the motion to dismiss stage.  On a Rule 12(b)(6) motion, the court's

2    analysis is limited to "allegations contained in the pleadings, exhibits attached to the complaint,

3    and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir.

4    2012).  Plaintiffs have not requested judicial notice of this declaration and its exhibit, and the

5    Court declines to take judicial notice *sua sponte*. To the extent Plaintiffs wish to allege that they

6    paid premiums in excess of the filed rates, they may do so in an amended pleading.  Likewise, to

7    the extent Plaintiffs request that the Court defer dismissal until an evidentiary record has been

8    developed, *see* Dkt. #35 at 23, the Court finds no basis to do so where the amended complaint

9    makes no mention of Plaintiffs paying premiums in excess of the filed rates.

10                          iii.    Implication of the Filed Rate Doctrine

11          Finally, Plaintiffs argue that their claims do not implicate the filed rate doctrine because

12   they concern Healthy Paws' mischaracterization of the rates—not the reasonableness of the filed

13   rates.  Dkt. #35 at 18-23.  Under Washington law, claims for damages that relate to a plaintiff's

14   insurance premiums are not barred per se by the filed rate doctrine.  *See McCarthy*, 347 P.3d at

15   874.  Rather, courts must "determine whether the claims and damages are merely *incidental* to

16   agency-approved rates and therefore may be considered by courts or *would necessarily require*

17   *courts to reevaluate agency-approved rates* and therefore may not be considered by courts. . . .

18   The mere fact that a claim is related to an agency-approved rate is no bar." *Id*. at 875 (emphases

19   added).  A WCPA claim may proceed "to the extent that claimants can prove damages without

20   attacking agency-approved rates" because in such cases, "the benefits gained from courts'

21   considering [W]CPA claims outweigh any benefit that would be derived from applying the filed

22   rate doctrine to bar the claims." *Id.*

23

24
     ORDER GRANTING DEFENDANT'S MOTION TO
     DISMISS - 17

In *McCarthy*, plaintiffs claimed damages in the form of (1) a refund of the excessive overcharges in premium payments due to defendant's unfair business practices and excessive premiums, and (2) a refund of any excess surplus to the insureds who paid the high premiums. *McCarthy*, 347 P.3d at 874. As such, the plaintiffs sought damages that necessarily required the court to calculate a reasonable rate for their insurance premiums:

> [A]warding either of the two specific damages requested by the Policyholders would run contrary to the purposes of the filed rate doctrine because *the court would need to determine what health insurance premiums would have been reasonable for the Policyholders to pay as a baseline* for calculating the amount of damages[,] and the [Washington Office of the Insurance Commissioner] has already determined that the health insurance premiums paid by the Policyholders were reasonable.

*Id.* at 876 (emphasis added).

As an initial matter, Plaintiffs argue that *McCarthy* is inapplicable since the rates at issue here were not approved by Washington's insurance commission. Dkt. #35 at 22. Again, however, nothing in Plaintiffs' amended complaint indicates that Plaintiffs paid premiums in excess of the filed rates in their respective states. Plaintiffs further argue that *McCarthy* is inapposite, since they are attacking Healthy Paws' conduct in misrepresenting the premiums as opposed to the premiums themselves. *See* Dkt. #35 at 22. Yet the amended complaint, as currently pleaded, plainly attacks the reasonableness of the rate Plaintiffs were forced to pay as a result of factoring in a pet's age. *See* Dkt. #25 at ¶ 105 ("Had Plaintiffs known their premiums would increase based on their pet's age, they would not have signed up for the policies."). Plaintiffs concede that their damages "may be the increased premiums they paid in violation of Healthy Paws' promises," Dkt. #35 at 22, thereby placing the Court in the position of calculating the reasonable rate Plaintiffs expected to pay. To that end, this case is similar to *Alpert*, where the complaint's "references to the facially unreasonable amounts . . . place the Court directly on the toes of the

ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS - 18

Insurance Commissioner, a situation that courts specifically contemplated with constructing the doctrine." 243 F. Supp. 3d at 1183. As in *Alpert*, Plaintiffs make clear that the damages sought here are predicated on the premium they believe they should have been paying. *See* Dkt. #35 at 22 (Defining Plaintiffs' damages as "the difference between (i) the original quoted price plus 'the increased cost of veterinary care,' and (ii) the premium that improperly included the annual increase based on the pet age factor."). Regardless of whether such a calculation is "formulaic and straightforward," *id.*, the filed rate doctrine makes clear that such calculations are in the province of the state regulatory agencies—not the courts.

