1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

STEVEN BENANAV, *et al.*, on behalf of
themselves and all others similarly situated,

Plaintiffs,

v.

HEALTHY PAWS PET INSURANCE, LLC,

Defendant.

CASE NO.  C20-421-RSM

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT
HEALTHY PAWS' MOTION TO DISMISS
AND DENYING DEFENDANT'S MOTION
TO STRIKE

11

12

13

14

15

## I.    INTRODUCTION

16

17

18

19

20

21

22

23

This matter comes before the Court on Defendant Healthy Paws Pet Insurance, LLC
("Healthy Paws")'s Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint.  Dkt.
#49.  Healthy Paws has separately moved to strike Plaintiffs' nationwide class allegations.  Dkt.
#52. Plaintiffs oppose both motions.  Dkts. #55, 56.  Parties have requested oral argument on both
motions, but the Court finds oral argument unnecessary to resolve the relevant issues.  Having
reviewed Defendant's Motions, Plaintiff's Responses, Defendant's Replies, and the remainder of
the record, the Court ORDERS that Defendant Healthy Paws' Motion to Dismiss is GRANTED
IN PART AND DENIED IN PART, and its Motion to Strike is DENIED.

24

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT HEALTHY PAWS' MOTION TO DISMISS AND
DENYING DEFENDANT'S MOTION TO STRIKE - 1

## II.    BACKGROUND

### A. Factual Background

A full background of this case is not necessary given the Court's previous orders in this matter. *See* Dkt. #42.  Plaintiffs Steven Benanav, Bryan Gage, Monica Kowalski, Lindsay Purvey, Stephanie Caughlin and Katherine Thomas bring this class action complaint against Defendant Healthy Paws, a company that markets and administers pet insurance policies to consumers on behalf of insurance companies.  Dkt. #45 at ¶¶ 1-2.  The insurance companies underwriting the policies advertised and administered by Healthy Paws are Markel American Insurance Company ("Markel"), ACE American Insurance Company ("ACE"), Indemnity Insurance Company of North America ("Indemnity"), and Westchester Fire Insurance Company ("Westchester"), which are subsidiaries of parent company CHUBB Ltd. ("CHUBB").  *Id.* at ¶¶ 3-5.  Pursuant to a General Agency Agreement dated October 1, 2012 between Healthy Paws and the insurance companies, Healthy Paws is responsible for selling and administering the policies through advertising, website development, policy quoting, issuance, servicing, and claims adjudication.

Between 2011 and 2017, Plaintiffs purchased pet insurance policies through Healthy Paws. *Id.* at ¶¶ 15-20.  At the time Plaintiffs purchased their policies, they were not made aware that Healthy Paws increased the policy premiums each year due to their pets' age.  Mr. Benanav claims that his premiums for his pet Mali increased by over 200% between 2013 and 2020, starting with a $33.85 monthly premium in January 2013 to his current payment of $104.50 in 2020.  *Id.* at ¶¶ 89-93.  Ms. Thomas purchased insurance in July 2014, and her monthly premiums increased from $40.61 in 2014 to $54.53 in 2020.  *Id.* at ¶¶ 111-112.  Ms. Kowalski purchased her policy in 2011 for her dogs Lola, Olive and Jenks.  *Id.* at ¶¶ 121.  Jenks passed away in 2015, but Ms. Kowalski's premiums for Lola and Olive increased from $25.41 and $31.44 per month in 2011 to $69.18 and

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT HEALTHY PAWS' MOTION TO DISMISS AND
DENYING DEFENDANT'S MOTION TO STRIKE - 2

$86.36 in 2020.  *Id.* at ¶ 129.  Mr. Gage purchased a policy in 2017 for his dog, Woodhouse, and the monthly premium increased by over 97% from 42.56 per month in 2017 to $84.13 in 2020.  *Id.* at ¶¶ 140-141.  Similarly, Ms. Purvey's monthly premiums for her dog, Toby, increased from $46.32 in 2013 to $143.11 in 2021, while Ms. Caughlin's premiums for her dog, Penny, increased from $40.56 in 2015 to $91 in 2020, at which point she cancelled her policy.  *Id.* at ¶¶ 152-158; 165-167.  Plaintiffs claim that had they known the monthly premiums would drastically increase as their pets aged, they never would have signed up for the policies.

Plaintiffs allege that Healthy Paws misrepresented the basis for changes to a policyowner's monthly premiums.  This alleged misrepresentation is contained in (1) the insurance policy, (2) a sample policy document posted on Healthy Paws' website ("the Sample Policy"); and (3) a "Frequently Asked Questions" page on Healthy Paws' website ("the FAQ page").  *Id.* at ¶¶ 44-54.  Each of Plaintiffs' policies contains the same language under paragraph I(5):

> MONTHLY PREMIUM: Your monthly premium is set forth on your declarations page. *Monthly premiums may change for all policyholders to reflect changes in the costs of veterinary medicine.* We will notify you at least sixty (60) days in advance of such change.

*Id.* at ¶ 52 (emphasis added).  Plaintiffs contend that these statements misled them to believe that their premium would only increase as the costs of veterinary medicine increased.  *Id.* at ¶ 6.  The Sample Policy repeats the same language stating that policy premiums may change "to reflect changes in the costs of veterinary medicine."  *Id.* at ¶ 50.

Furthermore, when Plaintiff Kowalski signed up for her policy in 2011, Healthy Paws stated the following on its FAQ Page:

> Will my premiums increase over the life of my pet?
> *Due to the increasing cost of new technology and advances in veterinary care, your rates will increase slightly each year.* These

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT HEALTHY PAWS' MOTION TO DISMISS AND
DENYING DEFENDANT'S MOTION TO STRIKE - 3

slight increases provide you the opportunity to offer your pet the best medical and diagnostic options available today. Keep in mind your rates will never go up to due to making claims. And all pet insurance companies, no matter how they try to market their benefits, *will raise rates to keep up with the rapidly rising cost of veterinary care*.

