THE HONORABLE LAUREN KING

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| STEVEN BENANAV, BRYAN GAGE, MONICA KOWALSKI, LINDSAY PURVEY, STEPHANIE CAUGHLIN, and KATHERINE THOMAS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>HEALTHY PAWS PET INSURANCE LLC,<br><br>Defendant. | Civil Action No. 2:20-cv-00421-LK<br><br>**STIPULATION AND ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

Plaintiffs Steven Benanav, Bryan Gage, Monica Kowalski, Lindsay Purvey, Stephanie Caughlin, and Katherine Thomas ("Plaintiffs") and Defendant Healthy Paws Pet Insurance, LLC ("Healthy Paws" or "Defendant," and with Plaintiffs the "Parties"), by and through their undersigned counsel, hereby stipulate and agree to this Stipulation and [Proposed] Order Regarding Discovery of Electronically Stored Information.

1.      **PURPOSE AND SCOPE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules. Nothing herein shall alter the Parties' respective rights or obligations under the Federal Rules of Civil Procedure. Nothing in this Order establishes any agreement regarding

the subject matter or scope of discovery in this action, or the relevance or admissibility of any ESI or other document or thing. Nothing in this Order shall be interpreted to require disclosure of irrelevant information or ESI protected from discovery by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity.

As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

## 2. COOPERATION

The Parties commit to cooperate in good faith throughout the matter. No Party may seek relief from the Court concerning compliance with the Order unless it has conferred in good faith with the affected Parties.

## 3. DEFINITIONS

<u>"Custodial Documents"</u> includes a custodian's e-mail mailbox and papers and other hard copy documents in that custodian's possession. Custodial Documents do not include ESI stored in centralized data sources such as shared drives or group folders. Custodial Documents also do not include any structured data, such as data stored in data warehouses, databases, or similar locations.

<u>"Documents"</u> means any recorded information—including, but not limited to, any writings, drawings, graphs, charts, photographs, sound recordings, images, memoranda, correspondence and other data, data records or data compilations—stored in any medium from which information can be obtained, whether as ESI or in hard copy.

<u>"Named Custodians"</u> means the individual custodians to be identified by the Parties for whom discoverable Custodial Documents are most likely to exist.

<u>"Electronically Stored Information"</u> or "ESI," as used herein, means information or data of any kind, stored in or on any storage media located on workstations, servers, disks, USB flash

media, or other real or virtualized devices or media.

"Load File" means an electronic file containing information identifying a set of paper-scanned images and/or processed ESI and indicating where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends. A Load File will also contain certain data relevant to the individual Documents, including, where reasonable and possible, extracted and user created Metadata as specified herein and in Attachment A.

"Metadata" means information about information or data about data, and includes without limitation (1) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (2) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system. Except as otherwise provided herein (e.g., Sections 6 and 7.B), this Order does not create a duty on a Party to create Metadata that is not kept in the ordinary course (excluding production-related Metadata, such as Bates numbers) and reasonably captured and produced.

"Native File" means ESI in the file type for (or of) the application in which such ESI is normally created, viewed and/or modified.

"OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based Documents and making such Documents searchable using appropriate software.

4.     THE COLLECTION AND CULLING OF ESI:

   A.     Named Custodians, Non-Custodial ESI, and ESI Search Methodology

Counsel for Plaintiffs and Defendant will correspond regarding the selection of Named Custodians and centralized data sources (i.e., non-custodial ESI) from which they are collecting ESI for production in the above-captioned action (the "Action"). The Parties will work in good faith to identify, discuss, agree upon and revise, if necessary, the Named Custodians and sources

of non-custodial ESI to avoid an unduly burdensome production or retrieving a large quantity of non-responsive ESI. The Parties agree to limit the number of custodians selected for Defendant to 5 custodians and for Plaintiffs to the number of individuals named as Plaintiffs. In addition, the Parties will work in good faith to agree on the use of reasonable search terms, file types, and date ranges, along with any other relevant search parameters.

