UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEVEN BENANAV,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>HEALTHY PAWS PET INSURANCE LLC,<br><br>　　　　　　　　Defendant. | CASE NO. C20-00421-LK<br><br>ORDER GRANTING HEALTHY PAWS' MOTION TO COMPEL REGARDING SEARCH TERMS AND PRODUCTION PROTOCOL FOR PLAINTIFFS' DOCUMENTS |

This matter comes before the Court on the parties' Local Civil Rule 37 joint submission regarding Healthy Paws Pet Insurance, LLC's motion to compel regarding the search terms and production protocol for documents produced by plaintiffs Steven Benanav, Bryan Gage, Monica Kowalski, Lindsay Purvey, Stephanie Caughlin, and Katherine Thomas ("Plaintiffs"). Dkt. No. 99. The Court has considered the parties' joint submission, the relevant portions of the record, and the applicable law. Being fully advised, the Court grants Healthy Paws' motion for the reasons set forth below.[1]

---

[1] Because this matter can be decided on the parties' filings, the Court denies the parties' request for oral argument.

ORDER GRANTING HEALTHY PAWS' MOTION TO COMPEL REGARDING SEARCH TERMS AND PRODUCTION PROTOCOL FOR PLAINTIFFS' DOCUMENTS - 1

## I. BACKGROUND

Plaintiffs were first served with discovery requests from Healthy Paws on October 22, 2021. *See* Dkt. No. 101 at 2. In response, Plaintiffs searched their emails and files for responsive documents and information. *Id.*; Dkt. No. 100 at 47. Plaintiffs' counsel met with each Plaintiff to review the requests and discuss what responsive documents they might have. Dkt. No. 101 at 2.

The Court entered a Stipulation and Order Regarding Discovery of Electronically Stored Information ("ESI Protocol") on January 6, 2022. Dkt. No. 81. Healthy Paws first proposed search terms for Plaintiffs' production of electronically stored information ("ESI") on February 4, 2022. Dkt. No. 100 at 7, 19–20. Plaintiffs responded on February 7 that they "expect[ed] [to] have edits" and would "work to get those to [Healthy Paws] as soon as possible." *Id.* at 31. On February 11, Plaintiffs made their first production without indicating whether it was based on Healthy Paws' proposed search terms or in accordance with the ESI Protocol. *Id.* at 45. Plaintiffs did not address Healthy Paws' proposed search terms until further prompting from Healthy Paws. On March 29, 2022, Plaintiffs clarified that they did not agree to the proposed search terms, and that "at this juncture, Plaintiffs have self-searched and produced all responsive documents in their possession." *Id.* at 47.

On April 5, 2022, Healthy Paws objected to Plaintiffs' self-search and asked Plaintiffs to continue to negotiate search terms and to produce documents with metadata. *Id.* at 58. On April 14, the parties met and conferred and discussed the technical limitations on Plaintiffs' search capabilities. *Id.* at 22, 52, 64. Plaintiffs proposed to run search terms "broader" than the ones Healthy Paws had proposed in order to account for those limitations. *Id.* at 64. On April 27, Plaintiffs proposed an alternative set of search terms and described their objections to Healthy Paws' proposed search terms and production format. *Id.* at 64–67. On May 10, Plaintiffs provided

1  additional information about specific documents, including certain missing attachments Healthy
2  Paws had identified and family break information it had requested. *Id.* at 213–14.

3  On June 6, Healthy Paws objected to Plaintiffs' proposed alternative search terms and its
4  continued failure to produce metadata or a load file. *Id.* at 22–29. Ten days later, Plaintiffs
5  reiterated that they would not "forensically collect their various email accounts" to conduct
6  searches, but emphasized that their proposed searches were "practical and capture what Plaintiffs
7  think Healthy Paws wants." *Id.* at 202–03. In addition, Plaintiffs "acknowledge[d] that they did
8  not follow ESI protocol as to the metadata and load file requirements" because of "burden,
9  expense, and lack of proportionality with the needs of this case." *Id.* at 205. In further
10 correspondence on June 23, Plaintiffs shared the hit counts for test searches on two of Plaintiffs'
11 email accounts using a set of Plaintiffs' proposed search terms. *Id.* at 53–55.

