1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10

11

| STEVEN BENANAV, et al., | CASE NO. 2:20-cv-00421-LK |
| | |

Plaintiffs,

ORDER REGARDING MOTIONS
TO AMEND COMPLAINT AND
MOTION TO VOLUNTARILY
DISMISS A NAMED PLAINTIFF

v.

HEALTHY PAWS PET INSURANCE
LLC,

Defendant.

16

        This matter comes before the Court on three motions filed by Plaintiffs in this putative

class action: (1) a motion to voluntarily dismiss named Plaintiff Bryan Gage; (2) a motion for leave

to file a fourth amended complaint adding a new named Plaintiff; and (3) a motion for leave to file

a fifth amended complaint adding new Defendants and a new theory of liability. Dkt. Nos. 116,

130, 163. For the reasons set forth below, the Court denies the motions for leave to amend the

complaint, and will grant the motion to dismiss Mr. Gage once certain conditions are satisfied.[1]

---

[1] Because the motions can be decided based on the extensive filings, the Court denies Healthy Paws' request for oral argument. Dkt. No. 118 at 1 (motion to dismiss Mr. Gage).

ORDER REGARDING MOTIONS TO AMEND COMPLAINT AND MOTION TO VOLUNTARILY DISMISS A NAMED PLAINTIFF - 1

## I.   BACKGROUND

In March 2020, Plaintiff Steven Benanav filed this action. Dkt. No. 1. Benanav, along with later-added Plaintiffs Bryan Gage, Monica Kowalski, Lindsay Purvey, Stephanie Caughlin, and Katherine Thomas assert individual and putative class action claims against Defendant Healthy Paws Pet Insurance, LLC for misleading them into believing that their pet insurance premiums would increase only as the costs of veterinary medicine increased. Dkt. No. 70 at 2–3. In reality, their insurance costs increased substantially as a result of other undisclosed factors, including the age of their pets. *Id.* at 3.

Healthy Paws markets and administers pet insurance policies to consumers on behalf of insurance companies, including Markel American Insurance Company, ACE American Insurance Company, Indemnity Insurance Company of North America, and Westchester Fire Insurance Company (collectively, the "Insurers"). *Id.* at 2. The Insurers are subsidiaries of parent company CHUBB Ltd. *Id.*

Plaintiffs have filed numerous iterations of their complaint over the course of this litigation. Benanav filed the first version of the complaint in March 2020 as a breach of contract action against Healthy Paws. Dkt. No. 1 at 12–13. Healthy Paws moved to dismiss that complaint, arguing among other things that it could not be liable for breaching an insurance contract to which it was not a party. Dkt. No. 20 at 9–12. Benanav mooted the motion by filing an amended complaint in June 2020 adding other named Plaintiffs, deleting the breach of contract claim, and substituting claims for violations of state consumer protections statutes. *See* Dkt. No. 25 at 18–24. Healthy Paws again moved to dismiss. Dkt. No. 28. The Court granted the motion, holding that Plaintiffs failed to adequately plead fraud under Federal Rule of Civil Procedure 9(b) and that their claims were barred by the "filed rate doctrine" under Washington, California, and New Jersey law. Dkt.

No. 42 at 9–22.[2]

Plaintiffs then filed a second amended complaint in November 2020, Dkt. No. 45, and Healthy Paws filed another motion to dismiss, Dkt. No. 49. In its order granting the motion in part, the Court found that Plaintiffs once again failed to adequately plead fraud under Rule 9(b). Dkt. No. 63 at 21–22. But the Court rejected Healthy Paws' argument that the amended claims were barred by the filed rate doctrine, finding that "the gravamen of the [second amended complaint] is clear: the rates Plaintiffs paid allegedly exceeded those filed with and approved by their respective state insurance agencies because of the misrepresented pet age factor." *Id.* at 12. Plaintiffs subsequently amended their complaint a third time, Dkt. No. 70, and their third amended complaint—filed October 25, 2021—is the operative pleading that Plaintiffs now seek to amend.

The deadline to amend the pleadings was December 21, 2021.[3] On October 21, 2022, Plaintiffs' counsel emailed Healthy Paws' counsel to inquire if Healthy Paws would stipulate to Plaintiffs' amending their third amended complaint to add another Plaintiff, Scott Currier, a resident of Illinois. Dkt. No. 131-1 at 6–8. At the time, case deadlines were quickly approaching, including the deadline to complete fact discovery (October 27, 2022), and the deadline for completion of party depositions and discovery (November 10, 2022). Dkt. No. 129 at 1–2. In light of those impending deadlines, Plaintiffs offered "to produce written discovery responses for Mr. Currier by the end of next week (to the same requests issued to the other Plaintiffs), collect and produce his documents by November 1 (including collecting and searching his emails), and mak[e] him available for deposition on Nov[ember] 3, 4, or 9." Dkt. No. 131-1 at 8. Healthy Paws' counsel responded that they were unsure what the purpose was of "adding a new plaintiff at this stage in

---

[2] The filed rate doctrine bars lawsuits challenging the reasonableness of insurance rates filed with, and approved by, a governing regulatory agency. *See id.* at 14.

[3] The Court set the deadline to amend pleadings "30 days after Defendant files Answer," Dkt. No. 69 at 2, which occurred on November 19, 2021, Dkt. No. 75.

1   the case—almost a year past the November 19, 2021 deadline to add necessary parties." *Id.* at 3.

2   Counsel further observed that Plaintiffs would need to establish good cause for their belated

3   amendment: "Please let us know when you first spoke with Mr. Currier and identify the good cause

4   plaintiffs contend exists for the proposed addition." *Id.*. Plaintiffs wrote back that it was "not

5   uncommon to add class representatives either in advance of, or at, class certification" and noted

6   their belief that the amendment would not prejudice Healthy Paws. *Id.* at 2. Healthy Paws replied

7   that Plaintiffs did not answer its questions. *Id.* The motion to file a fourth amended complaint

8   followed.

9        On January 26, 2023, while that motion was pending, Plaintiffs filed a motion for leave to

10   file a fifth amended complaint adding the Insurers as Defendants and asserting a breach of contract

11   claim against them. Dkt. No. 163 at 2. Plaintiffs also filed a motion to voluntarily dismiss Plaintiff

12   Bryan Gage, who no longer wants to be a named Plaintiff. Dkt. No. 116 at 2.

13                        **II.   DISCUSSION**

14        The Court first addresses the two motions to amend the complaint. Dkt. Nos. 130, 163. It

15   then addresses the motion to voluntarily dismiss Mr. Gage as a party. Dkt. No. 116.

