UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEVEN BENANAV, et al.,<br><br>                    Plaintiffs,<br>    v.<br><br>HEALTHY PAWS PET INSURANCE LLC,<br><br>                    Defendant. | CASE NO. 2:20-cv-00421-LK<br><br>ORDER REGARDING MOTIONS TO SEAL CLASS CERTIFICATION RELATED DOCUMENTS |

      This matter comes before the Court on four motions related to sealing documents associated with Plaintiffs' motion for class certification: (1) Healthy Paws' Motion to Seal its opposition to Plaintiffs' motion for class certification and supporting exhibits, Dkt. No. 229; (2) Plaintiffs' Motion to File Information Designated as "Confidential" in Open Court, Dkt. No. 270; (3) Healthy Paws' Motion to Seal its Motion to Exclude the Testimony of Dr. Michael Naaman, Dkt. No. 286; and (4) Healthy Paws' Motion to Seal its Reply in Support of its Motion to Exclude the Reports and Testimony of Dr. Michael Naaman, Dkt. No. 316. Having reviewed

the motions, the sealed documents, and the remainder of the record, the Court grants the motions as set forth below.

## I.  DISCUSSION

The background regarding this case has been set forth in the Court's prior orders and thus will not be repeated here. *See, e.g.*, Dkt. No. 213. The parties have filed the required certifications stating that they met and conferred before filing these motions. Dkt. No. 229 at 2; Dkt. No. 270 at 2; Dkt. No. 286 at 2; Dkt. No. 316 at 2.

### A.   Legal Standards

Courts recognize a "general right to inspect and copy public records and documents, including judicial records and documents." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)); *see also Oliner v. Kontrabecki*, 745 F.3d 1024, 1025 (9th Cir. 2014) ("Throughout our history, the open courtroom has been a fundamental feature of the American judicial system."). Accordingly, when a district court considers a sealing request, it starts with "a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). A party seeking to seal court filings bears the burden of overcoming this presumption by providing "'compelling reasons' sufficiently specific" for doing so. *Kamakana*, 447 F.3d at 1183.

There is an exception to this general presumption of access, however, when the documents are only tangentially related to the merits. In that case, the party seeking to seal the records need only show "good cause." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097–1101, (9th Cir. 2016); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 677–78 (9th Cir. 2010) (discussing the two standards governing motions to seal documents). Notably, the more onerous "compelling reasons" test is not limited to motions that are "technically 'dispositive'"; rather, it applies when "the motion is more than tangentially related to the merits of a case." *Ctr. for Auto*

1  *Safety*, 809 F.3d at 1101; *see also id.* at 1098–99 ("Most litigation in a case is not literally
2  'dispositive,' but nevertheless involves important issues and information to which our case law
3  demands the public should have access. . . . [P]lenty of technically nondispositive motions . . . are
4  strongly correlative to the merits of a case.").

5  The Ninth Circuit has "emphasize[d] the difference between the 'compelling reasons'
6  standard and the 'good cause' standard[.]" *Kamakana*, 447 F.3d at 1180. The "good cause"
7  standard requires the party seeking protection to show "specific prejudice or harm" for each
8  document it seeks to protect. *Foltz*, 331 F.3d at 1130. "Broad allegations of harm, unsubstantiated
9  by specific examples or articulated reasoning," do not suffice. *Beckman Indus., Inc. v. Int'l Ins.
10 Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108,
11 1121 (3rd Cir. 1986)). And a "good cause" showing will not, without more, satisfy the more
12 exacting "compelling reasons" test. *Kamakana*, 447 F.3d at 1180. Under this higher "compelling
13 reasons" standard, the Court "may seal records only when it finds a compelling reason and
14 articulates the factual basis for its ruling, without relying on hypothesis or conjecture." *Ctr. for
15 Auto Safety*, 809 F.3d at 1096–97 (cleaned up). Those compelling reasons must "outweigh the
16 general history of access and the public policies favoring disclosure[.]" *Kamakana*, 447 F.3d at
17 1178–79. This is achieved when, for example, a court filing might "become a vehicle for improper
18 purposes," *Nixon*, 435 U.S. at 598, or be used "to gratify private spite, promote public scandal,
19 circulate libelous statements, or release trade secrets," *Kamakana*, 447 F.3d at 1179; *see also
20 Oliner*, 745 F.3d at 1026 (party's desire to avoid embarrassment or annoyance and prevent an
21 undue burden on his professional endeavors was not a "compelling reason").