Plaintiffs also rely on *Harvey v. Centene Management* to argue that Washington's filed rate doctrine does not apply here. 357 F. Supp. 3d 1073 (E.D. Wash. 2018). However, *Harvey* addressed claims against insurers for misrepresenting the number and existence of in-network providers, which caused policyholders to incur expenses for out-of-network providers. As such, the *Harvey* plaintiff "[did] not allege the premiums were too high" and was "perfectly happy to pay the rate" on the condition the insurer provided the services promised. *Id.* at 1084. Consequently, awarding damages in *Harvey* "would not require the Court to determine what premiums *would have been reasonable*." *Id.* (emphasis added). For these reasons, the Court finds Plaintiffs' WCPA claims barred by Washington's filed rate doctrine.

The results are no different under California's or New Jersey's filed rate doctrines.[4] Plaintiffs cite a plethora of cases where courts declined to apply the filed rate doctrine, yet none

---

[4] "California courts are split as to whether a general state filed-rate doctrine exists." *Levay Brown v. AARP, Inc.*, No. 17-09041 DDP (PLAX), 2018 WL 5794456, at *7 (C.D. Cal. Nov. 2, 2018). However, courts have recognized that "the filed rate doctrine is analogous to the scheme explicitly embodied in the [California] Insurance Code." *MacKay*, 188 Cal. App. 4th at 1448. Under California's Insurance Code, "[n]o . . . agreement made pursuant to the authority conferred by this chapter shall constitute a violation

1    are applicable here.  As in *Harvey*, these cases challenge the defendant's administration of an

2    agency-approved rate rather than the reasonableness of the rate itself.  These include claims

3    alleging unlawful kickbacks included in the premium, unbeknownst to the policy holders, which

4    some district courts distinguish from challenges to the reasonableness of the premium.[5]  *See*

5    *Ellsworth v. US Bank*, 30 F. Supp. 3d 886, 910 (N.D. Cal. 2014) ("The complaint plausibly

6    challenges an alleged kickback scheme and does not challenge whether the premiums paid were

7    reasonable."); *Cannon v. Wells Fargo Bank. N.A.*, No. C-12-1376 EMC, 2014 WL 324556, at *6

8    (N.D. Cal. Jan. 29, 2014) ("[T]he gravamen of the complaint is not the premium rate per se, but

9    the failure to disclose the fraudulent nature of the alleged commission charged to borrowers by

10   Wells Fargo."); *see also Haddock v. Countrywide Bank, N.A.,* No. CV 14-6452 PSG (FFMx),

11   2016 WL 6802489, at *6-7 (C.D. Cal. June 2, 2016); *Gustafson v. BAC Home Loans Servicing,*

12   *LP*, No. SACV 11-915-JST ANX, 2012 WL 7051318, at *10 (C.D. Cal. Dec. 20, 2012);

13   *DiGiacomo v. Statebridge Co., LLC,* No. 14-6694 (JEI), 2015 WL 3904594, at *7-8 (D.N.J. June

14   25, 2015); *Gallo v. PHH Mortg. Corp.,* 916 F. Supp. 2d 537, 543–49 (D.N.J. 2012).

15           Similar to the kickback-related cases, courts have declined to apply the filed rate doctrine

16   to cases challenging the undisclosed payment of illegal commissions to an interest group.

17   Plaintiffs cite a line of cases challenging the concealment of illegal commissions to AARP in

18   premium rates, which courts concluded were not barred by the filed rate doctrine.  *See Friedman*

19   *v. AARP, Inc.,* 283 F. Supp. 3d 873 (C.D. Cal. 2018) (Finding claims "more akin to challenges to

20

21   of or grounds for . . . civil proceedings under any other law of this State heretofore or hereafter enacted
22   which does not specifically refer to insurance."  Cal. Ins. Code Ann. § 1860.1.

23   [5] This Court has previously recognized "a split in authority with regard to whether federal courts apply
     the filed rate doctrine to bar kickback claims."  *Alpert*, 243 F. Supp. 3d at 1182 (comparing cases).