*Id.* at ¶ 45 (emphases added).  Healthy Paws posted a similar statement on its FAQ Page when Plaintiffs Benanav and Thomas purchased their policies in 2012 and 2014, respectively:

> Will my premiums increase over the life of my pet?
> *Due to the increasing cost of new technology and advances in veterinary care, your rates will increase slightly each year. Our plan has factored the expected increase in the cost of veterinary care into your rates* so that the annual premium increases are manageable. These manageable annual increases provide you the opportunity to offer your pet the best medical and diagnostic options available today.
> Rest assured, we will never penalize you with higher rates for making claims. It's not your fault your pet is unlucky! *All pet insurance companies, no matter how they market their benefits, will raise rates periodically to keep up with the rapidly rising cost of veterinary care.*

*Id.* at ¶ 46 (emphases added).  As of the date Plaintiffs filed this Second Amended Complaint, the FAQ Page stated the following:

> Will my premiums increase over the life of my pet?
> *Due to the increasing cost of new technology and advances in veterinary care, your rates will likely increase to align with the claim payouts of each state.* These annual increases provide you the opportunity to offer your pet the best medical and diagnostic options available today.  Premium increases are not based on claim submissions.
>
> Additional Actions Affecting Premiums
> • Change of address
> • Adding or removing pet(s)
> • Changing coverage options (reimbursement or deductible levels)
> • Transfer of account ownership (if applied to new address)

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT HEALTHY PAWS' MOTION TO DISMISS AND
DENYING DEFENDANT'S MOTION TO STRIKE - 4

> For additional information please <u>click here</u> to see policy specific provisions related to this FAQ.

*Id.* at ¶ 48 (emphases added).

Plaintiffs contend that notwithstanding Healthy Paws' representations to the contrary, their monthly pet insurance premiums have increased based on factors besides changes in the cost of veterinary medicine, such as the pet's age.   *Id.* at ¶ 55.   As evidence of Healthy Paws' misrepresentation, Plaintiffs cite to a correction at the bottom of a 2019 New York Times article which stated, "An earlier version of this article, using information supplied by Healthy Paws Pet Insurance, misstated how a pet's age affects premiums for the company's policies. *The pet's age affects the premium at the time of enrollment and as the pet gets older, not just at enrollment.*"  *Id.* at ¶ 60 (emphasis added).  Plaintiffs also cite to a statement from Healthy Paws' customer service team responding to a complaint posted on the Better Business Bureau website.  In this statement, Healthy Paws confirmed that several factors besides the general rising cost of veterinary medicine affect the premium:

> In accordance with the terms of the Pet Health Insurance Policy and the associated rating rules, monthly premiums may change for all policyholders. Premiums are determined based on the rates and rating rules filed and approved within each state's Department of Insurance, *which reflect the cost of treatment advances in veterinary medicine, your individual pet's breed, gender, age, and other factors, in addition to the overall claims experience for the program within the region your pet resides.*

*Id.* at ¶ 62 (emphasis added).  Furthermore, Plaintiffs reference a report from the Nationwide Purdue Index stating that the costs of veterinary medicine only rose by 21.1% from the end of 2014 through the end of 2018.  *Id.* at ¶¶ 94-95.  In contrast, Plaintiff Benanav's premiums rose by 53% during this four-year period.

//

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT HEALTHY PAWS' MOTION TO DISMISS AND
DENYING DEFENDANT'S MOTION TO STRIKE - 5

1    **B.  Procedural Background**

2        Plaintiffs filed their first amended complaint on June 8, 2020 alleging violations of the

3    Washington Consumer Protection Act, RCW § 19.86, *et seq*., the California Unfair Competition

4    Law, Cal. Bus & Prof. Code § 17200, *et seq*. ("UCL"), the Illinois Consumer Fraud and Deceptive

5    Business Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA"), and the New Jersey Consumer Fraud

6    Act, N.J.S.A. 56:8-1, *et seq*. ("CFA").  Dkt. #25.  On October 15, 2020, this Court granted Healthy

7    Paws' motion to dismiss.  Dkt. #42.  The Court concluded that Plaintiffs' claims failed to

8    sufficiently plead fraud under Fed. R. Civ. P. 9(b) and were barred by the Washington, California

9    and New Jersey filed rate doctrines.  The Court dismissed Plaintiffs' claims without prejudice on

10   the basis that it could not conclude Plaintiffs would be unable to cure the identified deficiencies.

11   *Id.* at 22.

12       On November 23, 2020, Plaintiffs filed a Second Amended Complaint ("SAC") against

13   Healthy Paws on behalf of themselves and those similarly situated.  Dkt. #45.  Plaintiffs allege

14   WCPA violations on behalf of all Plaintiffs and the National Class, UCL violations on behalf of

15   Plaintiffs Benanav, Gage, Purvey, Caughlin and the California class, ICFA violations on behalf of

16   Plaintiff Kowalski and the Illinois class, and CFA claims on behalf of Plaintiff Thomas and the

17   New Jersey class.  Dkt. #45 at ¶¶ 180-233.  Plaintiffs seek compensatory, consequential, statutory

18   and punitive damages, as well as declaratory and injunctive relief to prevent Healthy Paws'

19   ongoing deceptive conduct.  *Id.* at 37.  On December 23, 2020, Healthy Paws moved to dismiss

20   Plaintiff's SAC under the filed rate doctrine and statute of limitations, and for lack of standing,

21   failure to state a claim, and failure to adequately plead fraud.  Dkt. #49.  Healthy Paws

22   simultaneously moved to strike Plaintiffs' nationwide class allegations.  Dkt. #52.

23   //

24   ORDER GRANTING IN PART AND DENYING IN PART
     DEFENDANT HEALTHY PAWS' MOTION TO DISMISS AND
     DENYING DEFENDANT'S MOTION TO STRIKE - 6

# III.    DISCUSSION

## A. Request for Judicial Notice

"Generally, on a 12(b)(6) motion, the District Court should consider only the pleadings." *Shaver v. Operating Engineers Local 428 Pension Trust Fund,* 332 F.3d 1198, 1201 (9th Cir. 2003). However, the Court may consider "materials incorporated into the complaint by reference, and matters of judicial notice." *New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011).

Healthy Paws requests that the Court take judicial notice of (1) Plaintiffs' policy documents for purposes of establishing the date their policies were issued; and (2) the California rate filed by Markel in 2010, which discloses the pet-age factor. Dkt. #49 at 9. Plaintiffs request that the Court take judicial notice of (1) sanctions issued in January 2020 by the Washington Office of Insurance Commissioner ("OIC") against ACE and Indemnity for concealing the pet age factor in premium increases for the years 2013-2018; and (2) Healthy Paws' public correction to the New York Times article, clarifying that premiums were calculated based on pet age. Dkt. #55 at 13. Neither party opposes the other's request for judicial notice. For the reasons set forth below, the Court GRANTS both parties' requests.