### B. Collection of ESI

Each Party shall make a reasonable and diligent effort to search for and collect reasonably accessible and responsive (1) Custodial Documents from the Named Custodians and (2) ESI from the agreed-to sources of non-custodial ESI.

Nothing in this Order is intended to prevent either Party from complying with the requirements of a foreign country's data privacy laws, *e.g.*, the European Union's General Data Protection Regulation (GDPR) (EU) 2016/679. The parties agree to meet and confer before including custodians or data sources subject to such laws in any ESI or other discovery request.

Furthermore, an on-site inspection of electronic media shall not be permitted absent a demonstration by the requesting Party of a specific need and good cause, or by agreement of the Parties.

### C. Other Methods to Streamline Culling of ESI

Documents may be de-duplicated globally (i.e. across multiple custodians) provided that the producing Party identifies the additional custodians in the Custodians All field specified in Attachment A. Duplicates shall be identified by industry standard hash values or other comparable automated process only. Any other methodology for identification of duplicates must be discussed with the receiving Party and approved before implementation.

The Parties may also use e-mail thread suppression to reduce duplicative production of email threads by producing the most recent e-mail containing the thread of e-mail, as well as all attachments within the thread. If an e-mail thread splits into two separate threads, then both threads shall be included in the production. If an e-mail has an attachment and subsequent replies omit that attachment, then the original e-mail with the attachment shall also be included

in the production.

5.     **PRODUCTION FORMATS**

The Parties shall produce Documents and ESI in reasonably usable form. Except as otherwise provided herein (e.g., Section 7.C regarding Native Files), or as agreed hereafter by the Parties, such reasonably usable form shall be the single-page TIFF-image format with extracted or OCR text and the associated Metadata set out in Attachment A (to the extent available and reasonable to collect and produce). If particular Documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such Documents.

A.     **Production Media**

Unless otherwise agreed, the production media for Document productions shall be by secure FTP link provided via email. Each item of production media shall be labelled in a consistent and logical manner to inform the receiving Party of its contents.

B.     **TIFFs**

All production images will be provided as black and white single page Group IV TIFFs of at least 300 dpi resolution (except for documents requiring a different resolution or page size); for production of color images, *see* Section 5.G. Each image will use the Bates number of the first page of the Document as its unique file name. Original Document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Hidden content, tracked changes or edits, comments, notes and other similar information viewable within the Native File shall also be imaged so that this information is captured on the produced image file.

C.     **Text Files**

Each Document or ESI item produced under this Order shall be accompanied by a text file. All text files shall be provided as a single Document level text file for each item, not one text file per page. Each text file shall be named using the Bates number of the first page of the corresponding production item. The full path of the text file must be provided in the Load File.

Text files themselves should not be delivered in the Load File.

Paper or other non-ESI Documents will be accompanied by an OCR file. The Parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology. OCR text files should indicate page breaks where possible. Emails and other ESI will be accompanied by extracted text taken from the ESI item itself. The Parties agree not to degrade the searchability of text extracted from ESI or produced via OCR.

To the extent that a Document or ESI is redacted, the text file should not contain the text of the redacted portions.

### D. Bates Numbering

All images must be assigned a Bates number that must: (1) be unique across the entire production; (2) maintain a constant length (0- padded) across the entire production; (3) contain no special characters or embedded spaces; and (4) be sequential within a given Document. Bates numbers should be a combination of an alpha prefix along with a number (e.g., ABC00000001). The number of digits in the numeric portion of the Bates number format should not change in subsequent productions.

Bates numbers should generally be assigned sequentially as Documents are processed. If a Bates number or set of Bates numbers is skipped in a production, the producing Party will so note in a cover letter or production log accompanying the production.