12 On July 1, Healthy Paws reiterated that it would not accept Plaintiffs' proposed searches.
13 *Id.* at 53. Four days later, Plaintiffs repeated that they "are unable to run Healthy Paws' suggested
14 terms because Plaintiffs did not do a collection of their entire email accounts that would allow such
15 searches to be ran, and instead conducted self-searches with the assistance of counsel to find
16 documents that each Plaintiff knew existed." *Id.* at 52. This impasse culminated in the dispute now
17 before the Court.

18                    II.    **LEGAL STANDARD**

19 Under Federal Rule of Civil Procedure 37(a)(1), "[o]n notice to other parties and all
20 affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ.
21 P. 37(a)(1). Local Civil Rule 37 provides for an expedited joint motion procedure in discovery
22 disputes, which the parties have utilized here. The party opposing discovery has the burden of
23 showing that discovery should not be allowed, and also has the burden of clarifying, explaining
24

ORDER GRANTING HEALTHY PAWS' MOTION TO COMPEL REGARDING SEARCH TERMS AND PRODUCTION PROTOCOL FOR PLAINTIFFS' DOCUMENTS - 3

and supporting its objections with competent evidence. *Doe v. Trump*, 329 F.R.D. 262, 270 (W.D. Wash. 2018). With respect to ESI specifically,

> [a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On a motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost.

Fed. R. Civ. P. 26(b)(2)(B). A court must limit discovery when the discovery is not proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1), (b)(2)(C). A court must also limit discovery if the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

### III.   DISCUSSION

In their joint submission, the parties lay out their positions on Healthy Paws' motion to compel Plaintiffs (1) to use Healthy Paws' proposed search terms (or "broader terms that encompass what Healthy Paws seeks") to collect and produce responsive documents, and (2) to comply with the ESI Protocol by producing documents with the required metadata and load files. Dkt. No. 99 at 4–5. Healthy Paws seeks a production of responsive documents and load files by August 22, 2022. *Id.* at 5, 29. Plaintiffs protest that the relief Healthy Paws seeks is unduly burdensome and disproportionate to the likely benefit because Plaintiffs have already searched for and produced all responsive documents through a manual "self-search" of their own inboxes with the supervision of counsel. *Id.* at 5–7. Plaintiffs add that, because none of Plaintiffs' email inboxes were forensically collected, Healthy Paws' proposed search terms cannot be run and metadata and

1  load files cannot reasonably be produced. *Id.* Healthy Paws responds that Plaintiffs' manual self-
2  search and failure to produce metadata violates the ESI Protocol, and that the self-search produced
3  flawed and incomplete results. *Id.* at 7–8. Healthy Paws faults Plaintiffs for proposing and agreeing
4  to an ESI Protocol and expecting Healthy Paws to comply with it while excusing themselves from
5  similar compliance. *Id.* at 8.

6        For the reasons explained below, the Court finds that Plaintiffs must comply with the ESI
7  Protocol by agreeing to and running appropriate search terms and producing the required metadata
8  and/or load files.

9  **A.  Search Terms for Plaintiffs' Documents**

10       The Court has little difficulty in concluding that Plaintiffs are required to produce
11 documents in accordance with the ESI Protocol, including conducting a reasonable search after
12 conferring in good faith on reasonable search terms and other parameters. The Court entered the
13 ESI Protocol on January 6, 2022. Dkt. No. 81. By its plain language, the ESI Protocol obliges *both*
14 parties to produce documents in accordance with its terms. *See generally id*.

15       However, by their own admission, Plaintiffs have thus far failed to produce documents in
16 accordance with the ESI Protocol. Dkt. No. 99 at 6 ("Plaintiffs acknowledge that they did not
17 follow the provisions of the ESI protocol when collecting and producing their documents, because
18 there was no order contemplated when the documents were collected."). Plaintiffs made their first
19 production of documents on February 11, 2022, without explaining whether those documents were
20 collected according to the search terms Healthy Paws proposed seven days prior to that production,
21 and they failed to even address the proposal until over six weeks later after further prompting from
22 Healthy Paws. Dkt. No. 99 at 17. Plaintiffs' unilateral "self-search" is inconsistent with Plaintiffs'
23 commitment, undertaken in the ESI Protocol, to "work in good faith to *agree* on the use of
24

ORDER GRANTING HEALTHY PAWS' MOTION TO COMPEL REGARDING SEARCH TERMS AND
PRODUCTION PROTOCOL FOR PLAINTIFFS' DOCUMENTS - 5

reasonable search terms . . . along with any other relevant search parameters." Dkt. No. 81 at 4 (emphasis added).