16   **A.   Motions to Amend the Complaint**

17        Once a district court issues a pretrial scheduling order and the deadline for amended

18   pleadings expires, a motion for leave to amend is governed by Rule 16. *Coleman v. Quaker Oats*

19   *Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604,

20   607–08 (9th Cir. 1992). Under Rule 16, "[a] schedule may be modified only for good cause and

21   with the judge's consent." Fed. R. Civ. P. 16(b)(4); *accord* LCR 16(b)(6). The Court thus employs

22   a two-step analysis to resolve Plaintiffs' motions to amend: it "first asks whether [Plaintiffs] ha[ve]

23   satisfied Rule 16's more stringent 'good cause' requirement, and if good cause is shown, the court

24   then considers whether amendment would be proper under Rule 15." *Kremerman v. Open Source*

*Steel, LLC*, No. C17-953-BAT, 2018 WL 4700526, at *2 (W.D. Wash. Oct. 1, 2018); *accord LifeLast, Inc. v. Charter Oak Fire Ins. Co.*, No. C14-1031-JLR, 2015 WL 12910683, at *2 (W.D. Wash. July 6, 2015). Here, Plaintiffs do not make it past the first hurdle.

### 1. Rule 16's Good Cause Standard

"Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. A schedule modification is appropriate only if the amended pleading deadline could not be met despite the diligence of the moving party. *Id.* Carelessness is incompatible with a finding of diligence. *Id.* The Court's inquiry thus focuses on the moving party's reasons for seeking a modification and, "[i]f that party was not diligent, the inquiry should end." *Id.*; *accord Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

In assessing diligence, the Court may consider "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990); *see also Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) ("[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action.").[4] When that is the case, the Court may deny leave to amend. *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 878 (9th Cir. 2000). The Court may likewise deny leave to amend if Plaintiffs knew of the facts and theories at

---

[4] The Court recognizes that this is identical to the undue delay inquiry under Rule 15. However, courts in this district have looked to the moving party's pre-existing knowledge of allegedly new facts and theories to measure diligence and, by extension, ascertain whether good cause exists under Rule 16. *See, e.g.*, *Kremerman*, 2018 WL 4700526, at *3–4; *MMMT Holdings Corp. v. NSGI Holdings, Inc.*, No. C12-01570-RSL, 2014 WL 2573290, at *3 (W.D. Wash. June 9, 2014).

ORDER REGARDING MOTIONS TO AMEND COMPLAINT AND MOTION TO VOLUNTARILY DISMISS A NAMED PLAINTIFF - 5

issue sufficiently in advance of the deadline to timely assert them. *See, e.g, Seattle Pac. Indus., Inc. v. S3 Holding LLC*, 831 F. App'x 814, 816–17 (9th Cir. 2020) (party that moved for leave to amend three months after the amended pleadings deadline failed to exercise diligence because it could have asserted its proposed claims before that deadline); *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (denying leave to amend where plaintiff's motion "came several months after the stipulated deadline for amending or supplementing the complaint" and "[n]othing in the proposed amended complaint relied on facts that were unavailable before the stipulated deadline."). In addition, "the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion[.]" *Mammoth Recreations*, 975 F.2d at 609.

### 2.  Plaintiffs Fail to Show Good Cause to Add Mr. Currier

Plaintiffs do not set forth a substantive reason why they should be allowed to amend to add Mr. Currier as a Plaintiff until their reply brief. *Compare* Dkt. No. 130 *with* Dkt. No. 139. There Plaintiffs argue that such amendment is proper because "two things are abundantly clear" now that fact discovery has ended: "First, Healthy Paws is relying on the filed rate doctrine defense to defeat Plaintiffs' claims. And second, Healthy Paws is shifting the blame for its outrageous premium increases to the third-party insurers, who are resisting providing meaningful evidence related to premium determinations and the filed rate doctrine." Dkt. No. 139 at 3 (Plaintiffs' reply brief).

Healthy Paws filed a surreply to strike both arguments because neither one was included in Plaintiffs' motion to amend. Dkt. No. 143 at 2–4. In general, new arguments and evidence presented for the first time in a party's reply are waived. *See, e.g.*, *Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) (citing *United States v. Patterson*, 230 F.3d 1168, 1172 (9th Cir. 2000)). A court may, however, remedy a late argument by allowing supplemental briefing. *See Harris v. City of Kent*, No. 2:20-CV-01045-RSM-TLF, 2022 WL 1310080, at *5

(W.D. Wash. Mar. 11, 2022) ("When new evidence is presented in a reply brief, the court should not consider the new evidence without giving the non-movant a chance to respond." (citing *Provenz v. Miller*, 102 F.3d 1478, 1487 (9th Cir. 1996))). Healthy Paws requests that if the Court considers Plaintiffs' new arguments, "it be given 4 pages to respond in a surreply." Dkt. No. 143 at 4. But Healthy Paws has already availed itself of that remedy, filing substantive arguments in its surreply rather than confining its brief to a request to strike Plaintiffs' new arguments as required by Local Civil Rule 7. *See* LCR 7(g)(2) (a surreply "shall be strictly limited to addressing the request to strike."). For the sake of efficiency, the Court declines to strike the surreply and considers it as Healthy Paws' response to Plaintiffs' new arguments. And the Court does not strike Plaintiffs' new arguments because Healthy Paws has responded to them via its surreply.

Even considering their new arguments, Plaintiffs have not demonstrated diligence or good cause to amend. They claim that it is only now clear to them after discovery has ended that Healthy Paws is relying on the filed rate doctrine, Dkt. No. 139 at 3, but they have known that Healthy Paws was relying on that defense since at least May 2020 when Healthy Paws filed the first of its motions to dismiss asserting that very defense. Dkt. No. 20 at 14–16; *see also* Dkt. No. 28 at 19–21 (July 2020 motion to dismiss asserting filed rate doctrine as basis for dismissal); Dkt. No. 49 at 8–14 (December 2020 motion to dismiss asserting same); Dkt. No. 75 at 47 (November 2021 answer asserting filed rate doctrine as first affirmative defense); Dkt. No. 85 at 47 (amended answer asserting same). Plaintiffs cannot demonstrate diligence based on the assertion of a defense they were aware of more than two years before they sought to add Mr. Currier.