22 Additionally, in the Western District of Washington, parties moving to seal documents
23 must comply with the procedures established by Local Civil Rule 5(g). Under that rule, the party
24 who designates a document confidential must provide a "specific statement of the applicable legal

ORDER REGARDING MOTIONS TO SEAL CLASS CERTIFICATION RELATED DOCUMENTS - 3

standard and the reasons for keeping a document under seal," with an explanation of: "(i) the legitimate private or public interests that warrant the relief sought; (ii) the injury that will result if the relief sought is not granted; and (iii) why a less restrictive alternative to the relief sought is not sufficient." LCR 5(g)(3)(B). Where, as here, the parties have entered into a stipulated protective order, "a party wishing to file a confidential document it obtained from another party in discovery may file a motion to seal," and the "party who designated the document confidential must satisfy" the above showing in its response to the motion. *Id.* This rule provides that "[o]nly in rare circumstances should a party file a motion, opposition, or reply under seal." LCR 5(g)(5). In the event that the court denies a motion to seal, the clerk will unseal the relevant document(s) unless "(1) the court orders otherwise, or (2) the party who is relying on the sealed document requests in the motion to seal or response that, if the motion to seal is denied, the court withdraw the document from the record rather than unseal it." LCR 5(g)(6). If a document is withdrawn for this reason, "the parties shall not refer to it in any pleadings, motions or other filings, and the court will not consider it." *Id.*

   The Court applies the compelling reasons standard to documents filed in connection with Plaintiffs' motion for class certification because that motion is "more than tangentially related to the merits" of the underlying case. *Ctr. for Auto Safety*, 809 F.3d at 1098–99. The "rigorous analysis" district courts engage in to determine whether the requirements of Federal Rule of Civil Procedure 23(a) have been satisfied at the class certification stage will "[f]requently . . . entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) ("[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class. . . . [A] district court must consider the merits if they overlap with the Rule 23(a) requirements." (emphasis omitted)). Moreover, following *Center for Auto*

*Safety*, "district courts that have addressed the issue have regularly found that the compelling reasons standard applies to motions to seal exhibits attached to motions for class certification." *Wetzel v. CertainTeed Corp.*, No. C16-1160-JLR, 2019 WL 1236859, at *3 (W.D. Wash. Mar. 18, 2019) (citing *Moussouris v. Microsoft Corp.*, No. C15-1483-JLR, 2018 WL 1159251, at *4 (W.D. Wash. Feb. 16, 2018), *report and recommendation adopted*, No. C15-1483-JLR, 2018 WL 1157997 (W.D. Wash. Mar. 1, 2018) (collecting cases)); *White v. Symetra Assigned Benefits Serv. Co.*, No. 20-1866 MJP, 2022 WL 1136804, at *4 (W.D. Wash. Apr. 18, 2022) (holding that the compelling reasons standard applies to a motion for class certification). Plaintiffs' motion for class certification raises issues that implicate the merits of their claims, including the insurance rates Healthy Paws charged consumers, whether those rates were filed with and approved by state regulators, whether Healthy Paws deceived consumers, and whether the named Plaintiffs were deceived. Dkt. No. 172 at 2–15. The compelling reasons standard is therefore appropriate.