24   ORDER GRANTING DEFENDANT'S MOTION TO
     DISMISS - 20

1   Defendants' alleged misrepresentations, rather than challenges to the approved rate, or challenges

2   to whether the rate is reasonable in light of the statutorily prescribed loss ratios for Medigap

3   insurance."); *see also Bloom v. AARP, INC.,* No. 18-cv-2788-MC-MAH, 2018 WL 10152230

4   (D.N.J. Nov. 30, 2018) (same).  Importantly, in declining to apply the filed rate doctrine to these

5   concealed commission claims, courts recognized that damages "may be awarded without any

6   alteration in the approved premiums collected by the regulated entity." *Id.*

7        Finally, Plaintiffs cite cases alleging various misconduct by insurers that did not implicate

8   the reasonableness of the filed rate.  For example, in *Wahl v. Am. Sec. Ins. Co.*, the court found

9   the filed rate doctrine inapplicable to claims against an insurer for charging premiums for a period

10   of time that would have been covered by an expired policy or, alternatively, a 60-day binder.  *See*

11   No. C08-0555 RS, 2010 WL 4509814, at *3 (N.D. Cal. Nov. 1, 2010) (Finding "the claim is

12   directed at [the insurer]'s allegedly unfair conduct and not at the Commissioner's rate.").

13   Similarly, in *King v. National General Insurance Co.*, the court declined to apply the filed rate

14   doctrine to claims alleging that defendants failed to offer the lowest available "good-driver" rates

15   to plaintiffs that qualified as "good drivers."   129 F. Supp. 3d 925, 936 (N.D. Cal. 2015)

16   ("Plaintiffs do not challenge the reasonableness of any particular insurance rate, nor do they attack

17   acts done pursuant to the [California Department of Insurance]'s rate-making authority.").

18        This case is distinguishable from the above-referenced cases that address undisclosed

19   kickbacks, concealed commissions, and other unfair conduct related to the administration of

20   agency-approved premiums.  Here, Plaintiffs are attacking Healthy Paws' misrepresentations that

21   directly implicate the reasonableness of the premiums they paid, as determined by the portion of

22   the rate improperly charged as a result of their pets' increasing ages.  *See* Dkt. #25 at ¶ 51

23   ("Notwithstanding Healthy Paws' representations to the contrary, the monthly premiums on

24

ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS - 21

Healthy Paws policies increase based on other factors besides the 'changes in the cost of veterinary medicine,' including the pet's age."). To award damages, the Court would be required to determine the amount Plaintiffs *should have been paying* under the policy terms. *See* Dkt. #35 at 22 ("Plaintiffs' damages in this case will be . . . the difference between (i) the original quoted price plus 'the increased cost of veterinary care,' and (ii) the premium that improperly included the annual increase based on the pet age factor."). Plaintiffs' claims, as currently pleaded, therefore "would require the court to set damages by assuming a hypothetical rate" of the premium Plaintiffs should have been charged that excluded age as a factor. *Pub. Util. Dist. No. 1 of Grays Harbor County Wash. v. IDACORP Inc.,* 379 F.3d 641, 651 (9th Cir. 2004). !!!

Accordingly, the Court finds that Plaintiffs' claims are barred by the Washington, California and New Jersey filed rate doctrines. Because the Court is not willing at this time to conclude that no other facts exist that Plaintiffs could possibly plead to cure the deficiency, these claims are dismissed without prejudice.

Having found dismissal of Plaintiffs' WCPA, UCL, ICFA, and CFA claims warranted under Rule 9(b) and the filed rate doctrine, the Court need not address Healthy Paws' statute of limitations arguments.

## IV.    CONCLUSION

Having reviewed Defendant's Motion, Plaintiffs' Response, Defendant's Reply, and the remainder of the record, it is hereby ORDERED as follows:

(1) Healthy Paws' Motion to Dismiss Plaintiff's amended complaint, Dkt. #28, is GRANTED. Plaintiffs' claims are DISMISSED without prejudice and with leave to amend.

(2) Plaintiffs are ORDERED to file a Second Amended Complaint within thirty (30) days from the date of this Order.

1    (3) Defendant's motion to dismiss Plaintiff's original complaint, Dkt. #20, is terminated

2  as moot.

3

4    DATED this 15th day of October, 2020.

5

6

7    _____

8    RICARDO S. MARTINEZ
     CHIEF UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS - 23