Plaintiffs' policy documents are judicially noticeable under the "incorporation by reference" doctrine, which allows courts to consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005) (internal quotations omitted). The incorporation by reference doctrine also applies to "situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT HEALTHY PAWS' MOTION TO DISMISS AND
DENYING DEFENDANT'S MOTION TO STRIKE - 7

1    the plaintiff does not explicitly allege the contents of that document in the complaint." *Id*.  Here,

2    Plaintiffs do not dispute the authenticity of the attached documents or otherwise oppose the

3    Court's consideration of these omitted pages.  Furthermore, the contents of most of these

4    documents are expressly referenced in the complaint.

5          The California rate filed by Markel, the Washington Insurance Commissioner's order

6    sanctioning Healthy Paws' insurers, and the New York Times correction are also judicially

7    noticeable pursuant to Federal Rule of Evidence 201.  FRE 201 provides that courts may

8    "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known

9    within the court's territorial jurisdiction; or (2) can be accurately and readily determined from

10   sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  Consistent

11   with that rule, courts may take judicial notice of undisputed matters of public record, such as

12   documents on file with administrative agencies.  *Palmason v. Weyerhaeuser Co.*, 2013 WL

13   1788002, at *1 (W.D. Wash. Apr. 26, 2013).  Markel filed its rate with the California Department

14   of Insurance, and the rate filing documents are publicly available on the agency's website.  *See*

15   Dkt. #50-1.  Likewise, the 2020 sanctions issued by the Washington Insurance Commissioner

16   against ACE and Indemnity related to Healthy Paws insurance policies are available on OIC's

17   website.[1]  *See* Dkt. #50-3.  Finally, Healthy Paws' correction to the New York Times article is

18   publicly available on the New York Times website.[2]  None of the parties dispute the authenticity

19   of these documents.  Judicial notice of these documents is therefore appropriate.

20   //

21

[1] *See* Final Order of Dismissal on Settlement, No. 19-0231, *available at*
22   https://www.insurance.wa.gov/sites/default/files/2020-01/12-19-0231-final-order-dismissal-consent-order-ace-01-22-20.pdf (hereafter "Consent Decree").
[2] *See* NEW YORK TIMES, *More Pet Insurance Policies Are Being Sold. But Are They Worth the Cost?* Jan.
23   4, 2019, *available at* https://www.nytimes.com/2019/01/04/your-money/pet-insurance-policies.html.

24   ORDER GRANTING IN PART AND DENYING IN PART
     DEFENDANT HEALTHY PAWS' MOTION TO DISMISS AND
     DENYING DEFENDANT'S MOTION TO STRIKE - 8

**B. Motion to Dismiss under Federal Rule of Civil Procedure 12(b)**

1. <u>Lack of Jurisdiction under Rule 12(b)(1)</u>

Federal courts are tribunals of limited jurisdiction and may only hear cases authorized by the Constitution or a statutory grant. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The burden of establishing subject matter jurisdiction rests upon the party seeking to invoke federal jurisdiction. *Id.* Once it is determined that a federal court lacks subject matter jurisdiction, the court has no choice but to dismiss the suit. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

2. <u>Failure to State a Claim under Rule 12(b)(6)</u>

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, a plaintiff's claims must be dismissed. *Id.* at 570.

//

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT HEALTHY PAWS' MOTION TO DISMISS AND
DENYING DEFENDANT'S MOTION TO STRIKE - 9

1    **C.  Motion to Dismiss under Federal Rule of Civil Procedure 9(b)**

2         Claims sounding in fraud are subject to heightened pleading standards under Fed. R. Civ.

3    P. 9(b).  To satisfy Rule 9(b), a claim of fraud must "state with particularity the circumstances

4    constituting fraud."  Fed. R. Civ. P. 9(b).  Particularity under Rule 9(b) requires the plaintiff to

5    plead the "who, what, when, where, and how" of the misconduct alleged.  *Kearns v. Ford Motor*

6    *Co.*, 567 F.3d 1120 (9th Cir. 2009).  When applying the heightened pleading standards for fraud,

7    courts must "not be drawn into assessing the credibility of potential witnesses or answering

8    questions of fact."  *Patel v. Seattle Genetics, Inc.*, No. C17-41RSM, 2017 WL 4681380, at *3

9    (W.D. Wash. Oct. 18, 2017).

10   **D.  Analysis**

11        Healthy Paws argues that dismissal of Plaintiffs' SAC is warranted because (1) Plaintiffs'

12   Washington, California, and New Jersey state law claims are barred by the filed rate doctrine; (2)

13   Plaintiffs Thomas and Kowalski's claims lack standing; (3) all claims fail to plead fraud with

14   particularity under Rule 9(b); and (4) Plaintiff Benanav's claims are time-barred.   Having

15   considered Plaintiffs' Amended Complaint and attached exhibits, the relevant briefing, and the

16   judicially noticeable materials, the Court GRANTS IN PART and DENIES IN PART Healthy

17   Paws' Motion for the reasons set forth below.

18        *i.  Filed Rate Doctrine*

19        Healthy Paws moves to dismiss Plaintiffs' Washington, California, and New Jersey claims

20   under each state's filed rate doctrine.[3]  In Washington, the filed rate doctrine bars lawsuits that

21   challenge the reasonableness of insurance rates filed and approved by a regulating agency.  *Tenore*

22

23   ---

     [3] Parties agree that Illinois has not adopted the filed rate doctrine.  *See* Dkt. #55 at 8, n.1.  The doctrine is
     therefore inapplicable to Plaintiffs' ICFA claims.