The producing Party will brand each TIFF image in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size. The Parties must use best efforts to apply Bates numbers so as not to obscure any part of the underlying image. If the placement in the lower right-hand corner will result in obscuring the underlying image, the Bates number should be placed as near to that position as possible while using best efforts to preserve the underlying image.

### E. Parent-Child Relationships

Parent-child relationships between Documents that have been maintained in the ordinary course of business should be preserved. For example, if a Party is producing an e-

mail with its attachments, the attachments should be processed in order behind the e-mail, except attachments withheld on privilege grounds, which will be indicated on the associated privilege log and the withheld attachment will be replaced with a slip sheet stating "Document withheld for privilege."

### F. Load Files

All production items will be provided with a Load File. Acceptable formats for the Image Load File are .opt, .dii, or .1fp. Acceptable formats for metadata load files are concordance delimited .txt, .log or .dat. Each Party will designate its preferred Load File format. The Load File must reference each file (whether in TIFF or Native File format) in the corresponding production. Metadata for a given Metadata field shall be produced with uniform formatting across different Documents and productions to the extent practicable.

Load File names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABCOOl_metadata.dat would be acceptable.

### G. Color

Documents or ESI containing color need not be produced initially in color. However, if an original Document or ESI item contains color markings or highlighting and it is necessary to see those markings or highlighting in their original color to understand the meaning or content of the Document, then the receiving Party may, in good faith, request that the Document or ESI item be produced in its original colors. The parties reserve the right to request these files in an alternative format (either in color TIFF or .jpg format), though there is no presumed requirement for a Party to produce "color for color" across all of its delivered documents.

### H. Confidentiality Designations

If a Party contends that a Document or ESI item qualifies for Confidential treatment pursuant to the terms of the protective order entered by the Court in this litigation, or has been redacted in accordance with applicable law or Court order, the appropriate confidentiality

designation shall be shown both on the face of all TIFFs pertaining to such item/Document, and in the appropriate data field in the Load File.

## 6. PRODUCTION OF PAPER DOCUMENTS

If the Parties elect to produce hard-copy documents in an electronic format, the production of hard-copy documents will include a cross-reference file that indicates document breaks and sets forth the custodian or custodian/location associated with each produced document. Hard-copy documents will be scanned using OCR technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing Party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

## 7. PRODUCTION OF ESI

### A. Removal of System Files

ESI productions may exclude certain file types that are highly unlikely to contain relevant data, this includes, but is not limited to de-NISTing using the industry standard list of files maintained in the National Software Reference Library by the National Institute of Standards & Technology. Other file types may be added to the list of excluded files by agreement of the Parties.

### B. Metadata Fields and Processing

Attachment A sets forth the minimum Metadata fields that must be produced, but only to the extent that Metadata exists and can be reasonably produced. Except as otherwise set forth below, to the extent that Metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, nothing in this Order shall require any Party to extract, capture, collect, or produce such data.

The Parties are not obligated to manually populate any of the fields in Attachment A for

an ESI item if such fields cannot be extracted from the ESI item using an automated process, with the exception of the following fields: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) PgCount, (6) Custodian, (7) SourceParty, (8) TextPath, (9) Confidentiality, (10) Redacted, (11) ProdVol, (12) and DocType. These fields should be populated regardless of whether the fields can be populated pursuant to an automated process.

      C.      **Production of Native File Items**

The following items of ESI shall be produced in Native File format: spreadsheet-application files (e.g., MS Excel, Tab Separated Value (.tsv), Comma Separated Value (.csv)), personal databases (e.g., MS Access), multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi) and presentation files and/or presentation application files (e.g. MS PowerPoint), with any speaker notes and any other similar text produced with the presentation slides.

In addition to producing the above file types in Native File format, the producing Party shall produce a single-page TIFF slip sheet indicating that a Native File item was produced and providing the file name of the natively produced document, as well as any confidentiality designation. The corresponding Load File shall include the NativePath data field for each Native File that is produced. Any electronic file produced in Native File format shall be given a file name consisting of a unique Bates number, for example, "ABC00000002.XLS."