Plaintiffs contend that they should not have to run searches on Plaintiffs' email accounts because they have already produced "all responsive documents in their possession after a reasonable search based on their best recollection, thereby making any further searches unduly burdensome, harassing, and seeking duplicative and irrelevant documents." Dkt. No. 99 at 17. This argument lacks merit. This Court has previously rejected the argument "that requiring two reviews of electronically stored information—one based on gathering reasonably accessible relevant documents and a broader search of all databases that could contain relevant information using search terms—is duplicative." *Albert v. Lab. Corp. of Am.*, 536 F. Supp. 3d 798, 801 (W.D. Wash. 2020). As the Court explained:

> The Federal Rules and the ESI Agreement in this jurisdiction work in tandem. Rule 34 requires the producing party to conduct a reasonable search for responsive relevant documents. This search can be accomplished several ways but typically involves a *first* step of asking witnesses to gather documents both paper and stored electronically that is reasonably accessible and *second* by identifying data sources that may contain relevant information and running search terms in those data sources. This is not duplicative.

*Id.* (emphasis added) (footnote omitted); *see also Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637, 646 n.5 (S.D.N.Y. 2019) (noting that "[a] producing party generally has an obligation to collect and review ESI pursuant to its own search protocol (that is, prior to reaching a negotiated ESI protocol)," even if "such a two-step process may result in increased costs for the producing party"). As the Court explained in *Albert*, it is typical for a party to conduct a prompt initial search for "low-hanging fruit" and later perform a more comprehensive search based on negotiated search terms. 536 F. Supp. 3d at 801. If Plaintiffs thought they should be excepted from the typical process, they should have timely informed Healthy Paws rather than making a production without any accompanying explanation of the self-imposed limits on their search. *See, e.g.*, Dkt. No. 81 at

2 (the parties are obligated to "cooperate in good faith" and to respond to requests for production of ESI "clear[ly], and as specific[ally] as possible"); *id.* at 4 ("the Parties will work in good faith to agree on the use of reasonable search terms"). *See also The Sedona Conference® Cooperation Proclamation*, 10 Sedona Conf. J. 331 (2009) ("It is not in anyone's interest to waste resources on unnecessary disputes, and the legal system is strained by 'gamesmanship' or 'hiding the ball,' to no practical effect.").

Of course, Rule 26(b)(1) requires that the Court consider "whether the burden or expense of the proposed discovery outweighs its likely benefit": "[a] mere suspicion that additional documents must exist is an insufficient basis to grant a motion to compel," and a "moving party must have a colorable basis for its belief that relevant, responsive documents exist and are being improperly withheld." *Edge Sys. LLC v. Ageless Serums LLC*, No. C20-9669-FLA-PVCX, 2021 WL 4497505, at *8 (C.D. Cal. Aug. 20, 2021). The inadequacy of Plaintiffs' self-search is demonstrated by their repeated supplementation of their productions in response to deficiencies discovered by Healthy Paws or by Plaintiffs themselves. For example, Plaintiffs previously represented to Healthy Paws that no additional responsive documents exist, *e.g.*, Dkt. No. 100 at 47, but now state in the joint submission that Plaintiff Gage has found responsive documents regarding his other pet insurance plans and that he plans to make another supplemental production, Dkt. No. 99 at 18 n.7. Plaintiffs also produced documents from Plaintiff Caughlin after previously representing that their production was complete.[2] Moreover, some of the documents Plaintiffs produced appeared to be missing attachments, Dkt. No. 100 at 58, 64, and Plaintiffs have represented to Healthy Paws that certain attachments "no longer exist[]" without explaining what

---

[2] Dkt. No. 100 at 47 (representing that all responsive documents had been produced as of March 29, 2022); *id.* at 58 (noting that no documents had been produced by Plaintiff Caughlin as of April 5, 2022); Dkt. No. 99 at 6 n.2 (stating that Plaintiff Caughlin had produced 12 pages of documents as of the date of the joint submission).