Plaintiffs' assertion that they only recently learned in discovery that Healthy Paws was attempting to shift the blame to the Insurers fares no better. Again, Healthy Paws asserted in its first motion to dismiss that it could not be liable for Plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing because it was not a party to their

insurance contracts. *Id.* at 9–12. It further asserted that it could not be liable under state consumer protection laws for misrepresentations in the policies to which Healthy Paws was not a party. *Id.* at 13–14. Healthy Paws reiterated its defenses in its July 2020 motion to dismiss Plaintiffs' amended complaint. Dkt. No. 28 at 7 ("Healthy Paws cannot be liable for the alleged age-based premium increases because it is not a party to the insurance contracts—and did not receive the premium payments for which Plaintiffs seek compensation[.]"); *see also* Dkt. No. 42 at 9–11 (October 2020 Order distinguishing insurer and agent liability); Dkt. No. 49 at 5 & n.1 (December 2020 motion to dismiss listing various alleged wrongs that insurers—and not Healthy Paws—were responsible for); Dkt. No. 75 at 47, 53 (November 2021 answer asserting as affirmative defenses that "Plaintiffs are limited to recovering any restitution or damages from their respective insurers, and not Healthy Paws," and that Plaintiffs' claims should be "dismissed for failure to join their respective insurers who are necessary and indispensable parties"); Dkt. No. 85 at 51, 53 (amended answer asserting same). Therefore, those issues are not recent developments that supply good cause for a belated amendment.

Plaintiffs also argue that the insurers are "resisting providing meaningful evidence related to premium determinations and the filed rate doctrine." Dkt. No. 139 at 3.[5] They contend that as a result, their "discovery on the filed rate doctrine defense is incomplete," so they seek to add Mr. Currier as a Plaintiff because he is an Illinois resident and "the filed rate doctrine is inapplicable

---

[5] Plaintiffs note that they did not receive documents from the insurers until October 2022. Dkt. No. 141 at 2. But that production does not supply good cause. Plaintiffs filed motions in the Eastern District of Pennsylvania to compel the insurers to produce documents, witnesses for depositions, and supplemental privilege logs. *See Benanav v. Healthy Paws Pet Ins. LLC*, Nos. 2:22-mc-00048-WB, 2:22-mc-00052-WB, 2:22-mc-00053-WB (E.D. Pa.), Dkt. No. 1 at 6 (filing nearly identical motions in all three cases). After the insurers responded and opposed the motions, Plaintiffs filed replies on November 17, 2022 stating that the issues regarding the privilege logs and document productions were resolved. *Id.*, Dkt. No. 12 at 1 n.1. In January 2023, that court denied all three motions to compel without prejudice, noting that those issues were resolved and that, with respect to the depositions, "the subpoena's service was invalid for failure to tender witness fees pursuant to Federal Rule of Civil Procedure 45[.]" Dkt. No. 156 at 6 n.1; Dkt. No. 157 at 6 n.1 & 9 n.1. Therefore, issues with the insurers' document productions and privilege logs were resolved to Plaintiffs' satisfaction, and Plaintiffs do not indicate what additional facts they hoped to learn from the depositions.

to Plaintiffs' Illinois claims." Dkt. No. 139 at 5. But Plaintiffs observed that "Illinois does not recognize a filed rate doctrine" in their January 2021 opposition to Healthy Paws' motion to dismiss the second amended complaint, demonstrating that issue has long been known to them. Dkt. No. 55 at 8 n.1. In addition, the putative class already includes a named Plaintiff who is an Illinois resident, Dkt. No. 70 at 28, and Plaintiffs have not indicated that she is unable to continue in that role. *Cf. Krause-Pettai v. Unilever United States, Inc.*, No. 20-cv-1672-LL-BLM, 2022 WL 2318689, at *2 (S.D. Cal. June 28, 2022) (allowing amendment to substitute two new class members because two existing members were unable to fulfill their duties). Plaintiffs' belated desire to add another named Plaintiff from Illinois does not establish diligence given their years-long knowledge of Healthy Paws' assertion of the filed rate doctrine and the defense's inapplicability in Illinois. Indeed, despite Plaintiffs' assertion that it is "[b]est practice" to "have additional class representatives to protect the interests of absent class members," Dkt. No. 140 at 5, the Illinois Subclass—"with only one putative class representative," *id.*—has existed since June 2020, Dkt. No. 25 at 16, and Plaintiffs provide no reason why they could not follow that "best practice" earlier.

Plaintiffs' lack of diligence is underscored by their refusal to state when Mr. Currier came to their attention as a potential additional named plaintiff, despite Healthy Paws' request for that information. Dkt. No. 131-1 at 2–3. Although Plaintiffs state that Mr. Currier contacted Plaintiffs' counsel "to become part of this litigation after the Third Amended Complaint was filed and after the [December 21, 2021] deadline to amend the pleadings had passed," Dkt. No. 130 at 1, they do not further specify when in that 10-month period the contact was made.[6] In contrast, in the cases

---

[6] The draft fourth amended complaint states that Mr. Currier "realized for the first time that Health[y] Paws was increasing his premiums based on pet age" "around [March 2021]" when he "found a copy of the complaint filed in this case." Dkt. No. 130-1 at 30.

on which Plaintiffs rely, the record included more specific information and a finding that the Plaintiffs diligently moved to amend thereafter. Dkt. No. 139 at 5; *Krause-Pettai*, 2022 WL 2318689, at *2 (finding that "Plaintiffs' counsel was sufficiently diligent in securing potential replacement class representatives and seeking leave to amend" approximately three months after it learned that substitution might be necessary); *Dibb v. AllianceOne Receivables Mgmt., Inc.*, No. 14-5835 RJB, 2015 WL 4094431, at *2 (W.D. Wash. July 7, 2015) (noting when the two new plaintiffs approached plaintiff's counsel). Here, the Court cannot conclude that Plaintiffs acted diligently in seeking to amend after Mr. Currier expressed a desire to be a named Plaintiff.

Plaintiffs also aver that they have been diligent generally and conducted extensive discovery. Dkt. No. 139 at 4–5. However, the Rule 16 inquiry is focused on their diligence in seeking to amend, not their general diligence in the case. *See, e.g.*, *Johnson*, 975 F.2d at 609 (explaining that "the focus of the inquiry is upon the moving party's reasons for seeking modification"). Plaintiffs were not diligent and thus fail to show good cause with respect to adding Mr. Currier.