**B.     Healthy Paws' Motion to Seal Its Class Certification Opposition and Attachments**

Healthy Paws moves to seal documents related to its opposition to Plaintiffs' motion for class certification. Dkt. No. 229. Specifically, it seeks to seal its opposition brief, Dkt. No. 232, and seven exhibits to the Declaration of Alicia Cobb in Support of the Opposition (the "Cobb Declaration"), Dkt. Nos. 232-1–232-7 (Exhibits 1, 4, 32, 33, 35, 36, and 39), because these documents "reflect information confidential to the Insurers," Dkt. No. 229 at 2.[1] Healthy Paws states that it "takes no position regarding the information in these Exhibits and makes this motion at the Insurers' request." Dkt. No. 229 at 2. During the meet and confer conference, Plaintiffs indicated that they were not opposed to sealing the information. *Id.*

---

[1] The Insurers are ACE American Insurance Company ("ACE"), Indemnity Insurance Company of North America, and Westchester Fire Insurance Company. Dkt. No. 293 at 1.

      Healthy Paws has requested to seal Exhibits 32, 33, 35 and 36 to the Cobb Declaration because the Insurers have requested to keep confidential the non-public base rates in these interrogatory responses. Dkt. No. 229 at 3. Healthy Paws has redacted only the base rates from these four exhibits. *Compare* Dkt. No. 232-3 at 7–9; Dkt. No. 232-4 at 7–9; Dkt. No. 232-5 at 7–9; Dkt. No. 232-6 at 7–8 (sealed versions), *with* Dkt. No. 231-32 at 7–9; Dkt. No. 231-33 at 7–9; Dkt. No. 231-35 at 7–9; Dkt. No. 231-36 at 7–8 (redacted versions). The Insurers argue that their competitors could obtain an unfair advantage in pricing and marketing their policies if they were able to obtain this information. Dkt. No. 249 at 4. The Court previously held that compelling reasons exist to allow the base rates to remain sealed because "[t]he base rates reflect sensitive pricing information that warrants sealing" and "[a]llowing the redaction of the base rate data does not deprive the public of knowledge about the nature of the case or of Plaintiffs' allegations." Dkt. No. 237 at 16–17. For the same reasons, Exhibits 32, 33, 35 and 36 to the Cobb Declaration can remain under seal, Dkt. No. 232-3–232-6, as can the copy of these documents the Insurers filed with the base rates highlighted, Dkt. No. 251-1.[2]

      In addition, Healthy Paws seeks to seal Exhibit 4 to the Cobb Declaration, which is the Agency Agreement between ACE and Healthy Paws. Dkt. No. 229 at 4; Dkt. No. 232-2 (sealed Agency Agreement). Healthy Paws states that "[c]ounsel for the Insurers have requested" that Healthy Paws file the Agency Agreement under seal and redact a quotation from it that appears in Healthy Paws' opposition to Plaintiffs' motion for class certification. Dkt. No. 229 at 4; *see also* Dkt. No. 230 (redacted opposition to class certification motion); Dkt. No. 232 (sealed opposition to class certification motion). The Insurers state that the Agency Agreement "describes the terms

---

[2] The Insurers have filed two identical copies of the Declaration of Nicholas Gatt in Support of [the Insurers'] Response to Defendant's Motion to Seal. *See* Dkt. No. 250 (publicly filed); Dkt. No. 251 (sealed). It appears that they filed docket entry 251 under seal because its attachments are under seal. For administrative convenience, the Court will allow docket entry 251 to remain under seal.