24   ORDER GRANTING IN PART AND DENYING IN PART
     DEFENDANT HEALTHY PAWS' MOTION TO DISMISS AND
     DENYING DEFENDANT'S MOTION TO STRIKE - 10

*v. AT&T Wireless*, 136 Wash. 2d 322, 332, 962 P.2d 104, 108 (1998).  The doctrine serves a two-fold purpose: "(1) to preserve the agency's primary jurisdiction to determine the reasonableness of rates, and (2) to insure that regulated entities charge only those rates approved by the agency." *McCarthy Fin., Inc. v. Premera*, 182 Wash. 2d 936, 942, 347 P.3d 872, 875 (2015) (quoting *Tenore*, 136 Wash. 2d at 331-32, 962 P.2d at 108)).  Similarly, California and New Jersey courts apply the filed rate doctrine to bar lawsuits that challenge the reasonableness of approved rates. *See MacKay v. Super. Ct.*, 188 Cal. App. 4th 1427, 1431–32 (Cal. App. 2d Dist. 2010), *as modified* (Oct. 22, 2010) (Holding that "the statutory provisions for an administrative process (and judicial review thereof) are the exclusive means of challenging an approved rate."); *see also Clark v. Prudential Ins.*, 736 F. Supp. 2d 902, 912 (D.N.J. 2010) (holding that the "filed rate doctrine provides that a rate filed with and approved by a governing regulatory agency is unassailable in judicial proceedings brought by ratepayers.").

In its order dismissing Plaintiffs' first amended complaint, the Court found that Plaintiffs' claims did not survive the filed rate doctrine where they made "no mention of whether the premiums that Plaintiffs paid in their respective states . . . exceeded the filed rates in those states." Dkt. #42 at 16.  The Court concluded that Plaintiffs' claims attacked "Healthy Paws' misrepresentations that directly implicate the reasonableness of the premiums they paid, as determined by the portion of the rate improperly charged as a result of their pets' increasing ages." *Id.* at 21.  Consequently, "[t]o award damages, the Court would be required to determine the amount Plaintiffs *should have been paying* under the policy terms. . . . Plaintiffs' claims, as currently pleaded, therefore 'would require the court to set damages by assuming a hypothetical rate' of the premium Plaintiffs should have been charged that excluded age as a factor." *Id.* at 22 (emphasis in original) (quoting *Pub. Util. Dist. No. 1 of Grays Harbor County Wash. v. IDACORP*

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT HEALTHY PAWS' MOTION TO DISMISS AND
DENYING DEFENDANT'S MOTION TO STRIKE - 11

1   *Inc.,* 379 F.3d 641, 651 (9th Cir. 2004)).  Such a determination would directly implicate the filed

2   rate doctrine, which aims to preserve the agency's primary jurisdiction to determine the

3   reasonableness of filed and approved rates.

4       The SAC remedies this deficiency by claiming that Healthy Paws charged premiums "in

5   excess of rates that were filed with" the Washington, California, and New Jersey state insurance

6   agencies.  *See* Dkt. #45 at ¶¶ 184, 196, 229.  Specifically, Plaintiffs allege that insurers increased

7   the pet age factor in Healthy Paws policies over the life of each pet, such that the agency-approved

8   rate—which assumed that the age factor would remain constant—was lower than the amount that

9   Healthy Paws consumers were ultimately charged in Washington, New Jersey, and California.

10  *See* Dkt. #45 at ¶¶ 66-67, 91, 107, 137, 149, 162.

11      Healthy Paws argues that Plaintiffs' claims are still insufficient to circumvent the filed

12  rate doctrine because they fail to plead that the insurers charged rates higher than those approved

13  "by *in fact applying* the pet-age factor" to Plaintiffs' premiums. Dkt. #49 at 10, 14.  Healthy Paws

14  offers no support for their proposition that surviving the doctrine at the pleading stage requires

15  such specific allegations—particularly where Plaintiffs have pleaded that their premiums

16  increased based on their pets' ages.  *See, e.g.*, Dkt. #45 at ¶ 197.  The filed rate doctrine aims to

17  bar actions that directly challenge rates that are filed and approved by a state regulatory agency.

18  Here. the gravamen of the SAC is clear: the rates Plaintiffs paid allegedly exceeded those filed

19  with and approved by their respective state insurance agencies because of the misrepresented pet

20  age factor.  At the motion to dismiss stage, these allegations are sufficient to survive the filed rate

21  doctrine.  *Cf. Alpert v. Nationstar Mortg. LLC*, 243 F. Supp. 3d 1176, 1183 (W.D. Wash. 2017)

22  (challenge to facially unreasonable amounts that servicer charged mortgagor would require court

23

24  ORDER GRANTING IN PART AND DENYING IN PART
    DEFENDANT HEALTHY PAWS' MOTION TO DISMISS AND
    DENYING DEFENDANT'S MOTION TO STRIKE - 12

1    to determine what rates would have been reasonable to charge consumers, thereby "plac[ing] the

2    Court directly on the toes of the Insurance Commissioner").

3         Healthy Paws also seeks to use judicially noticeable rate filing documents to refute

4    Plaintiffs' claim that the pet-age factor was applied to their premiums at any time before the factor

5    was disclosed by their insurer.  Although the incorporation by reference doctrine allows courts to

6    consider certain documents that are alleged but not physically attached to a pleading, *Knievel,*

7    393 F.3d at 1076, Healthy Paws' extensive factual arguments for applying the filed rate doctrine

8    are not well-taken at the motion to dismiss stage, which merely aims to address the adequacy of

9    the pleadings—not their veracity.  Nevertheless, the Court will consider these arguments herein

10   given that it need not "accept as true allegations that contradict matters properly subject to judicial

11   notice or by exhibit."  *Gonzalez v. Planned Parenthood*, 759 F.3d 1112, 1115 (9th Cir. 2014).

12        First, Healthy Paws relies on an April 2010 California rate filing wherein Markel disclosed

13   the pet-age factor with California's state insurance agency.  The Court cannot conclude that this

14   single filing "contradicts" Plaintiff Benanav's claims that he paid rates that included the

15   undisclosed age factor, given that his policy did not become effective until two years later, on

16   March 27, 2012. Dkt. #45 at ¶ 15.  Healthy Paws also cites to ACE's 2012 rate filing as evidence

17   that California "approved application of the pet-age factor between 2010 and 2012." Dkt. #57 at

18   8.  Yet the 2012 filing states that the pet age factor "applied at the policy inception *will not change*

19   *through the life of the pet* as long as it is continuously insured under the policy (including any

20   rewrite of the policy)."  Dkt. #45-8 at 28 (emphasis added).  Given that the 2012 filing appears to

21   refute Healthy Paws' contention that the pet age factor was approved in 2012, the Court cannot

22   rely on these documents as a basis for dismissing Benanav's claims at the pleading stage.