      D.      **Requests for Other Native Files**

If good cause exists for the receiving Party to request production of a certain Document in native format, the receiving Party may request production in native format by providing (i) a list of the Bates numbers of Documents it requests to be produced in native format; and (ii) an explanation of the need for reviewing such Documents in native format, for the producing Party's consideration.

      E.      **Redaction**

The Parties agree that where Documents or ESI need to be redacted, they shall be produced in TIFF with each redaction clearly indicated. For any redacted Document or ESI,

any unaffected Metadata fields specified in Attachment A shall be provided, subject to the conditions set forth in Section 7.B. "Metadata Fields and Processing," *supra.*

If the items redacted and partially withheld from production are Excel-type spreadsheets, and the Native Files are withheld, the entire ESI item must be produced in TIFF format, including all unprivileged pages, hidden fields and other information that does not print when opened as last saved by the custodian or end-user. For Excel-type spreadsheets, this shall include, but is not limited to, hidden rows, columns, and worksheets, as well as all cell values, annotations and notes. The producing Party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images are formatted so as to be legible. For example, column widths should be formatted so that the numbers in the column will display rather than "##########."

If the items redacted and partially withheld from production are audio/visual files, the producing Party shall provide the unredacted portions of the content. The Parties shall meet and confer regarding the appropriate form for production of any types of ESI not specifically addressed herein.

### F. Technical Exceptions

ESI that cannot be reviewed, produced, and/or imaged because of technical issues should be replaced with a slip sheet so stating. The slip sheet shall identify the document. If the receiving Party requests further information regarding production of any such Documents, the Parties will meet and confer on a reasonable and cost-effective means for attempting to provide the requested files.

### G. Inaccessible and Unusable ESI

If a producing Party asserts that certain ESI is inaccessible or otherwise unnecessary under the circumstances, or if the requesting Party asserts that, following production, certain ESI is not reasonably usable, the Parties shall meet and confer before presenting the issue to the Court for

resolution.

### H.   Irretrievable ESI

If a Party believes that responsive, unique ESI no longer exists in its original format, or is no longer retrievable, the Parties shall meet and confer to attempt to resolve the issue expeditiously.

### I.   Compressed Files

Compression file types (i.e., .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner resulting in individual folders and/or files in the lowest possible compression, for example to ensure that a zip within a zip is fully decompressed into individual non-zip files. Once decompressed into individual non-container files, the compressed container file does not need to be produced. Compressed items should be treated as compressed folders and not as compressed items.

### J.   Preservation of ESI

The Parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control. With respect to preservation of ESI, the Parties agree as follows:

Absent a showing of good cause by the requesting Party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under the below ESI categories or the Section 9).

Absent a showing of good cause by the requesting Party, the following categories of ESI

need not be preserved:

    a.    Deleted, slack, fragmented, or other data only accessible by forensics.

    b.    Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

    c.    On-line access data such as temporary internet files, history, cache, cookies, and the like.

    d.    Data in metadata fields that are frequently updated automatically, such as last-opened dates.

    e.    Back-up data that are duplicative of data that are more accessible elsewhere.

    f.    Server, system or network logs.

    g.    Data remaining from systems no longer in use that is unintelligible on the systems in use.

    h.    Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**8.    DOCUMENTS PROTECTED FROM DISCOVERY**

Inadvertent disclosure of any document or other information covered by the attorney-client, work-product, or other applicable privileges during discovery shall be without prejudice to any claim that such document or other information is privileged and/or protected, and no Party shall assert that the producing Party has waived any rights by such inadvertent disclosure, provided a request for return of such inadvertently produced Privileged Material is made within a reasonable time after the producing Party learns of its inadvertent production.