ORDER GRANTING HEALTHY PAWS' MOTION TO COMPEL REGARDING SEARCH TERMS AND PRODUCTION PROTOCOL FOR PLAINTIFFS' DOCUMENTS - 7

happened to them. *Id.* at 213; *see* Dkt. No. 99 at 15 n.5; *see also* Dkt. No. 81 at 11 ("If a Party believes that responsive, unique ESI . . . is no longer retrievable, the Parties shall meet and confer to attempt to resolve the issue expeditiously."). Plaintiffs also provide only a vague explanation of how counsel supervised and directed each Plaintiff in searching for and identifying responsive documents. Dkt. No. 101 at 2 ("[Counsel] promptly met with each Plaintiff to review [Healthy Paws'] requests and discuss what responsive documents each plaintiff might have in his or her possession to aid in drafting responses and objections to the discovery. At this time, each plaintiff searched their emails and files for responsive documents and information. . . . [Counsel] reviewed [the documents and] asked follow-up questions if necessary[.]"); *see also* Dkt. No. 99 at 11 ("Plaintiffs ignored Healthy Paws' request for an explanation of the search criteria used for their collections."); Dkt. No. 100 at 206 ("Plaintiff Purvey has tried searching for these files and believes they no longer exist.").

These defects in Plaintiffs' manual self-search are sufficient to highlight the risks of such self-search processes: "parties and counsel that embark on self-collection can soon encounter multiple pitfalls that can sidetrack the litigation and lead to motions to compel, spoliated evidence, and even sanctions." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 934–35 (N.D. Ill. 2021). The pitfalls include the client's failure (1) "to identify all sources of responsive information," (2) "to preserve evidence," (3) to "find or provide to counsel all responsive documents and ESI," or (4) to "fully document how they conducted their searches." *Id.* at 935–37. Although the failures here have been relatively minor in comparison to those detailed in *DR Distributors*, they underscore the importance of reaching a clear agreement between counsel on the parameters of an ESI search. *See Tera II, LLC v. Rice Drilling D, LLC*, No. 2:19-CV-2221, 2022 WL 1114943, at *4–5 (S.D. Ohio Apr. 14, 2022) (noting that self-collections by document custodians tend to give rise to "'questions regarding the accuracy and completeness of collections

if directions and oversight by legal counsel or forensics experts are poor or non-existent,'" and that "[t]hese problems with self-collection may be counteracted with a systematic procedure for producing documents[.]" (quoting *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 167 (2018)).

Plaintiffs also cite facts regarding the burden to them: it would cost approximately $1,000 to collect one email account and store the data for a month, and there are at least eight email accounts to collect. Dkt. No. 99 at 23. But Plaintiffs have filed a nationwide class action, and "[i]t is way too late in the day for lawyers to expect to catch a break on e-discovery compliance because it is technically complex and resource-demanding." *DR Distributors*, 513 F. Supp. 3d at 942 (quoting Donald R. Lundberg, *Electronically Stored Information and Spoliation of Evidence*, 53 Res Gestae 131, 133 (2010)). Furthermore, Plaintiffs have already agreed to a number of custodians equal to the number of named plaintiffs. Dkt. No. 81 at 4. Nor are Plaintiffs disproportionately burdened relative to Healthy Paws: by their own admission, Plaintiffs have produced 490 pages, whereas Healthy Paws has produced over 105,000. Dkt. No. 99 at 6. Neither Plaintiffs nor the evidence they cite suggests that conducting a more thorough ESI search would result in a burdensome hit count: either way, Healthy Paws will bear the bulk of the document collection and production burden in this case. Furthermore, Plaintiffs' test searches indicate that alternative search terms will not return dramatically different results. *See* Dkt. No. 100 at 208–209; Dkt. No. 99 at 14 n.4.

Despite their burden arguments, Plaintiffs indicate a willingness to continue negotiating search terms in good faith, stating in the joint submission that they "have not 'reneged' on any offer and informed Healthy Paws that [they] would continue to entertain negotiations on the search terms, with the understanding that searches run on email accounts—*i.e.*, in Outlook, Gmail, and

Yahoo as opposed to in a document review platform—are limited in what they can do[.]" Dkt. No. 99 at 17. And Healthy Paws has expressed its willingness to accommodate those limitations if Plaintiffs refuse to forensically collect Plaintiffs' emails. *Id.* at 15 ("Healthy Paws has already offered that, if technical limitations on Plaintiffs' email accounts prevent Plaintiffs from running Healthy Paws' search terms in the precise format proposed, Plaintiffs should instead run broader or equivalent versions of those terms that encompass what Healthy Paws seeks, and are compatible with their email search capabilities.").