In addition, Healthy Paws would be prejudiced by the late amendment because discovery would have to be reopened. *See* Dkt. No. 129 at 1–2 (setting forth discovery dates that elapsed before this motion was noted for consideration, including the October 27, 2022 deadline for fact discovery, and the November 10, 2022 deadline for completion of party depositions and discovery); Dkt. No. 130 (motion to amend noted for November 11, 2022). "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight" in deciding whether to grant leave to amend, *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam), and "[a] need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint," *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999).

1    Even if Plaintiffs had demonstrated good cause, they would not be entitled to amend under

2    Rule 15. Under that rule, the Court may deny leave to amend after considering "the presence of

3    any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility." *Owens*

4    *v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Griggs v. Pace Am.*

5    *Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999)). As set forth above, Plaintiffs have engaged in undue

6    delay in seeking to add Mr. Currier, and Healthy Paws would be prejudiced by the late amendment.

7    Furthermore, the Court has already extended the deadlines in this case three times in response to

8    stipulated motions asking for more time for discovery, Dkt. Nos. 87, 104, 129, including discovery

9    from the third-party insurers, *see* Dkt. No. 128.

10    Accordingly, Plaintiffs' motion for leave to file a fourth amended complaint to add Mr.

11    Currier as a named Plaintiff is denied.

12        3.  <u>Plaintiffs Fail to Show Good Cause to File a Fifth Amended Complaint</u>

13    Plaintiffs seek to file a fifth amended complaint to add the Insurers as Defendants, assert a

14    breach of contract claim against them, and assert a new theory of liability (replacing Plaintiffs'

15    prior core theory) that the insurers impermissibly increased their base insurance rates in all states

16    since 2013. *See generally* Dkt. No. 162 (sealed); Dkt. No. 163-1 (unsealed and redacted). Healthy

17    Paws opposes the motion because Plaintiffs have not shown good cause to add new Defendants

18    after the close of fact discovery or change their theory of the case. *See generally* Dkt. No. 186.[7]

19    The Court agrees.

20    Plaintiffs had enough information in March 2020 to allege a breach of contract claim and

21    they did so, albeit against the wrong party. They alleged in their March 2020 complaint that

---

[7] Healthy Paws filed a surreply to strike new arguments in Plaintiffs' reply brief. Dkt. No. 192. However, once again, it has failed to confine its surreply to a request to strike. LCR 7(g)(2). Regardless, considering Plaintiffs' full reply brief, Dkt. No. 190, does not change the result.

"Healthy Paws breached its contracts with Plaintiff and the Classes by basing its monthly premiums on impermissible considerations" and by doing so, "Healthy Paws knowingly caused premiums to be higher than what is explicitly authorized by the policies." Dkt. No. 1 at 13. Healthy Paws asserted in its first motion to dismiss in May 2020 that it could not be liable for Plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing because it was not a party to their insurance contracts. Dkt. No. 20 at 9–12.[8] Therefore, Plaintiffs knew by May 2020 that they had brought their breach of contract claim against the wrong party. *See also* Dkt. No. 75 at 53 (November 2021 affirmative defense that Plaintiffs' claims should be "dismissed for failure to join their respective insurers who are necessary and indispensable parties").[9] Plaintiffs' decision not to assert the claim against the Insurers at that time undermines an assertion of diligence. *Johnson*, 975 F.2d at 609 ("Failing to heed clear and repeated signals that not all the necessary parties had been named in the complaint does not constitute diligence."); *see also, e.g.*, *Denham v. Glob. Distrib. Servs., Inc.*, No. 18-cv-1495-LAB(MDD), 2020 WL 2218966, at *2 (S.D. Cal. May 6, 2020) (because allegations against proposed new individual defendant were "no different in substance than the allegations against the existing Individual Defendants," proposed amendment was "not based on new information obtained after the cutoff

---

[8] The timing and contents of Healthy Paws' May 2020 motion to dismiss also undermines Plaintiff's contention that they did not know until "the end of the discovery period" that "one of Healthy Paws' primary defenses in this case will be to blame the Insurers for its misrepresentations." Dkt. No. 163 at 9. As set forth above, Healthy Paws explicitly stated in that motion that it could not be liable for alleged misrepresentations and omissions in the insurance policies because it was not a party to those contracts. Dkt. No. 20 at 13–14; *see also* Dkt. No. 40 at 5 ("Plaintiffs' insurance contracts and applicable state regulations make clear that *Healthy Paws did not [use age as a factor to increase premiums]*—if anyone did, it was Plaintiffs' insurers."). And in October 2020, the Court granted Healthy Paws' motion to dismiss the amended complaint, holding that Healthy Paws could not be liable for misrepresentations in the insurance contracts to which it was not a party. Dkt. No. 42 at 10 ("[L]iability to the insured for acts or contracts of an insurance agent within the scope of his agency, with full disclosure of the principal, *rests on the insurance company*." (cleaned up and emphasis added)). But still, Plaintiffs did not move to amend to add the Insurers for more than two years after that Order.

[9] In October 2021, at the start of fact discovery, counsel conferred about whether Plaintiffs would be adding the Insurers as Defendants and Plaintiffs' counsel stated that they would not do so and would oppose any such motion by Healthy Paws. Dkt. No. 187 at 1–2.

ORDER REGARDING MOTIONS TO AMEND COMPLAINT AND MOTION TO VOLUNTARILY DISMISS A NAMED PLAINTIFF - 12

date" and "Plaintiffs ha[d] not demonstrated that good cause exists to permit amendment.").

Nor have Plaintiffs shown good cause to add their new theory that since 2013, the Insurers all charged base rates "substantially higher than those approved by the relevant agencies" as a result of the medical trend and experience rating plan factors. Dkt. No. 163 at 12. Plaintiffs cite to a September 7, 2022 deposition during which Healthy Paws' Rule 30(b)(6) deponent "testified that he did not know how [rates] were set and that the Insurers developed the base rates," *id.* at 5, but Plaintiffs have long known that the Insurers set the rates, *see, e.g.*, Dkt. No. 187-1 at 29 (Healthy Paws' November 15, 2021 discovery responses stating that "Healthy Paws is not an insurer and does not file rates with state insurance agencies. It merely charges the rates established by an insurer and approved by the relevant state agency."); *see also* Dkt. No. 49 at 5 n.1 (December 3, 2020 motion to dismiss asserting that, "as Plaintiffs are aware, insurance *agents*—like Healthy Paws—neither set the rates nor seek approval of filed rates. The insurers do that."). Plaintiffs' third amended complaint, filed in October 2021, alleged that the Insurers issued the relevant insurance policies, increased rates based on improper factors, and failed to disclose—to consumers and state regulators—how rate adjustments would be calculated. Dkt. No. 70 at 13–19, 21, 23–26. Those allegations show that Plaintiffs knew at least a year before the close of fact discovery that the Insurers issued their policies (the relevant contracts) and set and filed the rates. Those are not new facts warranting belated amendments. *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990) ("[A] district court does not abuse its discretion in denying a motion to amend a complaint . . . when the movant present[s] no new facts but only new theories and provide[s] no satisfactory explanation for his failure to fully develop his contentions originally." (cleaned up)).