ORDER REGARDING MOTIONS TO SEAL CLASS CERTIFICATION RELATED DOCUMENTS - 6

and conditions of ACE's and Healthy Paws's relationship" and "constitutes competitively sensitive business information belonging to ACE, and the entire Agency Agreement is confidential." Dkt. No. 250 at 3; *see also* Dkt. No. 249 at 4–5 (explaining that the Agency Agreement is "competitively sensitive" because "it describes the terms of ACE's relationship with Healthy Paws, including the financial terms, duration, and exclusivity of the relationship" in addition to "the delegation of responsibilities between ACE and Healthy Paws; the amount to be paid by the principal to the agent for each type of policy; and the minimum written premiums to be achieved by the agent."). The Insurers further argue that "[p]ublic disclosure of the Agency Agreement or its terms would allow the Insurers' competitors to use this information to improve their competitive position as against the Program by, for example, developing or modifying their own agency relationships, altering the manner in which their base rates and other pricing considerations are determined, and revising their processes for responding to regulatory inquiries." Dkt. No. 249 at 5; *see also id.* at 10 (arguing that competitors could use the information about the terms the Insurers agreed to with Healthy Paws "to more effectively bid against the Insurers for administrators"). Healthy Paws' opposition brief contains a reference to the same confidential information, Dkt. No. 250 at 3, and the Insurers have filed a copy of the opposition brief under seal with a single sentence from the Agency Agreement highlighted for redaction, Dkt. No. 251-4 at 3. After reviewing these documents, the Court finds that the Insurers have made a sufficient, particularized showing to keep these documents under seal because the sensitive information therein could be used unfairly by competitors to harm their business interests. *See, e.g.*, *McNelis v. Prudential Ins. Co. of Am.*, C19-01590-RAJ, 2020 U.S. Dist. LEXIS 63205, at *2 (W.D. Wash. Apr. 9, 2020) (finding compelling reasons to seal information about "contracts with third-party vendors that could be used by business competitors"); *Bund v. Safeguard Props., LLC*, 2:16-cv-920-JLR, 2017 U.S. Dist. LEXIS 103798, at *13 (W.D. Wash. July 5, 2017) (finding compelling reasons to seal an agreement with

a vendor because the "agreement contains the general terms of the relationship between [Defendant] and the vendor, including that vendor's pricing terms and minimum payment terms").

The Insurers also request to seal Exhibit 1 to the Cobb Declaration, which is the Expert Report of Paul Braithwaite. Dkt. No. 229 at 4. Healthy Paws has filed redacted and sealed versions of Mr. Braithwaite's report. Dkt. No. 231-1 (redacted Braithwaite report); Dkt. Nos. 232-1, 251-2 (sealed Braithwaite report). The Insurers have highlighted the information they seek to protect in the Braithwaite report. Dkt. No. 251-2 at 41–42, 48, 51, 54, 57–58, 60 (base rates and Mr. Barrett's opinions about the Insurer's increases thereto); *id.* at 13–14 (terms of the agreement between Healthy Paws and Chubb); *id.* at 54 (Experience Rating Plan ("ERP") calculations). As set forth above, the Insurers have provided compelling reasons to allow the base rates and terms of agreements between Healthy Paws and the Insurers to remain under seal. And the Court previously ruled that the base rates and increases thereto can remain under seal. Dkt. No. 237 at 15–17; *compare* Dkt. No. 198 at 6–9, 11–13, 18–19 (Barrett declaration with sealed and redacted information highlighted), *with* Dkt. No. 251-2 at 41–42, 48, 51, 54, 57–58, 60 (Braithwaite report with the same base rates and percentages highlighted for redaction and sealing). The Insurers state that, in addition to that information, the Braithwaite report contains "confidential and competitively sensitive information related to the Insurers' [ERP.]" Dkt. No. 249 at 3–5; *see also id.* at 5 (explaining that "ERPs are a mechanism by which insurance companies, using data related to certain classes of policyholders and how prone they are to claims, adjust for the likelihood that a particular policyholder will file a claim."). They argue that if their competitors were able to obtain the ERP data in Mr. Braithwaite's report, their competitors would gain an advantage by being able "to derive non-public insight into the Insurers' analysis, pricing, and generally business strategy, and reap the actuarial advantages of the Insurers' past experience with insureds without the concomitant underwriting costs necessarily borne by Insurers in obtaining that information."