23

24   ORDER GRANTING IN PART AND DENYING IN PART
     DEFENDANT HEALTHY PAWS' MOTION TO DISMISS AND
     DENYING DEFENDANT'S MOTION TO STRIKE - 13

1    Healthy Paws also challenges Plaintiffs' claims that they paid rates that exceeded those

2    approved by California's state insurance agency when their policies were prematurely transferred

3    to Westchester, which disclosed the pet age factor in their premiums. *Id.* at ¶¶ 73-81.  The Court

4    takes judicial notice of policy documents reflecting that Plaintiffs Benanav, Gage, and Caughlin

5    still held policies underwritten by ACE or Indemnity in 2019, which would indicate that their

6    policies were not prematurely transferred to Westchester.  *See* Dkts. #50-10 (Benanav's ACE

7    policy, effective March 27, 2019); #50-14 (Gage's Indemnity policy, effective February 16,

8    2019); #50-21 (Caughlin's ACE policy, effective January 20, 2019).  Nevertheless, even if these

9    policy documents refute Plaintiffs' claims as to their Westchester policies, the Court declines

10   Healthy Paws' invitation to conclude that Plaintiffs at no point paid rates higher than those

11   approved by their state agencies.  To the extent Healthy Paws seeks to challenge the factual basis

12   of the claims set forth in Plaintiffs' complaint, such arguments are properly reserved for summary

13   judgment or trial.

14       Finally, Healthy Paws argues that Plaintiffs' general allegations that some Healthy Paws

15   customers were charged the pet-age factor at some point in time is "too vague to establish that

16   *Plaintiffs* . . . paid premiums in excess of filed rates."  Dkt. #49 at 12 (emphasis in original).

17   Again, Healthy Paws offers no support for its argument that the filed rate doctrine imposes such

18   a high burden on plaintiffs at the pleading stage.  Given that Plaintiffs allege that the premiums

19   they paid included the pet age factor, that the factor was not disclosed to the state insurance

20   agencies when rates were filed and approved, and the premiums charged exceeded those approved

21   rates, Plaintiffs have met their burden to survive dismissal at this stage based on the filed rate

22   doctrine.

23   //

24   ORDER GRANTING IN PART AND DENYING IN PART
     DEFENDANT HEALTHY PAWS' MOTION TO DISMISS AND
     DENYING DEFENDANT'S MOTION TO STRIKE - 14

*ii. Standing*

Healthy Paws also moves for dismissal of Plaintiff Thomas' CFA claims and Kowalski's ICFA claims for lack of standing under Fed. R. Civ. P. 12(b)(1).  Pursuant to Article III of the U.S. Constitution, federal courts are courts of limited jurisdiction, hearing only live "cases" and "controversies."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992); U.S. Const. art. III, § 2.  To satisfy the case-or-controversy requirement, the plaintiff must establish "(1) [A]n 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).  A challenge based on lack of standing is appropriate under Rule 12(b)(1).  *Walsh v. Microsoft Corp.*, 63 F. Supp. 3d 1312, 1317–18 (W.D. Wash. 2014).  Furthermore, "a plaintiff must demonstrate standing separately for each form of relief sought."  *Friends of the Earth, Inc.*, 528 U.S. at 185 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)).  Healthy Paws challenges Ms. Kowalski's standing based on (i) injury in fact and (ii) causality.  The Court will address each argument in turn.

1. Injury in Fact

Healthy Paws argues that Plaintiffs Thomas and Kowalski have failed to allege injury in fact because they fail to allege that her premiums "were *in fact* increased based on the age of their pet."  Dkt. #49 at 15 (emphasis in original).  To the extent the SAC fails to specifically allege that their rates increased because of the undisclosed age factor, it nevertheless contains sufficient factual allegations to satisfy injury-in-fact.  At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume

that general allegations embrace those specific facts that are necessary to support the claim." *Lujan,* 504 U.S. at 561 (internal quotations omitted). Here, Kowalski claims that CHUBB's rate filings in Illinois misrepresented the basis for calculating premium increases for Healthy Paws insurance by stating that monthly premiums may change "to reflect changes in the cost of veterinary medicine" without disclosing the pet age factor. Dkt. #45 at ¶¶ 83-84. She also claims that her premiums drastically increased between the time she purchased them in 2011 and in 2020, when she discovered reports indicating that pet age was a factor increasing Healthy Paws insurance premiums. *See* Dkt. #45 at ¶¶ 121-132. Although she does not know at what point Healthy Paws insurance began using age as a factor in its premiums, she claims that her premium increased at a rate that was "substantially greater" than the overall change in costs of veterinary medicine during that time. *Id.* at ¶¶ 128-130. Similarly, Thomas alleges that ACE's rate filing in New Jersey disclosed that the pet age factor would remain constant. *Id.* at ¶ 107. However, she alleges that her premiums increased beyond the change in the costs of veterinary medicine and, had she known her premiums would increase drastically as her dog aged, she never would have signed up for the policy. *Id.* at ¶¶ 114-120. These claims are sufficient to allege injury-in-fact in the form of paying insurance premiums higher than Plaintiffs believed they would be paying.

### 2. Causality

Healthy Paws also argues that Thomas and Kowalski fail to allege harm that is fairly traceable to Healthy Paws' alleged misrepresentations. Regarding Kowalski, Healthy Paws points out that the time period covered by the Nationwide Purdue Veterinary Price Index (2014-2018) ("the Purdue Study") does not overlap with the most "drastic" increase for Ms. Kowalski's premiums (2019 and 2020). *See* Dkt. #45 at ¶¶ 127-129. Similarly, it notes that Thomas' alleged premium increase over the time period of the Purdue Study was lower than the increase in the

national average reported in the study.  *See id.* at ¶¶ 110-111.  Healthy Paws' arguments regarding the overlap between the Purdue Study's time period, the facts reported in that study, and the dates of Plaintiffs' alleged harm improperly conflates the standing inquiry with the summary judgment standard.   To allege causality, Plaintiffs merely need to claim that Healthy Paws' misrepresentations are fairly traceable to their alleged injuries, which was the payment of premiums higher than they were lead to believe they would be paying.  *Friends of the Earth, Inc.*, 528 U.S. at 180–81.  Both Plaintiffs have done so here.  *See id.* at ¶¶ 126-134; 216-218 (Kowalski's claims); *id.* at ¶¶ 110-120 (Thomas' claims).  To the extent Healthy Paws contends that Plaintiffs' arguments are unsupported by the facts, that argument is more properly addressed at summary judgment—not at the pleading stage.