If the producing Party claims in writing that privileged materials were inadvertently disclosed, the receiving Party, without protest, shall within five business days of such notice return to counsel for the producing Party any and all copies of the inadvertently produced Privileged Material, or in the alternative, within five business days of said notice, the receiving Party, without

protest, shall destroy the inadvertently produced privileged material and certify such destruction to the producing Party.  Within ten business days of such notice, the producing Party shall serve a privilege log identifying such inadvertently produced privilege material, including, to the extent known, identification of the date of the document, author of the document, the sender of the document, the recipient of the document, a description of the contents of the document, and the basis for the privilege claim.

After the receipt of the privilege log, if the receiving Party wishes to contest that any document or thing alleged to constitute privileged material is protected by the attorney-client privilege, work-product immunity, or any other applicable privilege, the receiving Party shall so notify the producing Party in writing of the identification of the documents for which it questions the claim of privilege, and the reasons for its assertion that the documents are not privileged, but in no event may the receiving Party use the contents of such inadvertently produced documents in providing the reasons for its assertion that they are not privileged.  The producing Party must preserve the returned document or thing until the dispute is resolved.  In no event, however, shall the return or destruction of demanded documents be delayed or refused because of a Party's objection to the demand or the filing of a motion to compel.

Within five business days of the receiving Party's notice, the Party seeking to support the claim of privilege shall provide a written response supporting the claim of privilege. The Parties will then meet and confer in good faith as to the claims of privilege.  If agreement cannot be reached after five business days, any Party may thereafter move the Court for an Order compelling production of any inadvertently produced or disclosed privileged material. Any such motion may argue that the documents are not privileged, and may challenge whether the production of the privileged material was truly inadvertent, but otherwise shall not assert the fact of the inadvertent production as grounds for production or use the contents of the inadvertently produced documents.  Furthermore, until and unless such motion to compel is granted by the Court, the receiving Party shall neither use nor refer to any information contained within the document(s) at issue for which the producing Party has made a privilege claim, either prior to or following their return, including in deposition, trial, or hearing, or

in any Court filing, except to the extent such information is reflected in an appropriate privilege log.

9.  **DATA BREACH**

In the event the receiving Party, including any Counsel, Professional Vendor, Expert or other person or entity engaged by the receiving Party in this Action, experiences a data breach that may have impacted Confidential material received from the producing Party, it shall (to the extent permitted by law) notify the producing Party as soon as reasonably practicable of the same, and shall reasonably cooperate with the producing Party to address and remedy the breach, subject to the producing Party's reasonable instructions. Nothing herein shall constitute a waiver of legal rights and defenses regarding the protection of information from unauthorized disclosure.

10.  **PRIVILEGE LOG**

For any Document withheld in its entirety or produced but redacted, the producing Party will produce privilege/redaction logs in a format that permits electronic searching  For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created.  Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing Party shall include such additional information as required by the Federal Rules of Civil Procedure.  The Parties agree to meet and confer in good faith over the deadline for production of privilege logs after they have ascertained the volume of potentially responsive information.

Redactions need not be logged so long as the basis for the redaction is clear on the redacted document.

With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs. Communications and documents may be identified on a privilege log by category, rather than individually, if appropriate.

11.  **MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by

1  the Court for good cause shown.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED January 6, 2022.