Accordingly, the Court orders the parties to meet and confer in good faith to negotiate search terms that are designed to capture documents that are responsive to Healthy Paws' discovery request. The search terms should be in a format that is compatible with Plaintiffs' existing email search capabilities. At this stage, the Court sees no reason why the search should be limited to only the email accounts Plaintiffs used to communicate with Healthy Paws, provided that the search terms meet the criteria just stated. However, the parties should consider whether the number of Plaintiffs' email accounts to be searched can be limited in view of the Federal Rules' proportionality requirements. If the parties have not reached agreement within seven days of this Order, they must submit their proposals to the Court in a joint submission of no more than 5 pages by August 30, 2022.

**B.      Plaintiffs' Production Protocol**

For largely the same reasons as the Court has already described, the Court finds that Plaintiffs must comply with the ESI Protocol by producing documents with a load file containing the required metadata. The ESI Protocol requires that the parties "produce Documents and ESI in reasonably usable form," and provides that "[e]xcept as otherwise provided herein . . . or as agreed hereafter by the Parties, such reasonably usable form shall be the single-page TIFF-image format with extracted or OCR text and the associated Metadata set out in Attachment A (to the extent

available and reasonable to collect and produce)." Dkt. No. 81 at 5. The metadata fields set forth in Attachment A are "the minimum Metadata fields that must be produced," and although the parties "are not obligated to manually populate [those fields] if such fields cannot be extracted from the ESI item using an automated process," they are obligated to manually populate the following fields even if they cannot be extracted through automated processes: "(1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) PgCount, (6) Custodian, (7) SourceParty, (8) TextPath, (9) Confidentiality, (10) Redacted, (11) ProdVol, (12) and DocType." *Id.* at 8–9.

Plaintiffs argue that it would be "unduly burdensome" to collect and produce metadata because Plaintiffs did not forensically collect their email inboxes. Dkt. No. 99 at 29. But the fact that Plaintiffs have failed thus far to collect documents in a manner that permits the production of metadata does not mean that the metadata is not "available and reasonable to collect and produce," Dkt. No. 81 at 5—only that Plaintiffs haven't done so yet, and are disinclined to do so now. The ESI Protocol puts the burden on each party to produce metadata that "exists and can be reasonably produced," *id.* at 8, but Plaintiffs seek to avoid that obligation for most of the metadata on the grounds that it is "facially obvious," and for the rest, they seek to shift this burden to Healthy Paws by having it "ask the Plaintiffs in their depositions from where [they] collected the documents," Dkt. No. 99 at 30. The only burden Plaintiffs face is the burden of collecting and producing documents in accordance with the ESI Protocol—an obligation they voluntarily agreed to undertake.

Plaintiffs are ordered to produce all ESI in accordance with sections 5 and 7 of the ESI Protocol, including providing Healthy Paws with a load file containing at least the 12 metadata fields listed above. Plaintiffs must provide load files for the productions made to date within seven days of this Order, and must provide load files contemporaneously with all future productions.

IV.     CONCLUSION

The Court GRANTS Healthy Paws' motion to compel, Dkt. No. 99, as follows:

1. The parties are ORDERED to meet and confer in good faith to negotiate search terms that are designed to capture the documents that are responsive to Healthy Paws' RFPs and that Plaintiffs have agreed to produce in their discovery responses. If the parties have not reached agreement within seven days of this Order, they must submit their proposals to the Court in a joint submission of no more than 5 pages by August 30, 2022.

2. Plaintiffs are ORDERED to produce all ESI in accordance with sections 5 and 7 of the ESI Protocol, including providing Healthy Paws with a load file containing at least the 12 metadata fields listed above. Plaintiffs are ORDERED to provide load files for the productions made to date within seven days of this Order, and are ORDERED to provide load files contemporaneously with all future productions.

Dated this 22nd day of August, 2022.

*Lauren King*

Lauren King
United States District Judge