In the same vein, Plaintiffs claim they did not have sufficient information to bring a claim against the Insurers until the Insurers produced documents with rate data in October 2022 that allowed Plaintiffs, with their expert's assistance, "to determine that the policy premiums charged

by the Insurers, and advertised by Healthy Paws, were not consistent with the representations in the marketing materials or the policy itself or with the rates filed with the state insurance entities." Dkt. No. 163 at 5–6.[10] But Plaintiffs have asserted since the beginning of this case that Healthy Paws and the Insurers charged premiums that were inconsistent with the marketing materials and policies. *See* Dkt. No. 1 at 2, 6–9, 13–16; Dkt. No. 45 at 2–3, 7–16, 30–37; Dkt. No. 70 at 2–3, 8–16, 30–37. And Plaintiffs first argued that the Insurers' rates were not consistent with the rates filed with the state insurance entities in their Second Amended Complaint. *See* Dkt. No. 63 at 12 ("Plaintiffs allege that insurers increased the pet age factor in Healthy Paws policies over the life of each pet, such that the agency-approved rate—which assumed that the age factor would remain constant—was lower than the amount that Healthy Paws consumers were ultimately charged in Washington, New Jersey, and California." (citing Dkt. No. 45 at ¶¶ 66-67, 91, 107, 137, 149, 162)). Furthermore, Healthy Paws produced spreadsheets detailing the Insurers' base rates by state in March and July 2022. Dkt. No. 187 at 2. Plaintiffs did not file this motion until six months later, Dkt. No. 163, defeating any argument that they acted diligently. *See P.E.A. Films, Inc. v. Metro-Goldwyn-Mayer, Inc.*, No. CV14-09010-BRO(GJSX), 2016 WL 7017624, at *4 (C.D. Cal. Jan. 21, 2016) (collecting cases holding that plaintiffs were not diligent in seeking to amend when they delayed filing their motions to amend for two, three, and five months after obtaining knowledge of the facts necessary to support the proposed amendments).

Regardless, the unremarkable fact that Plaintiffs learned *additional* facts that might bolster their claims does not change the reality that they could have brought their breach of contract claim earlier with reasonable diligence. *Kremerman*, 2018 WL 4700526, at *4 (plaintiff failed to show

---

[10] It also does not appear that Plaintiffs were diligent in seeking information from the Insurers. Although they noticed subpoenas to them in February 2022, they did not serve the subpoenas until June-August 2022. Dkt. No. 150-2; Dkt. No. 150-4 at 5–6 & n. 4–5.

good cause because he was aware of the facts at issue before the amended pleadings deadline and "nothing stopped [him] from making th[ose] allegations . . . within the prescribed time"); *George v. Wright, Lerch & Litow, LLP*, No. 1:15-CV-00811-JMS-DML, 2016 WL 10514739, at *2 (S.D. Ind. May 10, 2016) ("Ms. George's suggestion that she first needed the defendant to 'confirm' or 'cement' the meaning of the defendant's notes before she could evaluate whether to bring a claim is not plausible."). As set forth above, Plaintiffs brought similar breach of contract and misrepresentation allegations against Healthy Paws in multiple, previous iterations of their complaint starting in March 2020. And Healthy Paws has asserted the filed rate defense since the inception of the case, so Plaintiffs cannot claim diligence in waiting to name the Insurers until they had their expert's opinion to defeat that defense. Dkt. No. 190 at 2 (contending that it was not until October 2022 that their expert received the data allowing Plaintiffs "to persuasively rebut this asserted defense"). To the extent Plaintiffs were concerned about strengthening their position with additional evidence, they could have pleaded the claim on information and belief—a standard practice. *See Edwards Lifesciences LLC v. Cook Inc.*, No. C-03-03817-JSW, 2008 WL 913328, at *3 (N.D. Cal. Apr. 2, 2008) (rejecting party's argument that it lacked facts to prove element of claim in original pleading because it could have pleaded the claim on information and belief); Dkt. No. 63 at 12 (holding that it was sufficient at the pleading stage to allege that the rates Plaintiffs paid "exceeded those filed with and approved by their respective state insurance agencies because of the misrepresented pet age factor," and that at this stage Plaintiffs were not required to "plead that the insurers charged rates higher than those approved 'by *in fact applying* the pet-age factor' to Plaintiffs' premiums." (quoting Dkt. No. 49 at 10, 14)).

Even if Plaintiffs had shown good cause, their motion would still be denied under Rule 15

based on their undue delay and the resulting prejudice to Healthy Paws.[11] Because the amendment adds new Defendants and a new theory of liability, the Court would have to issue an almost entirely new case schedule to allow the Defendants to answer the complaint or file motions to dismiss and to conduct discovery, including expert discovery, on the new theory. The resulting substantial delay would prejudice Healthy Paws and the Insurers. *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (explaining that the "requirement of additional discovery" from adding additional causes of action just five days before the discovery deadline "would have prejudiced [the defendant] and delayed the proceedings"); *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (holding that the district court did not abuse its discretion denying a motion to amend "on the eve of the discovery deadline" that would have "required re-opening discovery, thus delaying the proceedings."). Therefore, the Court denies Plaintiffs' motion to file a fifth amended complaint to add the Insurers as Defendants.

Finally, Plaintiffs' motion includes a request to "hold Plaintiffs' forthcoming motion for class certification in abeyance and reset all remaining pending case deadlines while any motion practice related to the Fifth Amended Complaint is conducted." Dkt. No. 163 at 7. That request is denied as moot because the Court subsequently granted the parties' Stipulated Motion to Hold Class Certification and Daubert Briefing in Abeyance pending the Courts ruling on this motion. Dkt. Nos. 188–89.