ORDER REGARDING MOTIONS TO SEAL CLASS CERTIFICATION RELATED DOCUMENTS - 8

*Id.* at 5. The Court agrees that the potential for such a competitive advantage is a compelling reason to allow the redactions to Mr. Braithwaite's report. *See Nixon*, 435 U.S. at 598 (explaining that sealing may be justified to prevent judicial documents from being used "as sources of business information that might harm a litigant's competitive standing"); *Washington v. Franciscan Health Sys.*, No. C17-5690-BHS, 2019 WL 3494382, at *2 (W.D. Wash. Mar. 12, 2019) (granting a motion to maintain redactions of "business information that could be used to harm Defendants' or third parties' competitive standing"); *J.R. Simplot Co. v. Wash. Potato Co.*, No. C16-1851-RSM, 2016 WL 11066581, at *1 (W.D. Wash. Dec. 29, 2016) (finding compelling reasons to seal a document containing "confidential financial, pricing, and strategic planning information" because "public disclosure of this information would competitively harm Defendants' business and the businesses which they manage"). Although "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning" will not suffice, *Beckman Indus.*, 966 F.2d at 476 (quoting *Cipollone*, 785 F.2d at 1121), here, the Insurers have set forth specific reasons to protect the information.

      The Insurers also request to seal Exhibit 39 to the Cobb Declaration, which is the Expert Report of Dr. Anne Gron. Dkt. No. 229 at 4. Healthy Paws has filed redacted and sealed versions of Dr. Gron's report. Dkt. No. 231-39 (redacted Gron report); Dkt. Nos. 232-7, 251-3 (sealed Gron report). The Insurers have highlighted the information they seek to protect in the Gron report. Dkt. No. 251-3 at 31 (amount of refunds paid to policyholders); *id.* at 69 (information related to the Insurers' combined ratios and underwriting profits and losses). As set forth below, the Insurers have provided compelling reasons to seal information regarding the specific refund amounts. The Insurers further state that Dr. Gron's report "contains the Insurers' confidential and competitively sensitive 'combined ratio' and profit and loss information[.]" Dkt. No. 249 at 6. They state that that ratio "is one of the most important ratios used in evaluating an insurance company's

1 profitability and financial health," and competitors, who do not have access to the information, could use it "to approximate the success of the Program, allowing them to decide whether to enter or abstain from the pet insurance markets without incurring exploratory expenses." *Id.* Protecting against that competitive harm is a compelling reason to permit the redactions to Dr. Gron's report.

Accordingly, the following documents can remain under seal: Dkt. Nos. 232, 232-1, 232-2, 232-3, 232-4, 232-5, 232-6, 232-7, 251, 251-1, 251-2, 251-3, and 251-4.

**C.    Docket Entries 287, 295, 318, and 323 Can Remain Sealed**

Healthy Paws has filed two motions to seal filings that contain the amount of refunds the Insurers paid to consumers. Dkt. No. 286 at 3; Dkt. No. 316 at 2–3. Healthy Paws has filed the underlying documents under seal, Dkt. Nos. 287 (Motion to Exclude the Testimony of Dr. Michael Naaman); Dkt. No. 318 (Reply in Support of Motion to Exclude the Reports and Testimony of Dr. Michael Naaman), and publicly filed the documents with the refund amount redacted, Dkt. Nos. 288, 317. Healthy Paws notes that during the parties' meet and confer, "Plaintiffs indicated they took no position as to sealing" the documents that contain the refund amount. Dkt. No. 286 at 2; Dkt. No. 316 at 2.