### iii.  Plaintiff Benanav's Time-Barred Claims

Healthy Paws also moves to dismiss Plaintiff Benanav's claims as barred by the applicable statute of limitations.  Dkt. #49.  Parties agree that claims under Washington's CPA and California's UCL have four-year statute of limitations periods such that any claims that arose before March 19, 2016 are time-barred.  *See* Wash. Rev. Code § 19.86.120; Cal. Bus. & Prof. Code § 17208.  Given that Healthy Paws has made an initial showing that the claim is time-barred, the burden shifts to Plaintiffs to demonstrate that tolling applies.  *See In re Capital Options, LLC*, 719 F. App'x 609, 612 (9th Cir. 2018) ("[T]he burden of alleging facts which would give rise to tolling falls upon the plaintiff.") (internal quotations omitted).   Plaintiffs argue that notwithstanding the four-year limitations period, Benanav's claims are tolled by the discovery rule, the equitable doctrine of fraudulent concealment, and the continuing violations doctrine.  For the reasons set forth below, the Court finds that Plaintiff has alleged sufficient facts to apply the discovery rule here.

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT HEALTHY PAWS' MOTION TO DISMISS AND
DENYING DEFENDANT'S MOTION TO STRIKE - 17

1     Under California law, the discovery rule of accrual postpones accrual of a claim until "the

2  plaintiff discovers, or has reason to discover, the cause of action." *Norgart v. Upjohn Co.,* 21

3  Cal.4th 383, 397, 87 Cal. Rptr. 2d 453, 981 P.2d 79 (Cal. 1999).  The rule delays accrual only

4  when a plaintiff "has no reason to suspect wrongdoing and cannot discover his or her claims with

5  reasonable diligence." *Plumlee v. Pfizer, Inc.*, 664 F. App'x 651, 653 (9th Cir. 2016).  Similarly,

6  under Washington law, the cause of action "accrues when the plaintiff discovers, or in the

7  reasonable exercise of diligence should discover, the elements of a cause of action." *1000*

8  *Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 575 (2006), *as corrected* (Nov. 15, 2006)

9  (internal citations omitted).  "The key consideration under the discovery rule is the factual, as

10  opposed to the legal, basis of the cause of action." *Cox v. Oasis Physical Therapy, PLLC*, 153

11  Wash. App. 176, 189–90 (2009) (internal quotations omitted).

12     Here, Benanav claims that he attempted to discover the reasons why his premiums were

13  increasing so drastically when he contacted Healthy Paws in 2019.  Dkt. #45 at ¶ 98.  In deeming

14  Benanav's 2019 inquiry too late to toll the limitations period, Healthy Paws relies on the well-

15  established principle that a plaintiff must exercise reasonable diligence *within* the limitations

16  period.  *Plumlee*, 664 F. App'x at 653.  However, Benanav alleges sufficient facts to establish

17  that he did not have inquiry notice of Healthy Paws' alleged misrepresentation until several years

18  into paying premiums for his Healthy Paws policy.  Inquiry notice serves to toll the limitations

19  period until the point a plaintiff has "reason to suspect an injury and some wrongful cause . . . ."

20  *Plumlee*, 664 F. App'x at 653 (internal quotations omitted).  Here, the SAC alleges that his

21  premiums "increased dramatically" from 2013 until 2019, Dkt. #45 at ¶ 90, yet clarifies that the

22  increases were modest in the early years such that Benanav was not put on notice of any

23  wrongdoing.  Indeed, between 2013 and 2016, his premiums only increased from $33.85 to

24  

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT HEALTHY PAWS' MOTION TO DISMISS AND
DENYING DEFENDANT'S MOTION TO STRIKE - 18

1   $44.80, in contrast to the jump to $55.61 in 2018, $69.76 in 2019, and finally to $104.50 in 2020.

2   *Id.* at ¶ 92.  Given this incremental increase until 2016, the Court finds that Healthy Paws' alleged

3   misrepresentation about the rising premium costs is the very the type of claim contemplated by

4   the discovery rule: an instance where the defendant is in "a far superior position to know of the

5   act and the injury, and the act and the injury are difficult for the plaintiff to detect . . . ." *Josten*

6   *v. Rite Aid Corp.,* No. 18-CV-0152-AJB-JLB, 2019 WL 3718739, at *4 (S.D. Cal. Aug. 7, 2019).

7   Here, the SAC does not indicate that Benanav had any reasonable basis to suspect Healthy Paws'

8   alleged wrongdoing earlier than March 2016, while his premiums were only modestly increasing.

9        Healthy Paws also argues that Benanav was on inquiry notice of the misrepresentation,

10   given that California law "presumes that policyholders know the contents of their insurers' rate

11   filings" and Markel's 2010 rate filing disclosed that the pet age factor would be applied as the pet

12   aged.  Dkt. #57 at 15 (citing *Hellgren v. Providential Home Income Plan Inc.*, 2006 WL 8447964,

13   at *3 (N.D. Cal. Oct. 26, 2006)).  As an initial matter, it is unclear to the Court that Markel's 2010

14   filing applied to Benanav's policy that he purchased nearly two years later.  Moreover, ACE's

15   2012 filing—approved six months after Benanav purchased his policy—appears to reverse course

16   and not apply the pet age factor.  *See* Dkt. #45-8 at 28.  Having considered Benanav's allegations

17   that the modest premium increases made Healthy Paws' alleged misrepresentations difficult to

18   detect and the unresolved factual question as to when the insurer disclosed the pet age factor in

19   its rate filing, Court finds that Plaintiffs have met their burden at this stage to show that Benanav's

20   claims were tolled under the discovery rule.  It therefore declines to dismiss Benanav's claims as

21   time-barred at this stage.