| | |
|---|---|
| */s/ Samuel J. Strauss*<br>Samuel J. Strauss, WSBA #46971<br>936 North 34th Street, Suite 300<br>Seattle, Washington 98103-8869<br>Phone (608) 237-1775<br>Fax (608) 509-4423<br>TURKE & STRAUSS LLP<br><br>Raina Borrelli (*pro hac vice*)<br>613 Williamson St., Suite 201<br>Madison, Wisconsin 53703<br>Phone (608) 237-1775<br>raina@turkestrauss.com<br>TURKE & STRAUSS LLP<br><br>Stan M. Doerrer (*pro hac vice*)<br>950 N. Washington Street<br>Alexandria, VA 22314<br>Phone (703) 348-4646<br>stan@doerrerlaw.com<br>LAW OFFICE OF STAN DOERRER PLLC<br><br>Jeffrey D. Kaliel (*pro hac vice*)<br>Sophia Goren Gold (*pro hac vice*)<br>1875 Connecticut Avenue NW, 10th Floor<br>Washington, D.C. 20009<br>Phone (202) 350-4783<br>jkaliel@kalielpllc.com<br>sgold@kalielpllc.com<br>KALIEL PLLC<br><br>*Attorneys for Plaintiffs* | */s/ Alicia Cobb*<br>Alicia Cobb, WSBA #48685<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>1109 First Avenue, Suite 210<br>Seattle, Washington 98101<br>Phone (206) 905-7000<br>Fax (206) 905-7100<br>aliciacobb@quinnemanuel.com<br><br>Richard I. Werder, Jr. (*pro hac vice*)<br>Robert Longtin (*pro hac vice*)<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>51 Madison Avenue<br>New York, New York 10010<br>Phone (212) 849-7231<br>Fax (212) 849-7100<br>rickwerder@quinnemanuel.com<br><br>Stephen A. Broome (*pro hac vice*)<br>Justin Griffin (*pro hac vice*)<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, California 90017<br>Phone (213) 443-3285<br>Fax (213) 443-3100<br>sb@quinnemanuel.com<br><br>*Attorneys for Defendant Healthy Paws Pet Insurance LLC* |

**Attachment A: Metadata Coding Fields**

The Metadata fields described below shall be populated for the indicated types of documents, in accordance with terms of the foregoing Order.

"Email" means any email message.
"Edoc" means any item of ESI other than Email.
"All" means Email, Edocs, and scanned hard copy documents.

| Field Name | Document Type | Field Description |
|---|---|---|
| BegBates | All | Beginning Bates number of document |
| EndBates | All | Ending Bates number of document |
| BegAttach | All | First Bates number of the first document of the family |
| EndAttach | All | Last Bates number of the last document of the family |
| PgCount | All | Page count of document |
| Custodian | All | Custodian name |
| SourceParty | All | Party producing the document |
| TextPath | All | Path to the document level text file on production media |
| Confidentiality | All | Text of confidentiality designation, if any |
| Redacted | All | Whether all or any portion of the document is redacted |
| ProVol | All | Name of the production volume containing the document |
| DocType | All | Identifies type of document produced |
| FilePath | All | Path to the document level text file on production media |
| CustodiansAll | Email | All custodians who possessed a de-duplicated document |
| MD5Hash | Edoc | The document's MD5 Vhash value |
| Size | Email | Size (in bytes) of the original document |
| Extension | Edoc | File extension of the document |
| FileName | Email | File name of the document |
| Title | Edoc | Any value in the Title field of the document properties |
| Subject | Email | Any value in the Subject field of the document properties |
| Author | Edoc | Any value of the Author field of the document properties |
| DateCreated | Edoc | Date the document was created |
| LastModDate | Edoc | Date the document was last modified |
| NativePath | Edoc | Path for Native File on production volume |

| Field Name | Document Type | Field Description |
| --- | --- | --- |
| NativeApp | Edoc | The application normally used to view the document |
| EmailSubject | Email | Subject line of email |
| AttachmentCount | Email | Number of documents attached to the email |
| From | Email | Sender of the email |
| To | Email | All recipients included on the "To" line of the email |
| CC | Email | All recipients included on the "CC" line of the email |
| BCC | Email | All recipients included on the "BCC" line of the email |
| ParentID | Email | Identifies ID of parent document if document family |
| AttachIDs | Email | Identifies the ID(s) of the children document(s) in family |
| DateSent | Email | Date email was sent |
| TimeSent | Email | Time email was sent |
| TimeReceived | Email | Time email was received |
| DateReceived | Email | Date email was received |

**ORDER**

Based on the foregoing, IT IS SO ORDERED.

DATED January 6, 2022.

_Lauren King_
Lauren King
United States District Judge