## B.    Motion to Dismiss Mr. Gage

Mr. Gage seeks to voluntarily dismiss his claims with prejudice because he "no longer wishes to pursue this action." Dkt. No. 116 at 2; *see also* Dkt. No. 125 at 8 (stating that he "does not wish to be subjected to the significant invasion of his privacy that a search of his email account

---

[11] Because these bases are sufficient to deny the motion, the Court need not reach Healthy Paws' arguments that futility and bad faith also bar amendment. *See* Dkt. No. 186 at 15–17.

entails."). Healthy Paws does not oppose Mr. Gage dismissing his claims, which it claims are meritless, but it seeks to condition his dismissal on his provision of complete responses to Interrogatory Numbers 2 and 3 and sitting for a deposition. Dkt. No. 118 at 4–5.

### 1. Applicable Standards

Absent consent of the opposing party and beyond the time limit to amend as of right, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). A motion for voluntary dismissal pursuant to Rule 41(a)(2) should be granted unless a defendant can show that it will suffer some legal prejudice as a result of the dismissal. *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001); *Stevedoring Servs. of Am. v. Armilla Int'l B.V.*, 889 F.2d 919, 921 (9th Cir. 1989) (stating the purpose of Rule 41(a)(2) is "to permit a plaintiff to dismiss an action without prejudice so long as the defendant will not be prejudiced . . . or unfairly affected by dismissal."). The Ninth Circuit has previously held that "legal prejudice" means "prejudice to some legal interest, some legal claim, some legal argument." *Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996).

When considering a motion under Rule 41(a)(2), courts "must make three separate determinations: (1) whether to allow dismissal; (2) whether the dismissal should be with or without prejudice; and (3) what terms and conditions, if any, should be imposed." *Sherman v. Yahoo! Inc.*, No. 13-cv-0041-GPC-WVG, 2015 WL 473270, at *2 (S.D. Cal. Feb. 5, 2015). Courts may condition such a dismissal "on a plaintiff's deposition or production of discovery." *Id.* at *7.

### 2. Background Facts

In August 2022, the Court issued two orders regarding discovery, the first of which is relevant here.[12] That Order granted Healthy Paws' motion to compel and required Plaintiffs to

---

[12] The second Order granted Healthy Paws' motion to compel regarding ESI, ordered the parties to meet and confer

supplement their responses to Interrogatory Numbers 2, 3, and 6 and Request for Admission Number 2 within seven days of the August 19, 2022 Order. Dkt. No. 110 at 11. The Court found that Interrogatory Number 2 was a contention interrogatory to which Plaintiffs could delay providing a complete response "until at least after discovery is 'substantially complete.'" *Id.* at 6–7 (quoting *Kmiec v. Powerwave Techs., Inc.*, No. C12-0222-CJC-JPRX, 2014 WL 11512195, at *1 (C.D. Cal. Dec. 2, 2014)).[13] The Court further held that "Plaintiffs should be able to respond to Interrogatory Number 2 without expert input at least where the base rate for a given Plaintiff does not require resort to non-public information" and should so state if information can only be provided by resort to their experts. Dkt. No. 110 at 7–8.

As for Interrogatory Number 3, the Court required Plaintiffs to supplement their responses to state that the pet age factor they relied on was pet age at anniversary, and to provide a complete response—which was also a contention interrogatory—by the close of discovery on September 13, 2022. *Id.* at 9.[14] The Order further required Plaintiffs to "respond fully to the best of their knowledge except where answers can only be provided by their expert(s), in which case they must so state" and if they "lack the information to make a full response, they must so state under oath and set forth in detail the efforts they made to obtain the requested information." Dkt. No. 110 at 9. The Court also required Plaintiffs to correct the factual inaccuracies Healthy

---

regarding search terms, and ordered Plaintiffs to produce all ESI in accordance with sections 5 and 7 of the ESI protocol. Dkt. No. 111 at 12.

[13] Interrogatory Number 2 asks Plaintiffs to identify "each and every monthly premium" that they contend they were charged in excess of the filed rate applicable to their insurance policies, and to identify "any documents" that support their contention that they were charged premiums in excess of the filed rate. Dkt. No. 90 at 9. The Interrogatory also asks for (1) the date or date range the premium was charged; (2) the amount of the premium; (3) the rate filing that was applicable; (4) the amount Plaintiffs contend they should have been charged; (5) the excess amount Plaintiffs contend they were charged; and (6) when Plaintiffs became aware that the premium was in excess of the filed rate. *Id.*

[14] Interrogatory Number 3 asks Plaintiffs to identify "each and every factor" they contend was inappropriately included in calculating their premiums and to identify "any documents" supporting those contentions. Dkt. No. 90 at 26. For each identified factor, Healthy Paws asks Plaintiffs to identify: the time period during which they contend the factor was included in their premiums, the amount by which they contend it increased their premiums, their reason for asserting that it was inappropriately included, and when they became aware of its inclusion. *Id.*

Paws identified with the responses to both Interrogatory Numbers 2 and 3. *Id.*

Mr. Gage argues that he has provided complete responses and should now be dismissed from the case. Dkt. No. 116 at 3. Healthy Paws disagrees, arguing that Mr. Gage's responses are still deficient, and until he complies with the Court's Order and provides complete responses, he should not be permitted to exit the case. Dkt. No. 118 at 5 (arguing that Plaintiffs "should not be permitted to dismiss named plaintiffs to avoid providing discovery responses that undermine their claims at class certification and on the merits," and that Mr. Gage "still possesses information highly relevant to this putative class action").

Unfortunately, the briefing on the motion to dismiss does not contain all of the information relevant to this dispute. Months after briefing on the motion was complete, Healthy Paws filed a motion for discovery sanctions against Plaintiffs. Dkt. No. 200. The briefing on that motion made it clear that Plaintiffs have since supplemented their discovery responses multiple times. *Id.* at 7–8. In its motion for sanctions, Healthy Paws argued that Plaintiffs' February 2023 supplementation of their discovery responses was still insufficient because they did not state the insurance amounts Plaintiffs contend they should have been charged or how much the allegedly improper factors caused their premiums to increase, and they identified "factors and rates inconsistent with their prior responses, but nevertheless claimed the serial 'supplemental' responses should be read 'together.'" *Id.* at 7. The parties met and conferred regarding those deficiencies. Dkt. No. 201 at 2; Dkt. No. 202 at 2–3. In April 2023, Mr. Gage amended his response to Interrogatory Number 2 and conceded that there is "no evidence that [Indemnity] did not comply with the rates it filed with the State of California." Dkt. No. 200 at 8 (internal quotation marks and citation omitted) (emphasis omitted); Dkt. No. 202-12 at 16 (redacted).[15]

---

[15] An unredacted and sealed copy of Plaintiffs' most recent discovery responses is at Docket Number 203.