Healthy Paws argues that because the motion to exclude Dr. Naaman's testimony is not dispositive, the good cause standard applies. Dkt. No. 286 at 3; Dkt. No. 316 at 3. The Insurers contend that a motion to seal documents filed in connection with a *Daubert* motion is decided under the "compelling reasons" standard. Dkt. No. 321 at 2–3 (citing *ImprimisRx, LLC v. OSRX, Inc.*, No. 21-cv-01305-BAS-DDL, 2023 WL 7029210, at *3 (S.D. Cal. Oct. 24, 2023)). While it is true that the motion to exclude Dr. Naaman's opinions is not "literally dispositive," the Court finds that the motion—which relates to his damages opinions—is "strongly correlative to the merits" of this case, and that the compelling reasons standard therefore applies. *Ctr. for Auto*

*Safety*, 809 F.3d at 1098–99; *see also McMorrow v. Mondelēz Int'l, Inc.*, Case No. 17-cv-2327-BAS-JLB, 2021 WL 488337, at *2 (S.D. Cal. Feb. 10, 2021).

The Insurers filed a response, Dkt. No. 293, and a declaration asserting that the redacted refund information is "confidential and competitively sensitive financial information relating to refunds to policyholders," Dkt. No. 294 at 2. Specifically:

> The refund information at issue provides total and state-specific refunds provided to policyholders. A competitor insurer could use this otherwise non-public information to gain insight into the Insurer's strategy and the financial success of the Program, and to identify market opportunities and to avoid certain other markets without spending the time and incurring the expense necessary to independently vet them.

*Id.* The Insurers' response to Healthy Paws' motion to seal the reply brief advances the same arguments. Dkt. No. 321 at 3; Dkt. No. 322 at 1; *see also* Dkt. No. 249 at 6. The Insurers also filed copies of the underlying motion to exclude and the reply with the amount to be redacted shown in highlighting for ease of reference. Dkt. Nos. 295, 323. Plaintiffs have not responded to either motion to seal.

After reviewing these documents, the Court finds that the Insurers have made a sufficient, particularized showing supporting these redactions because the sensitive financial information therein could be used unfairly by competitors to harm the Insurers' business interests. Accordingly, docket entries 287, 295, 318, and 323 can remain sealed.

**D.     Docket Entries 272 and 273 Can Be Unsealed**

Plaintiffs have filed a motion requesting to file in open Court documents that Healthy Paws designated as confidential in discovery. Dkt. No. 270. Specifically, they seek to file unsealed copies of (1) Plaintiffs' Reply in Support of Their Motion for Class Certification, Dkt. No. 272, and (2) the Declaration of Raina Borrelli in Support of Plaintiffs' Reply in Support of Motion for Class Certification*,* Dkt. No. 273. *See* Dkt. No. 270 at 3. In response, Healthy Paws states that it

has no objection to Plaintiffs filing these documents publicly and without redactions, and the Insurers likewise do not oppose the removal of the redactions from Plaintiffs' reply brief or the Borelli Declaration. Dkt. No. 292 at 2–3 (stating that both documents can be unsealed). Accordingly, the Court grants this motion, and the documents at docket entries 272 and 273 can be unsealed.

## II.  CONCLUSION

For the foregoing reasons, the Court (1) GRANTS Healthy Paws' Motion to Seal its opposition to Plaintiffs' motion for class certification, Dkt. No. 229; (2) GRANTS Plaintiffs' Motion to File Information Designated as "Confidential" in Open Court, Dkt. No. 270; (3) GRANTS Healthy Paws' motion to seal its Motion to Exclude the Testimony of Dr. Michael Naaman, Dkt. No. 286; and (4) GRANTS Healthy Paws' Motion to Seal its Reply in Support of its Motion to Exclude the Reports and Testimony of Dr. Michael Naaman, Dkt. No. 316.

The following docket entries may remain under seal: Dkt. Nos. 232, 232-1, 232-2, 232-3, 232-4, 232-5, 232-6, 232-7, 251, 251-1, 251-2, 251-3, 251-4, 287, 295, 318, and 323. The Clerk of the Court is directed to unseal docket entries 272 and 273.

Dated this 24th day of September, 2024.

Lauren King
United States District Judge