22   //

23   //

24   ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT HEALTHY PAWS' MOTION TO DISMISS AND
DENYING DEFENDANT'S MOTION TO STRIKE - 19

*iv.  Failure to Plead Fraud with Particularity*

Finally, Healthy Paws moves to dismiss Plaintiffs' claims for failure to plead fraud with particularity as required under Fed. R. Civ. P. 9.  To satisfy the pleading standard under Rule 9(b), a plaintiff must articulate "the who, what, when, where, and how of the misconduct alleged." *Kearns*, 567 F.3d at 1126.  In addition to specifying which statements mislead the consumer and why those statements are misleading, a plaintiff pleading under Rule 9(b) must also identify which fraudulent statements were relied upon that resulted in the fraudulent conduct.  *See id.* (plaintiff failed to satisfy Rule 9(b) particularity requirement where he "failed to specify which sales material he relied upon in making his decision").  The purpose of Rule 9(b) is to require plaintiffs to plead allegations that are "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

In its previous analysis of Plaintiffs' claims under Rule 9(b), the Court concluded that Plaintiff Benanav sufficiently pleaded fraud under the WCPA and the UCL by alleging that he purchased the policy "in reliance on Healthy Paws' representations on its website, including that monthly premiums would not increase based on a pet's age and instead would only increase for all policyholders based on the rising cost of veterinary care."  Dkt. #42 at 13 (quoting Dkt. #25 at ¶ 64) (emphasis omitted).  From this statement, the Court inferred that Benanav's reliance on Healthy Paws' website "encompasse[d] the FAQ Page and Sample Policy."  *Id.*  However, it contrasted this claim with Plaintiffs Kowalski's and Thomas' more generalized allegations that they "purchased the policy in reliance on Healthy Paws' representations, including that monthly premiums would not increase based on a pet's age and instead would only increase for all

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT HEALTHY PAWS' MOTION TO DISMISS AND
DENYING DEFENDANT'S MOTION TO STRIKE - 20

1   policyholders based on the rising cost of veterinary care." *Id.* (quoting Dkt. #25 at ¶¶ 76, 87).

2   The Court found that the "vague wording" in Plaintiffs Kowalski's and Thomas' claims "made it

3   unclear which of the alleged misrepresentations they were exposed to when purchasing their

4   policies." *Id.*

5       The SAC alleges that Kowalski, Gage, Purvey and Caughlin "purchased the policy in

6   reliance on Healthy Paws' representations on its website and in its marketing materials, including

7   that monthly premiums would not increase based on a pet's age and instead would only increase

8   for all policyholders based on the rising cost of veterinary care." Dkt. #45 at ¶¶ 126, 139, 151,

9   164. While the Court previously inferred from Mr. Benanav's reference to the "website" that he

10  relied on the FAQ Page and Sample Policy when he purchased the policy, Plaintiffs' general

11  reference to unidentified "marketing materials" they reviewed before purchasing their policies

12  injects new uncertainty into the question of which specific materials they relied upon and prevents

13  the Court from drawing the same conclusion. Indeed, even though the SAC cites the specific

14  language of the FAQ Page from the year Kowalski signed up for her policy and the language of

15  the Sample Policy all Plaintiffs received, *see id.* at ¶¶ 45, 52, nowhere does it allege that Plaintiffs

16  actually reviewed and/or relied upon these particular documents. In light of the Court's previous

17  ruling, which clarified that a plaintiff must "specify which misleading sales material he relied

18  upon in order to satisfy Rule 9(b)," it is puzzling why Plaintiffs continue to speak in generalities

19  rather than expressly identify the FAQ Page, the Sample Policy, or other materials as the specific

20  documents they reviewed and relied upon. Dkt. #42 at 12.

21      For these reasons, the Court finds that the general reference to Healthy Paws'

22  representations "on its website and in its marketing materials" for Plaintiffs Kowalski, Gage,

23  Purvey and Caughlin repeats the same mistake that previously warranted dismissal of their claims:

24  ORDER GRANTING IN PART AND DENYING IN PART
    DEFENDANT HEALTHY PAWS' MOTION TO DISMISS AND
    DENYING DEFENDANT'S MOTION TO STRIKE - 21

1    the Court cannot discern which of Healthy Paws' specific alleged misrepresentations they were

2    exposed to and/or relied upon when they purchased their policies.  The Court therefore cannot

3    conclude that the SAC gives Healthy Paws sufficient notice to meaningfully defend against the

4    alleged fraud, as required under Rule 9(b).  *Semegen*, 780 F.2d at 731; *see also Kearns*, 567 F.3d

5    at 1126 (concluding that plaintiff "failed to articulate the who, what, when, where, and how of

6    the misconduct alleged" by failing to specify "which sales material he relied upon" nor "when he

7    was exposed to them or which ones he found material.").  Accordingly, dismissal of their claims

8    for failure to state fraud with particularity under Rule 9(b) is appropriate.

9    **E.  Leave to Amend**

10        Ordinarily, leave to amend a complaint should be freely given following an order of

11   dismissal, "unless it is absolutely clear that the deficiencies of the complaint could not be cured

12   by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987); *see also DeSoto v. Yellow*

13   *Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("A district court does not err in denying

14   leave to amend where the amendment would be futile." (citing *Reddy v. Litton Indus., Inc.*, 912

15   F.2d 291, 296 (9th Cir. 1990)).

16        Permission to file an amended complaint is typically granted where claims are dismissed

17   for failure to state a claim.  *See* Fed. R. Civ. P. 15(a) ("[L]eave to amend shall be freely given

18   when justice so requires").  A motion to dismiss "under Rule 9(b) for failure to plead with

19   particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to

20   state a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  For that

21   reason, the Court finds it appropriate to grant Plaintiffs a final opportunity to plead Kowalski's,

22   Gage's, Purvey's and Caughlin's claims with sufficient specificity to satisfy Rule 9(b).  *See*

23   *Salazar v. Cty. of Orange*, 564 F. App'x 322, 322–23 (9th Cir. 2014) ("Before affirming a district

24   ORDER GRANTING IN PART AND DENYING IN PART
     DEFENDANT HEALTHY PAWS' MOTION TO DISMISS AND
     DENYING DEFENDANT'S MOTION TO STRIKE - 22

1    court's dismissal with prejudice, 'we look to see whether the district court might have adopted

2    less drastic alternatives.  Permitting plaintiffs to replead twice' is a less drastic alternative.")

3    (quoting *McHenry v. Renne,* 84 F.3d 1172, 1178 (9th Cir. 1996)) (internal citation omitted).