ORDER REGARDING MOTIONS TO AMEND COMPLAINT AND MOTION TO VOLUNTARILY DISMISS A NAMED PLAINTIFF - 19

Plaintiffs then served corrected responses on May 12, 2023. Dkt. No. 202 at 3. Healthy Paws argues that the corrections made no substantive changes and continued to suffer from the following problems: (1) "Plaintiffs (and their expert reports) still fail to identify the filed premiums they contend they should have been charged, how much they paid in excess of the filed rates, the specific factors they claim were inappropriately included in calculating their premiums, or the impact these factors had on their premiums"; (2) "Plaintiffs' serial 'supplemental' responses to Interrogatory 3 remain irreconcilable when read 'together' as Plaintiffs propose, as do Plaintiffs' 'Amended' and 'Supplemental Amended' responses to Interrogatory 2"; and (3) "[e]ach Plaintiff purports to identify inflated base rates they 'should' have been or were 'actually charged,' but their lists are demonstrably incorrect"; and (4) "Gage's response to Interrogatory 3 still claims his base rates were not public, which is demonstrably incorrect." Dkt. No. 200 at 8 (emphasis omitted). The Court will not require the parties to meet and confer again since they already did so after Plaintiffs' supplementation in February 2023, and their April 2023 amendment did not alter the basic premise of this dispute. Dkt. No. 202-12 at 16.

### 3. Dismissal with Prejudice and Conditions

The Court first decides whether to allow Mr. Gage's dismissal. *See Sherman*, 2015 WL 473270, at *2. Healthy Paws does not identify any prejudice it will suffer as a result of his dismissal if appropriate conditions are imposed. Dkt. No. 118 at 5 (requesting conditions of dismissal). And Healthy Paws previously agreed to Mr. Gage's dismissal once he "provides substantive responses to Interrogatories Nos. 2 and 3[.]" Dkt. No. 116-2 at 4. In addition, Mr. Gage consents to a dismissal of his claims with prejudice. Dkt. No. 116 at 3. Therefore, the parties do not dispute that dismissal should be with prejudice, and the Court proceeds to consider whether to impose conditions on the dismissal.

4.  Mr. Gage Has Supplemented His Response to Interrogatory Number 2

Healthy Paws notes that Interrogatory Number 2 "asks Plaintiffs to identify, *inter alia*, each monthly premium they claim exceeded the filed rate, and the premiums they contend should have been charged instead." Dkt. No. 211 at 5. Mr. Gage's amended response conceded that there is "no evidence that [Indemnity] did not comply with the rates it filed with the State of California." Dkt. No. 202-12 at 16. Healthy Paws' most recent briefing on discovery issues, Dkt. Nos. 200, 211, did not identify anything further it needs from Mr. Gage in response to that interrogatory. Therefore, it appears that this issue is now moot with respect to Mr. Gage, so Interrogatory Number 2 is not an impediment to his dismissal so long as he corrects any inaccuracies in his response as set forth below.

5.  Mr. Gage Must Provide a Supplemental Response to Interrogatory Number 3

Mr. Gage argues that Healthy Paws would not suffer prejudice if he were dismissed from the case because he has provided complete discovery responses. Dkt. No. 116 at 2; Dkt. No. 125 at 9. But the deadline to conduct third party discovery has passed, Dkt. No. 129 at 2, so Healthy Paws cannot seek discovery from him as a non-party. And as set forth below, Mr. Gage has not provided a complete response to Interrogatory No. 3 despite the Court's prior Order that he do so. Dkt. No. 110 at 9.

Plaintiffs argue that they have fully responded to Interrogatory Number 3 because it seeks information about their damages, and their expert, Michael Naaman, provided that information. Dkt. No. 205 at 7–8. Mr. Gage's supplemental discovery responses cite to paragraphs 15–17 of Mr. Naaman's declaration, Dkt. No. 202-12 at 28,[16] but neither the cited paragraphs nor the declaration in general provides information about which factors Plaintiffs claim were

---

[16] An unredacted and sealed copy of Mr. Naaman's declaration is at Docket Number 185.

ORDER REGARDING MOTIONS TO AMEND COMPLAINT AND MOTION TO VOLUNTARILY DISMISS A NAMED PLAINTIFF - 21

1    inappropriately included in their insurance rates or the amount by which each factor increased the

2    rates as the interrogatory requests. Instead, Mr. Naaman calculated damages based on "the market

3    value for premiums that increase at the same rate as veterinary services as compared to the amount

4    at which Class members' premiums were actually increased." Dkt. No. 174 at 20. Plaintiffs argue

5    that Healthy Paws misunderstands their damages analysis, which is not based on factors but on the

6    difference noted by Mr. Naaman. Dkt. No. 205 at 9 (positing that the difference between what

7    Healthy Paws is seeking and what Plaintiffs provided "appears to stem from a fundamental

8    misunderstanding of the damages Plaintiffs seek."). Specifically, Plaintiffs contend they are not

9    seeking "reimbursement for any Plaintiff or Class Member based on the amount Healthy Paws

10   overcharged each of them over and above the filed rates." *Id.* Instead, they "seek reimbursement

11   based on ordinary consumer protection principles: the amount Healthy Paws overcharged each of

12   them as a result of its misrepresentations." *Id.* at 9–10. Therefore, they argue, Healthy Paws'

13   request for information about "'how each premium exceeded filed rates' is inconsistent with, and

14   irrelevant to, Plaintiffs' claims." *Id.* at 10 (quoting an unspecified source).

15        Plaintiffs do not get to unilaterally decide what information is relevant. Nor can they

16   contend that only information relevant to their claims—and not Healthy Paws' defenses—is

17   relevant. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged

18   matter that is relevant to any party's claim *or defense* and proportional to the needs of the case[.]"

19   (emphasis added). Information about which factors Plaintiffs believe Healthy Paws incorrectly

20   applied to increase their rates—and by what amount—is relevant both to Healthy Paws' filed rate

21   defense and to Plaintiffs' continued assertion that Healthy Paws "increased premiums based on a

22   host of factors unrelated to" increased veterinary medicine costs. Dkt. No. 205 at 4. Before Mr.

23   Gage may exit this litigation, he must respond fully to Interrogatory Number 3 and identify the

24   factors he claims Healthy Paws used to increase his premiums and the amount each factor allegedly

1   caused premiums to rise above the filed rate. As the Court previously held, Plaintiffs "must respond

2   fully to the best of their knowledge except where answers can only be provided by their expert(s),

3   in which case they must so state." Dkt. No. 110 at 9. Finally, Mr. Gage is required to provide

4   complete, unified answers to Interrogatory Numbers 2 and 3 rather than referencing his prior

5   responses that contain inconsistencies and the previously identified inaccuracies. *Id.*

6        6. <u>Mr. Gage Must Sit for a Short Deposition</u>

7        Healthy Paws argues that Mr. Gage's dismissal should be premised on his consent to sit

8   for his previously noted deposition. Dkt. No. 118 at 14. Plaintiffs argue that once Mr. Gage is no

9   longer a class representative, "[h]is discovery will have no utility moving forward[.]" Dkt. No. 125

10   at 10. Healthy Paws counters that it still needs his deposition testimony to explore (1) whether he

11   paid premiums in excess of the filed rate, (2) "his experience obtaining other pet insurance after

12   he canceled his policy," which it believes "would contradict the conclusory allegations of the

13   complaint," and (3) "the robustness of Gage's allegations about the Healthy Paws statements he

14   viewed and relied on for his purchase of his pet insurance policy, which, by its nature, is a highly-

15   individualized experience." Dkt. No. 118 at 17. The first issue is now moot given that Mr. Gage

16   has conceded that he was not charged a rate in excess of the filed rate.

17        As to the second and third issues, Healthy Paws avers that even if Mr. Gage is dismissed,

18   it still needs his discovery to explore class certification issues of commonality, predominance, and

19   typicality. *Id.* at 18.[17] In particular, it notes that Mr. Gage "is one of the only named Plaintiffs who,

20   contrary to Plaintiffs' allegations, Dkt. 70 at ¶ 11, elected to cancel his Healthy Paws-administered

21   policy and obtain insurance from an alternative carrier." Dkt. No. 118 at 17–18; Dkt. No. 70 at 3

22

23   _____

24   [17] "At the pre-class certification stage, discovery in a putative class action is generally limited to certification issues: *e.g.*, the number of class members, the existence of common questions, the typicality of claims, and the representative's ability to represent the class." *Dysthe v. Basic Rsch., L.L.C.*, 273 F.R.D. 625, 628 (C.D. Cal. 2011).

ORDER REGARDING MOTIONS TO AMEND COMPLAINT AND MOTION TO VOLUNTARILY DISMISS A NAMED PLAINTIFF - 23

(third amended complaint, alleging that "[f]or those consumers who wanted to maintain pet insurance, many had no choice but to continue paying Healthy Paws' exorbitant premiums because many pets age out of competing pet insurance options."). In addition, Healthy Paws seeks to explore "what factors influenced Gage's decision to purchase a pet health insurance policy administered by Healthy Paws, and how he was allegedly harmed in light of the fact that he cancelled the policy at issue and obtained alternative pet insurance." Dkt. No. 118 at 18. Even if Mr. Gage ceases to be a named Plaintiff, the information sought has continuing relevance to the allegations in the third amended complaint and to class certification issues, including commonality and typicality of the class representatives' claims.

Although the Court is sympathetic to Mr. Gage's desire to avoid the burdens of litigation, he should not be permitted to "walk away from" his discovery obligations when he has relevant information and chose to litigate this case. *Opperman v. Path, Inc.*, No. 13-cv-00453-JST, 2015 WL 9311888, at *3 (N.D. Cal. Dec. 22, 2015) (internal quotation marks and citation omitted); *Gallegos v. Atria Mgmt. Co., LLC*, No. ED-CV-16-888-JGB(SPx), 2016 WL 11824850, at *9 (C.D. Cal. Nov. 14, 2016) ("A named plaintiff simply cannot avoid the obligation to sit for a deposition merely by filing a request to withdraw."). And unlike the cases on which Plaintiffs rely, Healthy Paws noticed Mr. Gage's deposition before he sought to withdraw. Dkt. No. 118 at 16 (Healthy Paws noticed Mr. Gage's deposition in July 2022, before the end of discovery, and was in the process of negotiating a date for his deposition when he requested to be dismissed); Dkt. No. 119-9 (notice of deposition); *Munro v. Univ. of S. Cal.*, No. 2:16-CV-06191-VAP-Ex, 2019 WL 4575844, at *2 (C.D. Cal. July 2, 2019); *Opperman*, 2015 WL 9311888, at *4. Where, as here, the departing Plaintiff possesses relevant information and the Defendant noticed his deposition before he moved to withdraw, the Court may condition his withdrawal on sitting for a deposition. *Dysthe*, 273 F.R.D. at 628–29 (requiring deposition of a named class member before he voluntarily

1   dismissed his claims); *Fraley v. Facebook Inc.*, No. C-11-1726-LHK(PSG), 2012 WL 555071, at

2   *3 (N.D. Cal. Feb. 21, 2012) (requiring deposition of class representative even though she was

3   likely to be dismissed from the case); *Sherman*, 2015 WL 473270, at *7 (conditioning plaintiff's

4   withdrawal on his deposition when that deposition had been noticed and rescheduled several

5   times). The Court does so here. Therefore, Healthy Paws may take a short deposition—of no more

6   than two hours—of Mr. Gage limited to the two issues above before he withdraws from the case.

7   Once Mr. Gage has satisfied the conditions in this Order and the Court's prior Order, Dkt. No.

8   110, the parties should file a stipulated motion for his dismissal.

9                               **III.   CONCLUSION**

10          For the foregoing reasons, the Court DENIES Plaintiffs' motions to file a fourth and fifth

11   amended complaint, Dkt. Nos. 130, 163, and will defer its ruling on the motion to dismiss Mr.

12   Gage, Dkt. No. 116, until the conditions above have been satisfied. The Court further ORDERS

13   that these conditions must be satisfied no later than September 14, 2023. Finally, the Court reopens

14   discovery for the sole and limited purpose of complying with this Order.

15

16          Dated this 15th day of August, 2023.

17

18                                          Lauren King
                                            United States District Judge
19

20

21

22

23

24

ORDER REGARDING MOTIONS TO AMEND COMPLAINT AND MOTION TO VOLUNTARILY DISMISS A
NAMED PLAINTIFF - 25