4    **F.  Motion to Strike Plaintiffs' Nationwide Class Allegations**

5         Lastly, the Court considers Healthy Paws' Motion to Strike Plaintiffs' Nationwide Class

6    Allegations pursuant to Fed. R. Civ. P. 12(f).  Dkt. #52.  Plaintiffs argue that Healthy Paws'

7    motion to strike is premature.  Dkt. #56.  For the reasons set forth below, the Court denies Healthy

8    Paws' Motion.

9         Rule 12(f) provides that a court may, on its own or on a motion, "strike from a pleading

10   an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."   Fed.

11   R. Civ. P. 12(f).  "Motions to strike are generally disfavored . . . [and] are generally not granted

12   unless it is clear that the matter sought to be stricken could have no possible bearing on the subject

13   matter of the litigation."  *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1236 (N.D. Cal.

14   2012) (internal citations and quotations omitted).  Although class allegations are normally

15   considered on a motion for class certification, not at the pleading stage, *id.*, in certain instances

16   courts find that the issues "are plain enough from the pleadings to determine whether the interests

17   of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of*

18   *Sw. v. Falcon,* 457 U.S. 147, 160 (1982).  Consequently, courts have struck class allegations in

19   instances "where it is clear from the pleadings that class claims cannot be maintained." *Clorox*,

20   894 F. Supp. 2d at 1236.

21        Healthy Paws argues that Plaintiffs' class allegations should be struck because of (1)

22   discrepancies in applicable state laws that vary materially from state to state; and (2) Plaintiffs'

23   failure to allege facts giving rise to a plausible inference that common questions will predominate

24   ORDER GRANTING IN PART AND DENYING IN PART
     DEFENDANT HEALTHY PAWS' MOTION TO DISMISS AND
     DENYING DEFENDANT'S MOTION TO STRIKE - 23

over individual issues.  Regarding discrepancies in applicable state laws, Healthy Paws highlights the fact that some states apply the filed rate doctrine whereas others either provide a rebuttable presumption of reasonableness or do not require the premiums be approved by the state agency. *Compare McCarthy Fin., Inc. v. Premera*, 347 P.3d 872, 876 (Wash. 2015) *with Corbin v. Allstate Corp.*, 140 N.E.3d 810, 816 (Ill. App. 5th Dist. 2019), *appeal denied,* 124 N.E.3d 464 (Ill. 2019). Healthy Paws further argues that Plaintiffs should not be permitted to circumvent the filed rate doctrine of their respective states by bringing their claims under Washington law.

As set forth above, the Court has determined that the filed rate doctrine does not bar Plaintiffs' claims at this stage of the litigation.  *See supra*, § III(D)(i).  It is therefore premature for Healthy Paws to speculate that this doctrine will yield disparate results depending on which state's consumer protection statute applies, given the possibility that the filed rate doctrine may pose no bar to Plaintiffs' claims.  Healthy Paws further argues that parties and the Court should not be subjected to the "enormous and unwarranted burden" of conducting a 50-state survey of insurance laws, since "Plaintiffs have not plausibly alleged that any Healthy Paws customers were injured outside their respective states."  Dkt. #52 at 9.  Yet both cases that Healthy Paws relies upon are orders denying class certification—not Rule 12(f) motions to strike.  *See Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180 (9th Cir. 2001); *Kunzelmann v. Wells Fargo Bank, N.A.*, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013).  Whereas the issues of complexity and differences between states in their application of the filed-rate doctrine are appropriately evaluated at the class certification stage, *see id.*, the Court cannot conclude that Healthy Paws' conclusory arguments satisfy its higher burden under Rule 12(f) to demonstrate that Plaintiffs' class allegations are so insufficient, redundant, or immaterial that they must be struck in entirety.

*//*

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT HEALTHY PAWS' MOTION TO DISMISS AND
DENYING DEFENDANT'S MOTION TO STRIKE - 24

Finally, Healthy Paws argues that the SAC does not allege facts giving rise to a plausible inference that questions common to the nationwide class will predominate.  Dkt. #52 at 10. Healthy Paws specifically cites to the fact that Washington consumers whose rates were overcharged were already made whole by the OIC's Consent Order, such that Washington customers are not similarly situated to other Healthy Paws policyholders.  Healthy Paws also argues that the factual question of whether the pet-age factor—or any other factor allegedly inconsistent with Healthy Paws' representations—affected a policyholder's premium will vary between each state, each insurer, and each time period.  In light of these drastic differences between customers, Healthy Paws argues, Plaintiffs cannot establish that questions common to the nationwide class predominate over individualized issues.  *Id.* at 10-11.  While Healthy Paws' arguments are well-taken, the Court again declines to resolve these issues at the pleading stage and deprive Plaintiffs of the opportunity to fully brief the class certification issue.  *See Sousa v. 7-Eleven Inc.,* No. 19-CV-2142 JLS (RBB), 2020 WL 6399595, at *5 (S.D. Cal. Nov. 2, 2020) (collecting cases where courts expressed reluctance to preemptively deny plaintiffs the opportunity to present a motion for class certification); *Moussouris v. Microsoft Corporation,* 2016 WL 4472930 (W.D. Wash. Mar. 7, 2016) ("Plaintiffs deserve the chance to develop the facts surrounding the class definition—and if necessary, the class definition itself—through class discovery").

For these reasons, Healthy Paws' Motion to Strike is denied.

## IV.     CONCLUSION

Having reviewed Defendant Healthy Paws' Motions, Plaintiffs' Responses, Defendant's Replies, and the remainder of the record, it is hereby ORDERED as follows:

(1) Defendant Healthy Paws' Motion to Dismiss, Dkt. #49, is GRANTED IN PART and DENIED IN PART.   The Court DISMISSES without prejudice Counts 2 and 3 under the California Unfair Competition Law and Illinois Consumer Fraud and Deceptive Practices Act as to Plaintiffs Gage, Purvey, Caughlin, and Kowalski.

(2) Defendant Healthy Paws' Motion to Dismiss is DENIED as to the remaining claims.

(3) Plaintiffs are ORDERED to file a Second Amended Complaint within thirty (30) days from the date of this Order.

(4) Defendant Healthy Paws' Motion to Strike Plaintiffs' Nationwide Class Allegations, Dkt. #52, is DENIED.

DATED this 23rd day of September, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE